IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZHENGJIA ZHANG, | : |
| Plaintiff, | : |
| v. | : CASE NO. 2:23-CV-02658-WB |
| CSL BEHRING LLC, | : |
| Defendant. | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CSL BEHRING LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant CSL Behring LLC ("CSL"), by and through its undersigned counsel, hereby submits this Memorandum of Law in support of its Motion to Dismiss the First Amended Complaint of Plaintiff Zhengjia Zhang ("Plaintiff").

**I.    INTRODUCTION**

As with his initial Complaint, Plaintiff's Amended Complaint arises solely from an alleged breach of the terms of his written contract ("Labor Contract") with his former employer in China, Wuhan Zhongyuan Ruide Biological Products Co. Ltd. ("Ruide"), an entity not named in this case. More specifically, Plaintiff seeks a long term incentive ("LTI") payment pursuant to Article 18 of the Labor Contract. All of the relief Plaintiff requests in this case via his breach of contract, breach of implied-in-fact contract, promissory estoppel, and unjust enrichment claims flows from the alleged entitlement to an LTI payment set forth in Article 18 of the Labor Contract. But Plaintiff is not entitled to pursue that relief in this Court. The Labor Contract also contains a clear and unequivocal mandatory dispute resolution provision that requires Plaintiff to resolve any dispute under that contract through mediation, arbitration, and then litigation in China, pursuant to "PRC

[People's Republic of China] Labor Law" and "PRC Labor Contract Law."

In recognition of the Labor Contract's mandatory dispute resolution provision, Plaintiff has already sought the LTI payment pursuant to the procedure set forth in the Labor Contract, litigating the issue to completion against Ruide in China, where the Chinese court rejected his claim. No doubt dissatisfied with the result, Plaintiff now seeks a second bite at the apple under Pennsylvania law, despite his recognition and exhaustion of the mandatory dispute resolution provision, and the Labor Contract's clear language that its terms are to be construed in accordance with PRC Labor Law and PRC Labor Contract Law. For these reasons, and as more fully described below, this Court should dismiss Plaintiff's Amended Complaint with prejudice.[1]

## II.   FACTUAL BACKGROUND[2]

### a. Plaintiff's Contractual Relationship with Ruide

CSL is a biopharmaceutical company, manufacturing plasma-derived and recombination therapeutic products. (Amended Complaint ("Am. Compl.") ¶ 8). In 2013, Ruide recruited Plaintiff to be its Vice President of Plasma Center Development, overseeing all of Ruide's Plasma Center Development activities. (Am. Compl. ¶ 17). Ruide employed Plaintiff as its Vice President of Plasma Center Development until August 2017, when CSL Limited acquired Ruide. (Am. Compl. ¶¶ 18-19). As part of his transition to his new role, Plaintiff entered into a "Labor Contract"

---

[1] Even if Ruide, Plaintiff's employer and the party to the Labor Contract, were named as a defendant, it would be entitled to move to dismiss Plaintiff's Amended Complaint for an additional reason – lack of personal jurisdiction. Ruide does not do business in the United States and is only a subsidiary of entities outside the United States (*i.e.*, CSL Behring Asia Pacific Limited (Hong Kong) to CSL Behring (Holdings) Pty Ltd (Australia) to CSL Limited (Australia)). Ruide is not a subsidiary of the United States entity named by Plaintiff in this case, CSL Behring LLC.

[2] CSL accepts the following facts set forth in Plaintiff's Amended Complaint as true for purposes of this Motion only.

with Ruide. (Am. Compl. ¶¶ 33-34); *see also* Labor Contract attached as Exhibit A.[3] The Labor Contract "mentions CSL Behring throughout." (Am. Compl. ¶ 53).

b. *Key Provisions of the Labor Contract*

Plaintiff and Ruide entered into the Labor Contract "[i]n accordance with the *PRC Labor Law, PRC Labor Contract Law* and other relevant state and local laws and regulations." *See* Exhibit A at p. 2 (emphasis added).

With respect to any permitted changes or amendments to the Labor Contract, Article 33 provides as follows:

> Where there are changes to the relevant laws and regulations upon which this Contract is entered into, the related terms of this Contract will be changed accordingly. *For other reasons, the related section in this Contract can be changed accordingly by mutual written agreement between [Ruide] and [Plaintiff].*

*See* Exhibit A, Article 33, at p. 13 (emphasis added).

Pursuant to Article 18 of the Labor Contract, Plaintiff was entitled to participate in CSL Behring's cash based LTI program. (Am. Compl. ¶ 38). Specifically, Article 18 of the Labor Contract provides:

> [Zhang] is entitled to participate in CSL Behring Group's cash based long term incentive program, which will be locked for 3 years and be paid as a one-off payment after [Zhang]'s 3 year participation in the program. The CSL Behring Group's Board will review the long term incentive program on an annual basis and has the right to change the content of and participants in the plan.

*See* Exhibit A, Article 18, at p. 9.

Finally, the Labor Contract provides a mandatory procedure for "Settlement of Labor Disputes," stating in Article 49:

> Any disputes arising from the performance of, or in connection with this Contract shall be settled through friendly negotiations between the Parties. In case no agreement can be reached through negotiations, either Party can apply for

---

[3] The Labor Contract is attached to Plaintiff's Amended Complaint, ECF No. 16-1.

mediation to the Labor Dispute Conciliation Committee of Party A, if any. If mediation cannot be reached, both Parties may apply for arbitration to the relevant Labor Dispute Arbitration Committee. If either Party disagrees with the arbitral award rendered by such Committee, this Party may file a lawsuit in the People's Court.

*See* Exhibit A, Article 49 at p. 25.

    c. *Plaintiff's Separation from Ruide and Pursuit of Claims Pursuant to the Labor Contract*

Due to the fact that there was not enough work for Plaintiff, Ruide terminated Plaintiff's employment on June 30, 2020. (Am. Compl. ¶¶ 60-61). Upon termination, Plaintiff sought relief pursuant to the Labor Contract, following its mandatory dispute resolution process all the way through a lawsuit in the Court of the People's Republic of China, which ruled on a number of issues related to Plaintiff's termination of employment, including the same claim he now asserts before this Court—that he was entitled to the LTI payment set forth in Article 18. (*See* Am. Compl. ¶¶ 62-63; Wuhan Intermediate People's Court of Hubei Civil Judgment in *Zhang v. Wuhan Zhongyuan Ruide Biological Products Co., Ltd.,* a true and correct certified translation of the original opinion from Chinese to English is attached as Exhibit B and the original opinion in Chinese is attached as Exhibit C).[4]

---

[4] Plaintiff mentions the determination of the Court of the People's Republic of China in his Amended Complaint but fails to attach the opinion or reference the fact that the Chinese tribunal held that Plaintiff failed to demonstrate his entitlement to the LTI payment. Because Plaintiff explicitly references the Court's opinion, this Court may consider it on a 12(b)(6) motion. *See In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997). The Court in China held: "With respect to the long-term cash incentive bonus, as stipulated in Article 18 of the labor contract, Zhengjia Zhang is entitled to participate in CSL Behring's long-term cash incentive plan, but *Zhengjia Zhang has no evidence to prove that he has actually participated in the plan, and there is no evidence to prove that he is eligible for the payment of such bonus*. Therefore, the ground for appeal of Zhengjia Zhang that Zhongyuan Ruide shall pay the long-term cash incentive bonus lacks factual basis." *See* Exhibit B at p. 20 (emphasis added).

4

## III. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed for failure to state a claim upon which relief may be granted if it appears that the plaintiff can prove no set of facts to support the claim. *See* Fed. R. Civ. P. 12(b)(6).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "is not akin to a probability requirement[;]" rather, plausibility requires that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Although the court must take the factual allegations stated by the plaintiff as true, it is well established that a court's acceptance of "all of the allegations contained in the complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79. Indeed, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. In light of the decisions in *Iqbal* and *Twombly*, the Third Circuit has set forth a two-part analysis for district courts to apply when presented with a 12(b)(6) motion:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

*Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 541 (E.D. Pa. 2016) (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009)).

## IV. ARGUMENT

Plaintiff's attempt to plead around the written terms of the Labor Contract's mandatory dispute provision, regardless of the label placed on his four purported causes of action, should be rejected as a matter of law. In each of the counts in his Amended Complaint, Plaintiff claims he is owed a benefit based on the terms of his Labor Contract, which says "*any disputes* arising from the performance of, or in connection with this Contract shall be settled through" the mandatory dispute resolution procedure. *See* Exhibit A, Article 49, at p. 24 (emphasis added). Remarkably, unlike the typical case, Plaintiff does not seek to bypass the Labor Contract's mandatory dispute resolution provision, but rather seeks a "do over" in a foreign jurisdiction after availing himself of that binding dispute resolution process. This Court should not countenance these tactics, and should dismiss Plaintiff's Amended Complaint with prejudice.

### A. Count I: Plaintiff's Breach of Contract Claim Must Be Dismissed For Failure to State a Claim.

As detailed above, the dispute at issue here centers on Plaintiff's alleged entitlement to a benefit under Article 18 of his Labor Contract. Indeed, Plaintiff pleads: "Article 18 of the Labor Contract evidences CSL Behring's agreement to pay the one-off cash based long term incentive payment to Zhang." (Am. Compl. ¶ 38). Consequently, any alleged breach of that contract must be pursued via the mandatory dispute resolution procedure provided for in that contract. *See Smith v. Creative Resources*, No. 97-6749, 1998 U.S. Dist. LEXIS 18545, at *10 (E.D. Pa. Nov. 20, 1998) (holding the plaintiff executed a valid agreement to submit to final and binding arbitration any dispute or claim arising from or related to her employment, yet failed to follow this dispute resolution procedure; thus, an order of dismissal was appropriate); *see also Metts v. FLM Dev. Co.*,

No. 10-7233, 2012 U.S. Dist. LEXIS 44807, at *22-25 (E.D. Pa. Mar. 30, 2012) (granting motion to dismiss because the parties agreed to submit all claims arising from an agreement to mediation in accordance with the dispute resolution system and plaintiffs failed to comply with the provision); *Wilson v. Darden Restaurants, Inc.*, No. 99-5020, 2000 U.S. Dist. LEXIS 1274, at *11 (E.D. Pa. Feb. 11, 2000) (granting motion to dismiss because plaintiff was bound by the arbitration provision contained within).

Plaintiff makes an odd attempt to plead around the written contract by making conclusory assertions devoid of any supporting facts, including his allegations that: "[e]ven though the Labor Contract is between Ruide and Zhang, CSL Behring agreed to pay the one-off cash based long term incentive payment to Zhang" (Am. Compl. ¶ 39); that there is "an oral agreement" between Zhang and CSL Behring (Am. Compl. ¶ 70); or, alternatively, that the "long term incentive program document . . . created an independent contractual relationship." (Am. Compl. ¶ 71). These assertions are factually unsupported legal conclusions that must be disregarded by the Court and are insufficient to sustain Count I. *See Evans v. Chichester Sch. Dist.*, 533 F. Supp. 2d 523, 529 (E.D. Pa. 2008) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) ("Although for the purposes of [a] motion to dismiss [a court] must take all the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation."). Simply put, there are no factual allegations pleaded to support the existence of any oral contract between Plaintiff and the named defendant in this action, CSL Behring LLC.

Furthermore, because there is an express written contract addressing Plaintiff's entitlement to the LTI payment he seeks—indeed, Plaintiff pleads that his written contract "evinces CSL Behring's agreement to pay the one-off cash based long term incentive payment to Zhang," (Am. Compl. ¶ 38)—Plaintiff cannot rely on any alleged oral agreement to provide the same benefit.

*See Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004) ("Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract."); *see also AscellaHealth, LLC v. CRx Health Servs., LLC*, No. 14-5949, 2015 U.S. Dist. LEXIS 46313, at *7 (E.D. Pa. Apr. 9, 2015) ("A separate oral agreement may exist here only if it concerns a subject matter different than the written agreement."). Consequently, even accepting Plaintiff's vague assertions regarding conversations in which he did not participate regarding CSL Behring's alleged responsibility for an LTI payment to him (*see* Am. Compl. ¶¶ 26, 64-65), and his allegation that Ruide's CEO said that CSL Behring agreed to pay LTI (Am. Compl. ¶ 27), those allegations are insufficient to sustain the existence of a separate oral contract because they address the same benefit—an LTI payment—addressed in the Labor Contract. *Id*.

Again, as Plaintiff avers in his Amended Complaint, the alleged entitlement to the LTI payment is set forth in Article 18 of the Labor Contract. (*See* Am. Compl. ¶ 38); Exhibit A, Article 18 at p. 9. Any disputes regarding the Labor Contract, including those regarding the LTI payment, must be remedied through the Labor Contract's detailed, mandatory dispute resolution provision. *See id.*, Article 29 at p. 24. Plaintiff not only acknowledges this process, he abided by it, but is seemingly unhappy with the outcome. (Am. Compl. ¶ 62). Allowing Plaintiff to re-litigate this issue in a new forum would be unjust and highly prejudicial.[5]

---

[5] Even if Plaintiff were allowed to re-litigate the same issue in the U.S. Courts, and by the plain terms of the Labor Contract, he should not be, principles of issue preclusion and comity dictate that the decision of the court in China should be honored and the matter dismissed on that basis. *See e.g., Encore Int'l, Inc. v. Downey,* 343 F. Supp. 3d 459 (E.D. Pa. 2018) (holding that a judicial decision regarding enforceability of an agreement could not be re-litigated considering principles of comity and collateral estoppel because the issue had been previously litigated in a legal proceeding in Canada).

Finally, the Labor Contract in Article 33 makes clear that any amendment must be mutual and in writing. *See* Exhibit A, Article 33 at p. 13 ("the related section in this Contract can be changed accordingly by mutual written agreement between Party A and Party B"). There are no facts pleaded that would support a finding of a written amendment to the Labor Contract.

In light of the above, Plaintiff's breach of contract claim should be dismissed with prejudice.

### B. Count II: Plaintiff's Breach of Implied-in-Fact Contract Claim Should be Dismissed As an Express Contract is Already at Issue in this Case.

Plaintiff cannot pursue a benefit provided in an express written contract pursuant to an implied contract theory. It is well settled that where an express written agreement has been validly entered into by both parties, a party may not allege an implied contract exists as to terms in the written agreement. *Baer v. Chase*, 392 F.3d 609, 616-17 (3d Cir. 2004) ("There cannot be an implied-in-fact contract if there is an express contract that covers the same subject matter."). If the parties have entered into a valid written agreement, it is the plaintiff's burden to show that the alleged implied contract is "entirely unrelated" to that agreement. *See Martin v. Snap-Tite*, 641 F. App'x 126, 129 (3d Cir. 2016) (quoting *Turkmenler v. Almatis, Inc.*, No. 11-1298, 2012 U.S. Dist. LEXIS 44027, at *10 (W.D. Pa. Mar. 28, 2012) ("To be valid, [the] implied contract must be entirely unrelated to the express contract.")). By the terms of Plaintiff's own pleading, it is clear that not only is the alleged implied contract "related" to the written Labor Contract, the benefit Plaintiff seeks pursuant to the alleged implied contract is the very benefit addressed in the written contract—an LTI payment. That any alleged entitlements to employment-related compensation flow only from the written Labor Contract and nowhere else is further underscored by Plaintiff's allegation concerning other elements of his compensation: "[t]o entice Zhang to work for Ruide/CSL Behring after the acquisition, CSL Behring offered to compensate Zhang with a

9

monthly gross fixed salary in the amount of RMB 45,000 before tax; short term incentive compensation, which was an annual target bonus with a maximum amount of 20% of Zhang's gross annual salary; and long-term incentive compensation . . . ." (Am. Compl. ¶ 24). Like the LTI payment, the fixed salary of RMB 45,000 and annual target bonus with a maximum amount of 20% of Plaintiff's gross fixed salary (among many other conditions of Plaintiff's employment) are terms of the Labor Contract. *See* Ex. A at Articles 16 & 17, at p.8. Again, any entitlement to an LTI payment derives from the written Labor Contract and thus, Count II should be dismissed.

### C. Count III: Plaintiff's Promissory Estoppel / Detrimental Reliance Claim Should be Dismissed as an Express Contract is Already at Issue in this Case.

Because there is a written contract between the parties, Plaintiff's claim for promissory estoppel / detrimental reliance also fails. "Under Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel." *Isobunkers, L.L.C. v. Easton Coach Co.*, No. 09-879, 2010 U.S. Dist. LEXIS 11201, at *13 (E.D. Pa. Feb. 9, 2010) (citing *Carlson v. Arnot-Ogden Mem'l. Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990)). Promissory estoppel is generally invoked where the elements for formation of a contract have failed, but justice nonetheless requires judicial enforcement of one party promise to another. *Carlson*, 918 F.2d at 416. Where an express contract governs the relationship of the parties, however, "a party's recovery is limited to the measure provided in the express contract." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987). Again, per the terms of Plaintiff's own pleading, there exists a valid contract, and thus, Plaintiff's promissory estoppel claim fails.

### D. Count IV: Plaintiff's Unjust Enrichment Claim Should be Dismissed as an Express Contract is Already at Issue in this Case.

To succeed on a claim for unjust enrichment, a party "must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *KBS Pharm., Inc. v.*

10

*Patel*, No. 21-1339, 2021 U.S. Dist. LEXIS 107779, at *19 (E.D. Pa. June 9, 2021) (citing *Hershey Foods Corp.*, 828 F.2d at 999). However,

> under Pennsylvania law, unjust enrichment is a quasi-contractual doctrine that is "inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Id*. "Where an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract" and there can be no separate recovery for unjust enrichment. *Id*.

*KBS Pharm.*, 2021 U.S. Dist. LEXIS 107779, at *19 (quoting *Hershey Foods Corp.*, 828 F.2d at 999). As there is an express contract that governs Plaintiff's alleged entitlement to an LTI payment, Plaintiff cannot assert a claim for unjust enrichment based on the failure to receive such a payment.

## V.     CONCLUSION

For the foregoing reasons, Defendant CSL Behring LLC respectfully requests that the Court grant its motion to dismiss Plaintiff's First Amended Complaint in its entirety with prejudice.

Respectfully submitted,

Dated: October 19, 2023

By:   */s/ Elizabeth McManus*
Elizabeth K. McManus, Esq.
Gavin T. Carpenter, Esq.
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8336
mcmanuse@ballardspahr.com

*Attorneys for Defendant CSL Behring LLC*