# EXHIBIT A

编号：*2016ALC____*

# 武汉中原瑞德生物制品有限责任公司

**劳 动 合 同**

（2016 版 A）

甲方：武汉中原瑞德生物制品有限责任公司

乙方：章征甲

签订日期： _2017_ 年 ____月____日

劳动合同

**LABOR CONTRACT**

**甲方（用人单位）：武汉中原瑞德生** **乙方(员工)：章征甲**
**物制品有限责任公司** **Party B (Employee): Zhang**
**Party A (Employer): Wuhan** **Zhengjia**
**Zhongyuan Ruide Biological**
**Products Co. Ltd**

法定代表人： 身份证号码：
Legal Representative: ID Number:

注册地址：武汉东湖新技术开发区光 通讯地址：
谷七路99号 Address:
Registered Address: No. 99, Guang Gu
Qi Road, Dong Hu New Technology
Development District, Wuhan 户籍所在地地址：
Domicile of Registered Permanent
联系电话（固定/移动）： Residence:
Telephone/Mobil phone Number:

联系电话（固定/移动）：
Telephone/Mobil phone Number:

甲、乙双方根据《中华人民共和国劳动法》、《中华人民共和国劳动合同法》和
其他国家、地方的有关规定，遵循平等、自愿、诚实信用原则，经协商一致，订
立本劳动合同（以下简称"本合同"）。
In accordance with the *PRC Labor Law*, *PRC Labor Contract Law* and other relevant
state and local laws and regulations, and in line with the principles of equality,
willingness and good faith, the two Parties, namely Party A and Party B, enter into
this Labor Contract (hereinafter referred to as "this Contract") through friendly
consultation.

## 第一章    合同的类型与期限
### CHAPTER ONE        TERM AND TYPE OF CONTRACT

**第一条**    本合同的类型为：   （一）  。

**Article 1** The type of this Contract is  (1)  .

（一）固定期限劳动合同，合同期限为__年，自 2017 年 8 月 1 日至 2020 年 6 月 30 日止。

(1) A fixed-term labor contract, the term of which is ╱ years, commencing from ╱ and expiring on ╱.

（二）本合同为无固定期限劳动合同，自   ╱  年 ╱ 月 ╱ 日起。

(2) A non-fixed-term labor contract, the term of which commencing from   ╱  .

（三）以完成一定工作任务为期限的劳动合同。自   ╱  年   ╱  月 ╱  日起至该项工作任务完成（特别备注：  ╱  ）时为止。

(3) A labor contract aims to complete the prescribed work task, the term of which commencing from  ╱ and expiring on the date when the work task is completed (Special Remarks:  ╱  ).

**第二条**    若乙方开始工作时间与本合同订立时间不一致的，以实际到岗之日为本合同起始时间，建立劳动关系。

**Article 2** In case that the date Party B begins to work is different from the date this Contract is signed, the employment relationship between Party A and Party B begins from the date when Party B actually begins to work for Party A.

## 第二章    工作内容和工作地点
### CHAPTER TWO     JOB DESCRIPTION AND LOCATION

**第三条**甲方聘用乙方在甲方负责血源管理工作，岗位为副总经理。

**Article 3** Party A employs Party B to be in charge of Plasma Management, and Party B's position is Vice President of Plasma Management.

**第四条**    乙方的工作地点为湖北省武汉市。经乙方同意后甲方可随时要求乙方前往其他工作地点工作。乙方同意为适当履行其职责而出差（包括国内和国外的出差）。

3

**Article 4** Party B's job location is <u>Wuhan, Hubei Province.</u> After obtaining Party B's consent, Party A may from time to time require Party B to work at other locations. Party B agrees to travel (both within and outside the PRC) as may be required for the proper performance of his/her duties.

**第五条**　乙方应认真履行甲方制定的岗位职责，按质、按量、按时完成其本职工作；未经甲方事先书面允许，乙方不得在其他单位从事兼职或全职工作。

**Article 5** Party B shall well perform his/her duty in accordance with his/her job responsibilities stipulated by Party A, meeting the required standard of quality, quantity and timeliness. Party B shall not hold any part-time or full-time job in any other entity or organization unless Party B obtains prior written permission from Party A.

**第六条**　甲方因生产和工作需要，依据乙方的专业、特长、工作能力和表现，需调整乙方工作岗位、工作报酬或本合同约定的福利待遇的，原则上应与乙方协商一致。但是，如果（i）乙方患病或非因工负伤，在规定的医疗期满后不能从事原工作，或（ii）乙方不能胜任工作的，甲方有权根据劳动合同法第 40.1 条以及第 40.2 条的规定单方调整乙方的工作岗位。此外，甲方有权根据其总体经营情况以及具体业务需要调整乙方工作岗位的具体职责。

**Article 6**　Due to production and business operation needs of Party A and according to the profession, skill, capability and performance of Party B, if Party A needs to adjust Party B's work position,　compensation or benefits stipulated in this Contract, Party A shall reach mutual agreement with Party B about the adjustment. However, Party A reserves the right to unilaterally adjust Party B's work position in accordance with Article 40.1 and Article 40.2 of the Labor Contract Law, if (i) Party B suffers from illness or non-work related injuries, and cannot carry out the duties of his job position after the expiration of the statutory medical treatment period, or (ii) Party B is incompetent at work. In addition, Party A reserves the right to reasonably adjust the specific duties of Party B's work position depending on its general business performance and specific business needs.

**第三章　工作时间**

**CHAPTER THREE　　WORKING HOURS**

**第七条**　甲方将按照中国法律法规的规定制定并实施工作时间制度。

**Article 7** Party A will formulate and implement working hour system in accordance with the relevant laws and regulations of PRC.

**第八条**　甲方安排乙方执行 **不定时** 工作制。

在甲方的不定时工作制申请得到主管部门批准之前，乙方将执行标准工时工作制。自甲方获得不定时工作制批准之日起，乙方将执行 不定时 工作制。

在标准工时制下，乙方每日工作时间不超过 8 小时，平均每周工作时间不超过 40 小时。乙方每周工作 5 天（办公时间为周一至周五每天的上午 9:00 至下午 5:30，其中包括 1 个小时的午休时间）。

在不定时工作制下，乙方每日工作时间不固定。

在综合计算工作制下，乙方将以　/　为周期综合计算工作时间，但其平均日工作时间和周工作时间应与法定标准工作时间基本相同。

**Article 8** Party A shall arrange Party B to work under **flexible** working hour system.

Party B shall be subject to standard working hour system until Party A gets the approval of flexible working hour system from the in-charge labor authority. Party B shall be subject to flexible working hour system since the date when Party A gets the approval from the in-charge labor authority.

Under standard working hour system, Party B shall work no more than 8 hours per day, and no more than 40 hours in average per week. Party B shall work 5 days a week (Office hours start at 9:00 a.m. and end at 5:30 p.m., one-hour break for lunch is inclusive).

Under flexible working hour system, the daily working hours of Party B shall not be fixed.

Under comprehensive calculation working hour system, the working hours will be calculated based on　/　. The average daily working hours and weekly working hours within the calculating period shall be same as the statutory standard working hour system.

**第九条**　甲方确因工作需要，可安排乙方加班工作。

在标准工时工作制下，甲方应依照国家和地方有关法律、法规，向乙方支付加班工资，或安排乙方补休。

在不定时工作制下，除非当地另有规定，甲方将不再额外支付加班工资。

在综合计算工时工作制下，其综合计算工作时间超过法定标准工作时间的部分，应视为延长工作时间。甲方应依照国家和地方有关法律、法规，向乙方支付加班工资，或安排乙方补休。

**Article 9** In accordance with Party A's business needs, Party A may arrange Party B to work overtime after the regular working hours.

Under the standard working hour system, Party A shall pay Party B the overtime payment or provide relevant days-off in lieu of overtime payment in accordance with the state and local laws and regulations.

Under the flexible working hour system, such hours will not be paid unless local regulation requires.

Under the comprehensive calculation working hour system, the working hours exceed the standard working hours should be counted into extended working hours. Party A shall pay Party B the overtime payment or provide relevant days-off in lieu of overtime payment in accordance with the state and local laws and regulations.

## 第四章　　规章制度与劳动纪律
## CHAPTER FOUR　　COMPANY POLICIES AND DISCIPLINES

**第十条**　除遵守本合同条款外，乙方应自觉遵守国家的法律、法规、规章和甲方依据相关法律法规不时制定并告知员工的各项规章制度。

**Article 10** Apart from provisions of this Contract, Party B shall comply with all relevant laws and regulations of PRC, and policies and regulations formulated in accordance with applicable laws and regulations and notified to the employees by Party A from time to time.

**第十一条**　乙方不得为自己或/和任何其他第三人的利益从事任何与甲方利益冲突的第二职业或活动，并应保守甲方的商业秘密和与知识产权相关的保密事项。

**Article 11**　It is strictly forbidden for Party B to hold any other occupation or participate in any other activities for the benefit of himself or/and any third party which conflicts with Party A's business interest. Party B shall keep Party A's business secret and intellectual properties related matters confidential.

**第十二条**　乙方有任何严重违反甲方规章制度和劳动纪律的行为，甲方有权按国家和本单位的规定对乙方给予口头警告、书面警告等纪律处分，直至解除本合同。

**Article 12**　In cases of any violation of Party A's policies and labor disciplines, Party A is entitled to carry out the procedures of punishment according to the relevant regulations of the state and policies of Party A, including but not limited to oral warning, written warning and up to termination of this Contract.

**第十三条**　乙方应遵守甲方任何有关其工作职责的指令，前提是该等指令符合相关法律法规的规定。

**Article 13**　Party B shall comply with any and all instructions given to him by Party A regarding the duties and responsibilities of his role, provided that such instructions are in compliance with applicable laws and regulations.

**第十四条**　在任职期间，乙方必须

(1) 不从事任何与雇用要求不兼容的行为，包括可能使甲方声誉或利益受损的行为；

(2) 遵守甲方给的所有指示，包括相关政策、程序或惯例中的规定（包括《CSL负责任的商业行为准则》）；

(3) 熟悉甲方的所有政策、程序和惯例，这些信息皆能从内部网获取。甲方可不时地自主变更、代替、终止政策、程序和惯例，该等规定不作为本合同条款；

(4) 未经甲方事先书面同意，不得直接或间接地，不论是以个人的名义，或与任何其他人联合或代表，从事、涉及或参与任何与甲方所从事的业务具有或类似性质的业务的行为或筹备工作。

(5) 未经甲方事先书面同意，不得为任何可能与本公司的利益冲突、妨碍公司利益或履行工作职责的其他企业或组织建立任何其他雇用关系或从事任何活动。

**Article 14** During the employment Party B must,

(1) not engage in any conduct that is incompatible with Party A's employment conditions, including conduct that might bring Party A into disrepute or is adverse to its interests;

(2) comply with all directions given by Party A, including those given in any policy, procedure or practice, including the CSL Code of Responsible Business Practice;

(3) remain familiar with all of Party A's policies, procedures and practices in place from time to time, which can be obtained from the intranet. Party A's policies, procedures and practices may be varied, replaced or discontinued from time to time by Party A at its absolute discretion and they are not incorporated as terms of this Contract;

(4) not, without the prior written consent of Party A directly or indirectly and whether on Party B's own behalf or jointly with or on behalf of any other person, carry on or be engaged, concerned or involved in, the conduct of or preparation for any business in competition with or of a similar nature to any business carried on by Party A;

(5) not, without the prior written consent of Party A, enter into any other employment

or engage in any activity for any other business, organisation or venture that could conflict with or be detrimental to or interfere with the interests of Party A or the performance of Party B's duties

第五章　　劳动报酬

**CHAPTER FIVE　　REMUNERATION**

**第十五条**　甲方执行符合国家和地方相关法律法规以及 CSLBehring 集团内部规定的薪酬政策。

**Article 15** Party A implements the remuneration policy in accordance with relevant state laws and local regulations and CSLBehring Group's internal rules.

**第十六条**　甲方根据乙方所在岗位，确定乙方每月的固定工资为税前人民币 _45,000_ 元，甲方应按照乙方每月的实际考勤情况计算乙方的应得工资，并于每月 _5_ 日前以货币形式足额支付乙方的上月工资。

**Article 16** In accordance with the position of Party B, the monthly gross fixed salary shall be paid by Party A in the amount of RMB _45,000_ before tax. Party A shall calculate Party B's salary based on Party B's monthly attendance record and pay in full to Party B the last month remuneration receivable by Party B in currency on _5th_ of each month.

**第十七条　短期激励**

乙方有资格获得一笔年度绩效奖金目标年度绩效奖金最高为年度税前固定工资的 _20%_ (即，税前人民币 _108,000_ 元)。年度绩效奖金将会按照个人年度绩效表现和 CSLBehring 集团的全球业绩按照公式进行计算。个人年度绩效目标每年将由 CSLBehring 集团进行设定。

**Article 17 Short-term incentive**

Party B is entitled to an annual target bonus, and the maximum amount will be _20%_ of Party B's annual gross fixed salary (e.g.　RMB _108,000_ before tax). The payment of bonus shall be calculated in a formulation related to both individual performance and CSL Behring Group's global business performance. The individual performance target will be set by CSL Behring Group annually.

**第十八条　长期激励**

乙方有权参加 CSL Behring 集团长期现金激励计划，锁定期共三年。在乙方加入

该计划三年锁定期过后，现金将一次性发放。CSL Behring 集团董事会会每年审阅长期激励计划，并有权决定变更该计划内容和参与者。

**Article 18 Long term incentive**

Party B is entitled to participate in CSL Behring Group's cash based long term incentive program, which will be locked for 3 years and be paid as a one-off payment after Party B's 3 years participation in the program. The CSLBehring Group's Board will review the long term incentive program on an annual basis and has the right to change the content of and participants in the plan.

**第十九条** 甲方将向乙方支付一笔现金激励共计税前人民币 540,000 元。该款项将在之后三年等额发放，发放日期分别为 2018 年 8 月 1 日，2019 年 8 月 1 日以及 2020 年 8 月 1 日，前提是乙方在每一个付款日均仍受甲方雇用。

**Article 19** Party A will pay Party B a One-Time Cash Payment of RMB 540,000 (pre-tax), which will be paid in 3 instalments equally over the next three years on August 1st of 2018, August 1st of 2019 and August 1st of 2020 provided he remains employed by Party A on each of those payment dates.

**第二十条** 乙方工资将会根据 CSLBehring 集团的相关薪酬政策进行调整。

**Article 20** Party B's salary will be adjusted according to CSL Behring Group's remuneration policies.

**第二十一条 个人所得税**

乙方应按照中国法律法规的规定缴纳个人所得税。甲方将依照中国法律法规的要求从乙方工资以及其它款项中代扣相应金额的个人所得税缴到税务机关。

**Article 21 Individual Income Tax**

Party B shall pay Individual Income Tax in accordance with the relevant laws and regulations of PRC. Party A will withhold such amount from Party B's salary and other payments and pay it to the in-charge tax bureau according to the relevant laws and regulations of PRC**.**

## 第六章 社会保险与福利待遇
## CHAPTER SIX SOCIAL INSURANCE AND WELFARE

**第二十二条** 甲乙方应按国家和地方有关社会保险的法律、法规规定的标准缴纳各项社会保险，如养老保险、失业保险、医疗保险、生育保险和工伤保险。乙方应缴纳的社会保险费由甲方代为承担。

**Article 22** Party A and Party B shall respectively pay social insurance

9

contributions for pension, unemployment insurance, medical insurance, maternity insurance, and work-related injury insurance in conformity with the relevant regulations and statutory standards of the state and local governments. The contribution of social insurance payable by Party B will be taken on by Party A.

**第二十三条** 甲乙方应各自按国家和地方有关住房公积金的法律、法规规定的标准缴纳住房公积金。乙方应缴纳的住房公积金由甲方从乙方的工资中代扣代缴。

**Article 23**     Party A and Party B shall respectively pay housing fund based on the provisions and statutory standards of the relevant regulations of the state and local governments. The amount of housing fund payable by Party B will be withheld by Party A from Party B's salary payment.

**第二十四条　法定节假日和法定休假**

在本合同期限内，乙方有权依照国家和地方有关法律、法规以及甲方的规定享受带薪公众假期和带薪休假。

**Article 24     Statutory Holidays and Leave**

Within the term of this Contract, Party B shall be entitled to the public paid-holidays and statutory paid-leaves in accordance with the state and local laws and regulations and Party A's policies.

**第二十五条　法定年休假及公司福利假**

乙方将根据国家有关规定享有法定年休假。除法定年休假外，甲方每年给予乙方 10 天全薪公司福利假。如果乙方在年中加入或离开公司，其当年应享受的法定年休假和公司福利假将按乙方当年在公司的时间按照比例计算和给予。乙方应在每个日历年度结束前休完所有法定年休假。乙方休假应优先使用国家规定的法定年休假，然后再使用乙方与甲方约定的公司福利假。详细内容请参见公司休假管理规定。

**Article 25 Statutory Annual Leave and Company Welfare Leave**

Party B will be entitled to statutory annual leave according to related laws and regulations. In addition to statutory annual leave, Party B shall be entitled to 10 days' full-paid company welfare leave per year. The entitlement of statutory annual leave and company welfare leave will be pro-rated in respect of Party B's period of employment of the year if Party B joins or leaves the company in the middle of the year. Party B shall take all statuary annual leave before the end of each calendar year. Statutory annual leave shall be taken prior to the company welfare leave when Party B

takes annual leave and welfare leave. Please refer to the company's leave management policy for details.

### 第二十六条   病假和非因工负伤

在本合同期限内，乙方有权享受甲方依据国家和地方有关法律、法规制定的病假、病假工资和医疗待遇政策，但是此类政策不适用乙方因工负伤或患职业病的情况。

**Article 26 Sick Leave and Non-work-related Injury**

During the term of this Contract, Party B shall be entitled to sick leave, sick leave pay and medical treatment entitlement in accordance with state and local regulations and Party A's polices, provided that these schemes shall not cover the work-related injury or occupational diseases.

### 第二十七条   职业病、因工负伤和死亡

如因甲方不安全和不合规定的工作环境，或因甲方的疏忽大意，或因甲方故意恶意对待乙方，或因国家或地方法律法规规定的其他情形，直接导致乙方患职业病、因工负伤或死亡，乙方有权依法享受法定工伤保险待遇，包括工伤保险补偿、医疗待遇、停工留薪期待遇和/或其它法定待遇。

**Article 27 Occupational Disease, Work-related Injury and Death**

Party B shall be entitled to statutory work injury insurance entitlements, including the work injury compensation, medical treatment, paid work-injury leave treatment and/or other statutory entitlements   if Party B suffers any occupational disease or work-related injury/death directly caused by unsafe and unqualified work conditions in Party A's working places or negligence of Party A or deliberate ill-treatment by Party A, or other circumstances stipulated in relevant state and local laws and regulations.

## 第七章    劳动保护、劳动条件和职业危害防护
## CHAPTER SEVEN    LABOR PROTECTION, WORK CONDITIONS AND PREVENTION OF OCCUPATIONAL HARM

### 第二十八条   甲方应建立、完善劳动安全和卫生制度并严格执行国家与劳动安全和卫生相关的规定和标准，包括保护女职工的特殊规定，实行劳动安全和卫生教育，防止劳动事故、降低职业危害。

**Article 28**    Party A must establish and improve the policies of labor safety and

11

hygiene, strictly implement the relevant provisions and standards set forth in the state regulations and rules, including special protection for female workers, and educate employees on labor safety and hygiene to prevent accidents and reduce occupational hazards.

**第二十九条** 甲方为乙方提供必要的劳动条件以及安全卫生的工作环境，并依照甲方生产经营特点及有关规定向乙方发放必要的劳防用品。

**Article 29** Party A shall provide Party B with necessary safe and healthy work conditions and environment, as well as necessary protection appliance according to the particular operational requirement of Party A and the relevant laws and regulations.

**第三十条** 甲方应对可能产生职业病危害的岗位，向乙方履行告知义务，并做好预防降低职业危害的工作。

**Article 30** Party A has the obligation to notify Party B in case Party B is engaged in the post with potential occupational hazard and implement measures to prevent and reduce occupational hazards.

**第三十一条** 乙方须增强自我保护意识，在劳动过程中严格遵守安全操作规程。如由于乙方违反安全操作规程、违章作业，出现工伤事故，乙方应负一定责任，并应对甲方造成的经济损失进行赔偿。

**Article 31** Party B must strengthen his self-protection consciousness and abide by safety operational process strictly. In case that the work-related injury is caused by Party B's violation of relevant safety operational process and regulations, Party B shall bear certain part of the liability and compensate the related economic loss to Party A.

## 第八章　劳动合同的履行、变更、中止和解除
## CHAPTER EIGHT　　INPLEMENTATION, AMENDMENT, SUSPENSION, AND TERMINATION OF LABOR CONTRACT

**第三十二条** 甲方应当按照约定向乙方提供适当的工作场所、劳动条件和工作岗位，并按时向乙方支付劳动报酬。乙方应当认真履行自己的工作职责，并亲自完成本合同约定的工作任务。

**Article 32** Party A shall provide Party B with proper work place, work conditions

and position according to this Contract, and pay remuneration to Party B on time. Party B shall perform his work responsibilities and complete the prescribed work under this Contract by oneself.

**第三十三条**　订立本合同时所依据的法律、法规、规章发生变化，本合同的有关条款内容将相应变更。或经甲、乙双方经协商一致，可以书面方式变更本合同的内容。

**Article 33** Where there are changes to the relevant laws and regulations upon which this Contract is entered into, the related terms of this Contract will be changed accordingly. For other reasons, the related section in this Contract can be changed accordingly by mutual written agreement between Party A and Party B.

**第三十四条**　经甲、乙双方当事人协商一致，本合同可以解除。

**Article 34** Both Parties may terminate this Contract upon mutual agreement.

**第三十五条**　合同期内乙方若想辞职，应提前三十天以书面形式向甲方提出辞职。

**Article 35**　If Party B intends to resign during the term of this Contract, he should submit a written notice to Party A thirty (30) days in advance.

**第三十六条**　乙方有下列情形之一的，甲方可以解除本合同：
（一）在试用期间被证明不符合录用条件的；
（二）严重违反甲方的规章制度和/或劳动纪律的；
（三）严重失职，营私舞弊，给甲方造成重大损害的；
（四）乙方同时与其他用人单位建立劳动关系，对完成甲方的工作任务造成严重影响，或者经甲方提出，拒不改正的；
（五）乙方在应聘或签订本合同时存在提供虚假材料或有其他欺诈行为的；
（六）被依法追究刑事责任的；
（七）法律或行政法规规定的甲方可随时解除劳动合同的其他情形。
由于上述情形而解除本合同进而导致乙方与甲方之间的其他已生效的协议无法继续履行，乙方应当根据该等生效协议中的约定承担相应的违约责任。

**Article 36** In the case of any of the following circumstances，Party A may terminate the labor contract:

(1) It has been proven that Party B does not satisfy the recruitment requirements during the probation period;

(2) Party B has seriously violated the policies and/or labor discipline of Party A;

(3) Party B has committed severe negligence in his duty and/or has engaged in fraud and graft for personal benefit which results in serious economic damages to Party A;

(4) Party B has additionally established an employment relationship with another employer which materially affects the completion of his tasks with Party A, or refused to rectify the matter upon Party A's advisory;

(5) Party B has provided false materials or engaged in fraud when applying the job or signing this Contract with Party A;

(6) Party B is subject to criminal liabilities according to the law;

(7) Other circumstances under which Party A is entitled to terminate this Contract unilaterally in accordance with relevant laws or administrative rules and regulations.

In case that this Contract has been terminated due to any of the above circumstances, and further such termination causes the failure to perform other effective agreements between both Parties, Party B shall take the corresponding liabilities for breach of agreements according to the provisions of such agreements.

**第三十七条**　有下列情形之一的,甲方提前三十日以书面形式通知乙方或者额外支付乙方一个月工资后,可以解除本合同:

（一）乙方患病或者非因工负伤,在规定的医疗期满后不能从事原工作,也不能从事由甲方另行安排的工作的;

（二）乙方不能胜任工作,经过培训或者调整工作岗位,仍不能胜任工作的;

（三）本合同订立时所依据的客观情况发生重大变化,致使本合同无法履行,经甲、乙双方协商,未能就变更本合同内容达成协议的;

**Article 37**　In the case of any of the following circumstances, Party A may terminate this Contract with a written notice to Party B thirty (30) days in advance or pay Party B an extra month's salary in lieu of notice:

(1) Party B has suffered an illness or non-work-related injury, and after the expiration of the medical treatment period as prescribed, is unable to perform the original work duties, and is also unable to perform another job arranged by Party A;

(2) Party B is incompetent to perform the job and remains incompetent even after training or being transferred to another post;

(3) Where the objective circumstances which formed the basis of this Contract are substantially changed making it impossible to perform this Contract, Party A and Party B failed to reach an agreement on the amendment of the related clauses in this Contract accordingly following consultation;

14

**第三十八条**　乙方有下列情形之一的,甲方不得依据第三十七条的约定解除本合同:

（一）乙方如从事接触职业病危害作业但未进行离岗前职业健康检查,或者乙方为疑似职业病病人在诊断或者医学观察期间的;

（二）在甲方工作期间患职业病或者因工负伤并被确认丧失或者部分丧失劳动能力的;

（三）患病或者非因工负伤,在规定的医疗期内的;

（四）女职工在孕期、产期、哺乳期的;

（五）在甲方连续工作满十五年,且距法定退休年龄不足五年的;

（六）法律、行政法规规定的其他情形。

**Article 38**　In the case of any of the following circumstances occurring to Party B, Party A may not terminate this Contract in accordance with Articles 37:

(1) Party B is engaged in operations exposing him to occupational disease hazards and has not undergone a pre-departure occupational health check-up, or is suspected of having an occupational disease and is under diagnoses or medical observation;

(2) Party B suffered an occupational disease or sustained injuries from work during the employment period and has been confirmed as having lost or partially lost his/her capacity to work;

(3) Party B is undergoing the required period of medical treatment for an illness or non-work related injury;

(4) Party B, who is female, is in her pregnancy, confinement or nursing period;

(5) Party B has been working for Party A continuously for no less than 15 years and is less than five years away from his/her legal retirement age;

(6) Other circumstances as prescribed in laws or administrative regulations.

**第三十九条**　有下列情形之一的,本合同终止:

（一）本合同期满（或签订以完成一项工作任务为合同期限的,当双方约定的该项工作任务完成情形出现时）,即行终止;

（二）乙方已开始依法享受基本养老保险待遇的;

（三）乙方死亡,或者被人民法院宣告死亡、宣告失踪的;

（四）甲方被吊销营业执照、责令关闭、撤销或者甲方决定提前解散的;

（五）甲方被依法宣告破产的;

（六）法律、行政法规规定的其他可以终止本合同的情形的。

**Article 39**　This Contract shall end in the case of any of the following circumstances:

15

(1) The term of this Contract expires (for those with a term subject to the completion of a certain task, this Contract shall be terminated upon the completion of the specific task);

(2) Party B has commenced drawing his/her basic pension in accordance with the laws;

(3) Party B dies, or is declared dead or missing by a People's Court;

(4) Party A has its business license revoked, or is ordered to close or is closed down, or Party A decides on early liquidation;

(5) Party A is declared bankrupt pursuant to the law;

(6) Other circumstances as prescribed in laws or administrative regulations.

**第四十条** 在特定情况下，包括但不限于乙方因任何指控、违纪或违约而接受调查期间或法律法规不禁止的其他情形，甲方可暂停乙方的工作。如乙方被要求不上班，则该不上班期间应首先被视为安排乙方休年假。乙方在该等休假期间将仅获得基本月工资（如第十六条所规定）及法定福利；就该等休假期间而言，所有其他额外报酬和福利（包括但不限于任何奖金和佣金）均不予计发。

**Article 40** Party A may suspend Party B under certain circumstances, including but not limited to during any period Party A is carrying out a investigation into any alleged acts, violation of company policies or breach of contract by Party B or other circumstances not prohibited by laws and regulations. During any period where Party B is instructed not to attend work, Party B shall be deemed to have first been put on annual leave. Party B will only receive base pay (as stated in Article 16 ) and statutory benefits during any period of leave; all other additional compensation and benefits including but not limited to any bonus and commission will not accrue in relation to the leave period.

**第四十一条** 乙方同意，无论其因任何原因离职，乙方将向甲方指定的人士交还（并且不会占有、保管或控制或向任何他人交付）所有属于甲方、其承继人、受让人或其顾客、客户或被许可人的所有财产，包括但不限于任何及所有甲方印章（包括但不限于甲方公章、合同章、财务章及属于甲方或其任何关联或相关实体的任何其他印章）以及甲方提供的计算机和/或笔记本电脑、汽车、手机、黑莓和其他设备、钥匙、徽章、甲方银行卡、预支现金、合同、记录、数据、笔记、报告、提案、清单、往来通信、业务资料、客户资料、规格、图纸、蓝图、草图、发明、可获版权的作品、资料、设备和任何其他文件或财产及上述任何项目任何格式的复制件或概要，无论其是否载有保密信息。上述物品须以合理或者甲方认

可的状态归还公司、且不得有任何损坏或内容删除。乙方同意，所有上述项目（第三方信息除外）始终属于甲方的财产。乙方以可接受的方式归还所有甲方财产并完成工作交接手续是甲方支付经济补偿金（如有）的前提。甲方保留在法律允许的范围内从应付乙方的款项（例如结算款项）中扣除任何和所有未归还或受损的甲方财产价值的权利。本条约定须以合理、客观原则为准，甲方不得额外加大乙方的责任。

**Article 41** Party B agrees that, at the time of leaving the employment of Party A for whatever reason, Party B will deliver to the person designated by the Party A (and will not keep in Party B's possession, custody or control or deliver to anyone else) all of Party A's property, including but not limited to any and all Party A's chops (including without limitation the Party A's official chop, contract chop, financial chop, and any other chops belonging to Party A or any affiliated or related entity of Party A), Party A-provided computer and/or laptop, car, cell phone, blackberry, and other devices, keys, badges, Party A's bank cards, cash advances, contracts, records, data, notes, reports, proposals, lists, correspondence, business information, client information, specifications, drawings, blueprints, sketches, inventions, copyrightable works, materials, equipment and any other documents or property belonging to Party A, its successors or assignees or their clients, customers or licensees and all reproductions or summaries of any of the aforementioned items in whatever format, whether or not they contain confidential information. The above items must be returned in a reasonable state or a state acceptable to Party A, without damage or deletion of content. Party B agrees that all of the foregoing, except for third party information, will remain the Party A's property at all times.  Payment of the severance (if any) is expressly conditioned on the return of all of Party A's property in acceptable form and completion of the handover procedure, and Party A reserves the right to deduct the value of any and all such unreturned or damaged Party A property from any payment (such as settlement payment) payable to Party B to the extent allowed by law. This clause is subject to the principle of reasonableness and objectivity, and Party A should not increase Party B's responsibilities.

## 第九章　　违约责任
## CHAPTER NINE　　　LIABILITIES FOR BREACH OF CONTRACT

**第四十二条**　甲方违反本合同以及相关适用法律的规定解除本合同的，应当依照《劳动合同法》等相关法律法规的规定承担相应的法律责任。

**Article 42**      If Party A terminates this Contract in violation of the provisions of this Contract and relevant applicable laws, Party A shall take legal liabilities in accordance with relevant laws and regulations such as the Labor Contract Law, etc.

**第四十三条**   乙方违反本合同以及相关适用法律的规定解除本合同，或者违反本合同和/或其附件和/或双方日后签订的相关协议中约定的保密、竞业禁止、劳动服务期或其他乙方应遵守的任何义务和责任，或者违反甲方的规章制度，应当依据甲乙双方在本合同以及其他相关协议中的约定、甲方的规章制度的规定以及适用的法律法规的规定承担赔偿或其他法律责任，包括但不限于赔偿由此给甲方造成的经济损失。甲方有权从乙方的工资、奖金及津贴、补贴等（包括并不限于此）中按照有关法律法规做相应的扣除，如应赔偿金额无法在员工在职期间依法扣完的，在提供相关证据的情况下，甲方有权通过劳动争议仲裁机构或人民法院就剩余部分向乙方追偿。

**Article 43** If Party B wrongfully terminates this Contract in violation of the provisions of this Contract or relevant applicable laws or in breach of the confidentiality obligations, non-competition restrictions or service period or other responsibilities and obligations stipulated in this Contract and/or the annexes attached hereto and/or any other agreements signed by both Parties in future, Party B shall be liable to compensate any loss and damages of Party A caused by such violation or breach. Party A has the right to deduct from Party B's remuneration payment, including but not limited to his/her salary, bonus or allowances, the money that Party B owes to Party A in conformity with related laws and regulations. However, if the amount Party B owes to Party A cannot be fully compensated by deducting from Party B's remuneration payment in accordance to relevant laws during Party B's employment period, Party A could claim for the balance from Party B through the labor dispute arbitration institution or people's courts with relevant evidence.

**第十章   培训、保密义务以及竞业限制**

**CHAPTER TEN      TRAINING, CONFIDENTIALITY,**

**NON-COMPETITION**

**第四十四条   培训**

甲方将建立员工培训制度并根据甲方相关制度和中国相关法律法规向员工提供必要的培训。如乙方在合同期间接受甲方提供的或甲方资助的培训，双方应另行签订《培训协议》，约定具体服务期、赔偿标准等事项。

**Article 44 Training**

Party A shall establish employee training system and provide necessary training to Party B in accordance with the relevant laws and regulations of PRC and subject to Party A's policy in this regard. During the term of this Contract, when Party B accepts special training program provided or funded by Party A, both Parties shall sign a separate "Training Agreement" stipulating relevant issues such as the service term and liabilities in breach of the "Training Agreement".

**第四十五条　保密和知识产权**

(a) 乙方承认并同意乙方在受雇于甲方期间以及在劳动关系解除后的一年内 (i) 在乙方履行正常职责时或履行甲方分配给其的、属于其正常职责之外的任务时；(ii)利用甲方的材料或技术资源；和/或(iii) 直接或间接与甲方业务相关的，由乙方单独或与他人一起创作、构思、开发或制作的所有版权作品或外观设计或任何发明，乙方应立即向甲方（且仅向甲方）作出披露。所有上述各项及与其相关的任何记录、文件、文书（包括其复制件和概要）以及乙方在受雇期间制作或取得的其他版权保护作品（连同对所有该等作品的全球版权和外观设计权）都将是公司的专有财产。

(b) 如上述各项相关权利未自动归属于甲方，乙方特此不可撤销地向甲方转让该等权利，包括但不限于所有者权益、著作权、独家开发、制作、使用、出售、授权的权利、或从任何信息、发现、流程或其它形式的、乙方任职期间产生、制作的或改进的知识形式中获利的权利。必要时，由甲方承担费用，乙方将配合签署所有所需文件确保甲方在中华人民共和国以及相关地区拥有相关知识产权权利。

(c) 乙方应及时和充分地向公司披露乙方所知的由本公司其他员工开发的任何知识产权。

(d) 在乙方任职期间和之后，除非得到授权解除对公司相关义务，不得使用或泄露任何知识产权。

(e) 在雇佣期间，乙方不得以任何方式侵犯任何第三方包括前雇主的知识产权。当乙方在雇佣过程中的产出包含第三方拥有的知识产权时，乙方必须从第三方获得所有必要的同意和许可，以使用该知识产权。

(f) 乙方在本合同期限内以及在本合同因任何原因解除/终止后，未经甲方书面同意，乙方不会向任何人泄露，或为其自身或他人的利益而利用其在受甲方雇用期间获得的、与乙方及其关联实体或公司或其关联实体的任何客户、顾客、员工或高管的事务相关的任何具有保密性质的信息（"**保密信息**"），除非相关法律法规要求乙方披露该等信息。

(g) 乙方理解并同意，甲方已经采取了足够的措施以对保密信息进行保密。并且，

19

乙方同意保持对所有机密信息的妥善和安全保管，并尽最大努力防止第三方使用或泄露机密信息。

上述"**保密信息**"包括，但不限制其一般意义，任何公式、技术信息、计划、产品规范、研究成果、市场信息、商业秘密、或任何其他商业敏感或有价值的信息，无论是口头、书面或电子记录，包括所有与甲方的事务、交易、客户、企业、员工以及其关联机构相关的、乙方了解的或所拥有或控制的所有副本或摘录（包括因在乙方在甲方处任职，或在任职过程中所拥有或控制的、不论是否最初由甲方提供的信息（不属于公共领域的），但乙方能证明该信息获取在受雇于甲方之前的除外）。

### Article 45 Confidentiality and Intellectual property

(a) Party B acknowledges and agrees that Party B shall promptly disclose to Party A and to no one else all copyright works or designs, or any inventions, originated, conceived, written or made by Party B alone or with others during the period of the Party B's employment with the Party A and during one year after the termination of the employment (i) in performing Party B's normal duties and responsibilities or in performing tasks the Company assigns to Party B outside Party B's normal duties and responsibilities; (ii) by using the Party A's material or technical resources; and/or (iii) which are related, directly or indirectly, to Party A's business. All the above items and any records, documents, papers (including copies and summaries thereof) related thereto and other copyright protected works made or acquired by Party B in the course of Party B's employment shall, together with all the worldwide copyright and design rights in all such works, be and at all times remain Party A's exclusive property.

(b) To the extent that any of the rights above do not automatically vest with Party A, Party B hereby assigns irrevocably to Party A all such rights, including all ownership rights, copyright and the exclusive right to develop, make, use, sell, license or otherwise benefit from any information, discovery, process or other form of knowledge conceived, made or improved by Party B during party B's employment. If necessary, at Party A's expense, Party B will sign all documents that may be required for Party A to obtain relevant intellectual property rights.

(c) Party B will promptly and fully disclose to Party A any intellectual property known by Party B to have been developed by any other employee of Party A. (d) During and after Party B's employment, Party B must not use or disclose any Intellectual Property except as required to discharge Party B's duties to Party A.

(e) Party B must not act in any way during Party B's employment that infringes the intellectual property rights of any third party, including previous employers.

Whenever Party B produces work in the course of Party B's employment that contains intellectual property owned by a third party, Party B must obtain all necessary consents and licenses from that third party for use of that intellectual property.

(f) Party B agrees that both during the term of this Contract and after the ending of this Contract for whatever reason, that Party B will not, without Party A's written consent, divulge to any person, or use for Party B's own benefit or the benefit of any person, any information of a confidential nature concerning the business of Party A and its related entities or of any customer, client, employee or officer of Party A or any of its related entities which has come to Party B's knowledge during the course of employment with the Company (the "**Confidential Information**") except that Party B is required to disclose such information by applicable laws and regulations.

(g) Party B understands and agrees that Party A has taken adequate and sufficient measures to maintain the confidentiality of the confidential information. Party B also agrees to maintain proper and secure custody of all Confidential Information and use Party B's best endeavours to prevent the use or disclosure of the Confidential Information by third parties.

The above **Confidential Information** includes, without limiting its ordinary meaning, any formulae, technical information, plan, product specification, research results, marketing information, trade secret, or any other commercially sensitive or valuable information, whether oral, written or recorded electronically and including all copies or extracts, known to Party B or in Party B's possession or control, relating to the affairs, transactions, customers, business or employees of Party A and its related bodies corporate, including information that may come into Party B's possession or control in the course of and by reason of employment with Party A, whether or not the same was originally supplied by Party A, which is not in the public domain, but does not include information that Party B can demonstrate was known to Party B prior to the commencement of Party B's employment with Party A.

### .第四十六条  竞业限制

接受这个职位，乙方认可该角色需要、并能够接触甲方和 CSL Behring 集团专属的战略计划、目标和商业秘密。乙方薪酬的一部分是和在全球范围内参与管理、指导 CSLBehring 集团相挂钩。由于这些原因,以及此合同提供的有价值的条款,，乙方特此认可立约并同意乙方在劳动合同解除或终止后的十二个月期间（"**不竞争期限**"），乙方不得直接或间接地与甲方或任何 CSLBehring 集团公司在任何国家开展的业务进行竞争。

21

在执行期间的每个月乙方将获得相当于乙方劳动合同解除或终止前 12 个月平均工资 50%的不竞争补偿（"不竞争补偿"）。

该项非竞争条款所禁止的具体内容包括但不限于乙方出于商业目的接触和/或推广 CSL Behring 集团的竞争对手、顾客或客户或在合同解除或终止时双方认同的潜在客户。

乙方承认并表示如果上述违反上述条款，是无法衡量甲方或 CSL Behring 集团的货币损失。如果乙方违反上述调控款，甲方有权寻求赔偿，包括有权要求相关方停止违反本条款的行为。乙方进一步了解并同意，如果法院认定本章下任何不竞争条款的任何部分不能强制执行，那么在这种情况下，乙方同意该条款所约定的范围在适合的法律条款下最大化，包括范围、时间、周期和地域。

**Article 46 Non-Compete**

By accepting this position, Party B acknowledges the role will require and provide access to Party A and the CSL Behring Group's proprietary strategic plans, objectives and trade secrets and that a component of Party B's compensation is linked to Party B's key participation in the management and direction of the CSL Behring Group worldwide.  For these reasons, and in consideration of the good and valuable additional consideration provided to Party B under this agreement, which Party B hereby acknowledges, covenants and agrees that, for a period of twelve months following ending or termination of Party B's employment (**"Non-Compete Term"**), Party B shall not, if required by the CSL Behring Group, directly or indirectly, compete with Party A or any related CSL Behring Group Company in any Country in which the CSL Behring Group then does business. For each month of enforcement, Party B will receive the equivalent of 50% of Party B's average monthly salary over the past 12 months prior to the employment ending or termination date (**"Non-Compete Compensation"**)

This non-compete covenant specifically includes, but is not limited to, Party B contacting for business purposes and/or the promoting the business of a competitor, the customers or clients of the CSL Behring Group and such prospective customers of the CSL Behring Group who will be mutually agreed at the time of termination/ending of employment .

Party B hereby acknowledges and represents that it is impossible to measure the monetary damages to Party A and the CSL Behring Group in the event of Party B's breach of any of the provisions contained herein, and that in the event of Party B breach, Party A shall be entitled to seek equitable relief, including the right to seek to enjoin any party in violation of this clause. Party B further understands and agrees

that if a court shall hold any non-compete clause under this Chapter as unenforceable, then in such event, Party B agree that the scope, duration or geographic restriction hereof shall be amended to the greatest extent and scope, longest period of time and largest geographical area enforceable under the applicable law.

**第四十七条** 尽管本合同有任何其他规定，甲方仍可在雇用关系解除/终止前，或在不竞争期限内的任何时候自行酌情选择不执行本合同第 46 条，且在法律允许的范围内不支付或不继续支付不竞争补偿。如甲方选择不执行本合同第四十六条，乙方不得寻求强制执行该条款且不得要求或继续要求不竞争补偿。如甲方决定不执行本合同第四十六条，甲方将按照有关法律法规提前书面通知乙方。

**Article 47** Notwithstanding any other provisions of this Contract, Party A in its sole discretion may choose not to enforce Article 46 of this Contract before termination of the employment or at any point during the Non-Compete Term, and not to pay or continue to pay the Non-Compete Compensation to the extent permitted by law. Where Party A chooses not to enforce Article 46, Party B shall not seek enforcement of the same or demand or continue to demand Non-Compete Compensation. Party A will provide a prior written notice to Party B in accordance with relevant laws and regulations if it decides not to enforce Article 46.

**第四十八条** 如果乙方违反本合同第四十六条项下的限制，甲方将不支付任何不竞争补偿。乙方承认并同意，乙方任何违反本合同第四十六条项下的限制之行动将导致甲方和/或其关联公司（如适用）遭受严重且难以计量的损害。因此乙方同意，乙方如违反第四十六条项下的限制，将向公司支付以下各项：

**Article 48** If Party B violates the restriction under Article 46, Party A will not be required to pay any Non-Compete Compensation. Party B acknowledges and agrees that any actions by Party B in violation of the restriction under Article 46 would cause Party A and/or its affiliates (as applicable) to suffer damages that are serious yet difficult to measure. Party B therefore agrees to pay to Party A the following if Party B violates the restriction under Article 46:

(a) 甲方根据本协议第四十六条已向乙方支付的所有款项；及

the equivalent of all amounts paid by Party A to Party B under Article 46; and

(b) 一次性支付的违约金，金额相当于乙方在不违反本合同的前提下能获得的不竞争补偿总额的六（6）倍，或给甲方和/或其关联公司实际造成的损失（以数额高者为准），无论不竞争补偿是否已支付给乙方。

lump-sum liquidated damages, which shall be six (6) times of the total Non-Compete

23

Compensation that would have been payable to Party B had Party B not violated the non-competition obligation, or the actual damages to the Party A and/or its Affiliates, whichever is higher and irrespective of whether or not the Non-Compete Compensation has been paid to Party B.

乙方同意，在其违反本协议第四十六条项下的限制的情形下，上述偿还要求和违约金对于赔偿乙方的损失，是公平与合理的。

Party B agrees that the refund and the liquidated damages above are fair and reasonable to compensate Party A in the event that Party B violates the restriction under Article 46.

## 第十一章    劳动争议处理
## CHAPTER ELEVEN    SETTLEMENT OF LABOR DISPUTES

**第四十九条**    甲、乙双方因本合同而发生争议均应友好协商解决。如双方经过友好协商而无法达成一致，任何一方可以向甲方劳动争议调解委员会（如有）要求调解。如调解不成，任何一方可以向相关劳动争议仲裁委员会申请仲裁。对仲裁裁决不服的，可以向人民法院提起诉讼。

**Article 49** Any disputes arising from the performance of, or in connection with this Contract shall be settled through friendly negotiations between the Parties. In case no agreement can be reached through negotiations, either Party can apply for mediation to the Labor Dispute Conciliation Committee of Party A, if any. If mediation can not be reached, both Parties may apply for arbitration to the relevant Labor Dispute Arbitration Committee. If either Party disagrees with the arbitral award rendered by such Committee, this Party may file a lawsuit in the People's Court.

## 第十二章    其他规定
## CHAPTER TWELVE    OTHER STIPULATIONS

**第五十条**    乙方保证在签订本劳动合同时已经依法与其原用人单位解除或终止双方的劳动合同或劳动用工关系，且不存在任何劳动争议，也无签署涉及甲方的竞业限制协议。未与原用人单位终止或解除劳动合同或劳动关系、因履行竞业限制协议所引起的劳动纠纷由乙方负责。

甲方应就下述目的承认乙方自 2013 年 6 月起在原用人单位的服务年限：(i)确定乙方是否具有享有甲方政策和福利计划项下福利的资格；及 (ii) 计算离职经济补偿金（如适用）及中国法律法规项下的其他法定福利。除上述例外情况之外，

对于乙方针对其前雇主享有的任何主张或权利，甲方概不承担责任，并且乙方不得因其与前雇主之间的关系而针对甲方提出任何权利主张或要求。

**Article 50** Party B guaranteed that he has terminated the labor contract or labor relationship with its former employer, and there exists no pending labor disputes between Party B and its former employer and no non-competition agreement involving Party A. and he shall be responsible for any labor disputes arising from his failure to do so.

Party A shall recognize Party B's years of service to its former employer since June 2013, for the purposes of (i) determining eligibility for benefits under Party A's policies and benefits plans and (ii) calculating severance payment (if applicable) and other statutory benefits under PRC laws and regulations. With the exception of the above, Party A is not in any way responsible or liable for any claims or rights that Party B may have against Party B's previous employer(s), and Party B may not raise any claims or demands against Party A that arose from or are related to the relationship with Party B's previous employer(s).

**第五十一条** 所有本合同签订时甲方已实施的规章制度，以及本合同签订之后甲方依据相关法律法规的规定不时修订、更新及制定并公布实施的规章制度乙方均应当严格遵守。

**Article 51** All the regulations and rules implemented by Party A prior to the execution of this Contract, and the regulations and rules amended, updated, formulated and publicly notified by Party A from time to time in accordance with the relevant laws and regulations after the execution of this Contract, shall be strictly observed by Party B.

**第五十二条** 如本合同的任何条款无效，该条款将视为从本合同中删除，本合同的其他条款仍然有效。

**Article 52** If any provision of this Contract is found to be invalid, that provision shall be deleted from this Contract and the other provisions shall remain in full force and effect.

**第五十三条** 本合同未尽事宜，双方可另行协商确定。

**Article 53** Both Parties may negotiate with each other and reach agreement on any issues not stipulated in this Contract.

**第五十四条**　乙方确认，甲方有关文书在无法直接送达给乙方的情形下（包括但不限于乙方拒收甲方通知等情形），乙方在本合同开头填写的通讯地址为甲方邮寄送达地址。一方如果迁址或变更电话，应当及时书面通知另一方。

**Article 54**　Party B confirms that under any circumstances that Party A cannot notify Party B directly, including but not limited to the circumstance that Party B refuses to accept Party A's notice, the address listed at the beginning of this Contract shall be the effective post address of Party B. Each party shall inform the other any change of address or telephone number.

**第五十五条**　本合同以中英文写就，一式两份，甲乙双方各执一份。若中英文本有不符，以中文文本为准。

**Article 55** This Contract, written in both Chinese and English, shall be signed in two originals. Each party holds one original. In case of any discrepancy between the Chinese and English version, the Chinese version shall prevail.

**第五十六条**　本合同经甲、乙双方签字或盖章后生效，对甲、乙双方都具有法律约束力。

**Article 56** This Contract shall become effective upon being sealed or signed by both Parties and have the equal legal binding force on both Parties.

**第五十七条**　乙方在签署本合同时已详细阅读了公司政策与程序，明白其内容细则，同意接受与遵守。

**Article 57** At the signing of this Contract, Party B has carefully read the company's policies, understood the details, and agreed to accept and abide by it.

甲方（盖章）：　　　　　　　　　　　　乙方（签字）：

Party A: ( Seal)　　　　　　　　　　　　Party B：(Signature)

时间：　　　　　　　　　　　　　　　　时间：

Date：　　　　　　　　　　　　　　　　Date：

第五十四条　乙方确认，甲方有关文书在无法直接送达给乙方的情形下（包括但不限于乙方拒收甲方通知等情形），乙方在本合同开头填写的通讯地址为甲方邮寄送达地址，一方如果迁址或变更电话，应当及时书面通知另一方。

**Article 54** Party B confirms that under any circumstances that Party A cannot notify Party B directly, including but not limited to the circumstance that Party B refuses to accept Party A's notice, the address listed at the beginning of this Contract shall be the effective post address of Party B. Each party shall inform the other any change of address or telephone number.

第五十五条　本合同以中英文写就，一式两份，甲乙双方各执一份。若中英文本有不符，以中文文本为准。

**Article 55** This Contract, written in both Chinese and English, shall be signed in two originals. Each party holds one original. In case of any discrepancy between the Chinese and English version, the Chinese version shall prevail.

第五十六条　本合同经甲、乙双方签字或盖章后生效，对甲、乙双方都具有法律的效力。

**Article 56** This Contract shall become effective upon being sealed or signed by both Parties and have the equal legal binding force on both Parties.

第五十七条　乙方在签署本合同时已详细阅读了公司政策与程序，明白其内容细则，同意接受与遵守。

**Article 57** At the signing of this Contract, Party B has carefully read the company's policies, understood the details, and agreed to accept and abide by it.

甲方（盖章）：
Party A: (Seal)

乙方（签字）：
Party B: (Signature)

时间：
Date:

时间：2017.08.01
Date:

26

# EXHIBIT B



LANGO LEGAL

September 13, 2023

# CERTIFICATION OF TRANSLATION ACCURACY

**TRANSLATION OF:**  ZHANG MATTER-WUHAN INTERMEDIATE PEOPLE'S COURT - CIVIL
JUDGMENT
**FROM** CHINESE **TO** ENGLISH

Lango Legal, a professional translation services agency, hereby certify that the above-

mentioned file has been translated by an experienced, qualified, and competent professional

translator who is fluent in the above-mentioned language pair. Lango Legal hereby certify that in

our best judgment, the translated text reflects the content, meaning, and style of the source text,

and constitutes in every respect a complete and accurate translation of the source text.





**Sarah Dunham** | Translation Program Director

(213) 444-5373 | Email | www.lango.co

325 Hudson St., 4th Floor | New York, NY 10018

# Wuhan Intermediate People's Court of Hubei Civil Judgment

(2022) E 01 MZ No. 2240

Appellant (Plaintiff in the original trial, Defendant here): Zhengjia Zhang, male, Han, born on October 16, 1965, residing at No. 491 Fengjiafan, Hanyang District, Wuhan, ID Card No.: 420106196510161218.

The agent ad litem: Yong Sun, a lawyer from Hubei Shouyi Law Firm.

Appellant (Defendant in the original trial, Plaintiff here): Wuhan Zhongyuan Ruide Biological Products Co., Ltd., residing at Seventh Guanggu Road 99, Donghu New Technology Development Zone, Wuhan.

Legal Representative: Xiaoping Chen, Vice President and General Manager of the Company.

The agent ad litem: Pingping Qiu, a lawyer from Beijing Tianda Gonghe (Wuhan) Law Firm

The agent ad litem: Jingyi Xia, an apprentice lawyer from Beijing Tianda Gonghe (Wuhan) Law Firm

Regarding the labor dispute between Appellant Zhengjia Zhang and Appellant Wuhan Zhongyuan Ruide Biological Products Co., Ltd. (hereinafter referred to as "Zhongyuan Ruide"), the parties appeal to this court for their disagreement with the (2021) E 0192 MC No. 1491 Civil Judgment made by the People's Court of Donghu New Technology Development Zone, Hubei Province. The Court accepted the appeal on February 7, 2022, formed a collegial panel in accordance with the law, and held a public hearing of the case on March 21, 2022. Appellant Zhengjia Zhang and his agent ad litem Yong Sun, and Appellant Zhongyuan Ruide Company and its agent ad litem Pingping Qiu attended the proceedings. During the trial, the parties applied to extend the trial limit for one month as they requested mediation. Such one-month period was not included in the trial limit. The case has now been concluded.

Zhengjia Zhang appealed: 1. to revoke Items 6 and 7 of the judgment of first instance, and to order that Zhongyuan Ruide shall pay Zhengjia Zhang his wages at the rate of two times his monthly wages (i.e. RMB 106,854 per month) from July 1, 2020 until the date of the conclusion of the open-term labor contract in accordance with the law. 2. to revoke Item 8 of the judgment of first instance, and to order that Zhongyuan Ruide shall fulfill the agreements in Article 18 of the labor contract and pay to Zhengjia Zhang the bonus under the long-term cash incentive plan (the bonus amount is tentatively set at CNY 70,890,986, and the final amount shall be determined by the Court in accordance with the standard of the plan). Facts and reasons: I. The court of first instance applied the law improperly when making the judgments in Items 6 and 7, and the contents of such judgments were contradictory. 1.    In Item 6, it was judged

that Zhongyuan Ruide should pay wages to Zhengjia Zhang at 100% of his original wages (i.e. CNY 53,000). It violated the "double pay" standard stipulated in Article 82 of the "Labor Contract Law". 2.　There was no legal basis for the judgment in Item 7 that Zhongyuan Ruide should pay Zhengjia Zhang 80% of his monthly wages (i.e. CNY 42,400). It is due to the attempt of Zhongyuan Ruide to terminate the labor relationship between the two parties that Zhengjia Zhang failed to provide labor services. Therefore, the court of first instance violated the following laws and regulations by ruling that Zhongyuan Ruide paid 80% of the wages to Zhengjia Zhang: Article 34 of the *Interpretation (I) of the Supreme People Court of Issues Concerning the Application of Law in the Trial of Labor Dispute Cases*: According to the provisions of article 14 of the Labor Contract Law, the employer shall sign an open-term labor contract with the laborer. If the employer fails to do so, the people's court may regard it being a relationship of open-term labor contract between the parties, and determine the rights and obligations of the parties in accordance with the original labor contract. Article 3(1) of LBF [1995] No. 223 Document stipulates that if the employer causes any loss to the wage income of the laborer, it shall pay to the laborer the wage income due to the laborer, and pay 25% of the wage income due as compensation. LSTH [2001] No. 238 Document affirms that the wage income due to the laborer under Article 3(1) of LBF [1995] No. 223 Document refers to the wage income lost by the laborer who cannot provide normal labor because the employer terminates the labor contract in violation of the national laws and regulations or the agreements of the labor contract. 3. Items 6 and 7 of the judgment violate the "double pay" provision of Article 82 of the "Labor Contract Law". As for the illegal acts of Zhongyuan Ruide, the court of first instance not only did not punish Zhongyuan Ruide by ordering to pay twice the salary according to law, but decided at its discretion that Zhongyuan Ruide only needed to pay 80% of the salary. Such judgment seriously harmed the rights and interests of Zhengjia Zhang as a laborer, and objectively supported the Zhongyuan Ruide's illegal termination of the labor contract. II. Item 8 of the judgment of first instance (i.e. rejecting other claims of Zhengjia Zhang) is wrong in the determination of facts. 1.　To confirm that there is no evidence to prove that Zhengjia Zhang participated in the long-term cash incentive plan in the judgment is not consistent with the facts, because Article 18 of the labor contract clearly stipulates that Zhengjia Zhang participated in the long-term cash incentive plan. "Party B is eligible for" in Article 18 of the labor contract has the same meaning as "Party B is eligible for" in Article 17. That is, Party A grants Party B a certain right. And the two sentences are translated from the same phrase "Party B is entitled to" in the English version of the labor contract. The court of first instance, while upholding the fact that Zhengjia Zhang participated in the short-term cash incentive plan provided for in Article 17, should also support the fact that Zhengjia Zhang also participated in the long-term cash incentive plan provided for in Article 18. 2. The judgment that "there is no evidence to prove that Zhengjia Zhang meets the relevant conditions for the payment of the bonus" is not consistent with the facts. The management documents of the long-term cash incentive plan can prove that Zhengjia Zhang is eligible for the payment of the bonus, but the court of first instance was misled by the false evidence provided by Zhongyuan Ruide. The management documents of

the long-term cash incentive plan are CSL Behring's internal rules and regulations, and therefore the burden of proof for such documents lies with Zhongyuan Ruide.

At presentation of evidence in the first instance, Zhongyuan Ruide intentionally submitted the management documents of the retention and growth plan disguised as the management documents of the long-term cash incentive plan, falsely claimed that CSL Behring only established the retention and growth plan, which was actually the long-term cash incentive plan, and claimed that Zhengjia Zhang's failure to participate in the retention and growth Plan is equivalent to Zhengjia Zhang's failure to participate in the long-term cash incentive plan. The retention and growth plan and the long-term cash incentive plan are two distinct incentive plans. The information disclosed in CSL Behring's annual report also indicates that CSL Behring has also established a dedicated long-term cash incentive plan. It is not the case that the CSL Behring has only established the retention and growth plan as Zhongyuan Ruide has stated.

Counterarguments of Zhongyuan Ruide: 1. Zhengjia Zhang confused wages with double wages. Items 6 and 7 of the judgment of first instance recognized Zhengjia Zhang's wages and wage losses since July 1, 2020, while Zhengjia Zhang's argument of paying double wages was based on another cause. The two causes should not be confused. In this case, Zhengjia Zhang did not provide labor services on July 1, 2020. On that day, Zhengjia Zhang deliberately went to the office to take photos, creating the illusion that he was still working. The photo could not prove he was actually working, and Zhengjia Zhang could not demand Zhongyuan Ruide to pay him wages according to the normal wage standard. In the course of the lawsuit, it was unfair to judge that Zhongyuan Ruide should pay wages to Zhengjia Zhang at 80% of his wages. During the above period, Zhengjia Zhang did not provide any labor service. Even if compensation is required, Zhengjia Zhang should only be paid with living expenses or the average wage of the society. The first instance of the case was closed after 9 months. If Zhongyuan Ruide was required to pay the salary to Zhengjia Zhang at the standard of more than CNY 40,000, the interests of Zhongyuan Ruide would be seriously damaged. 2. As for long-term cash incentives, it is required to sign an equity or option incentive contract. Zhengjia Zhang does not entered into any incentive contract with Zhongyuan Ruide and therefore does not participate in the long-term cash incentive plan. Zhang's claim for long-term cash incentive bonuses lack basis.

Zhongyuan Ruide appealed: 1. to judge that it was legal for Zhongyuan Ruide to terminate its labor relationship with Zhengjia Zhang on June 30, 2020, and that there was no actual labor relationship between the two parties from July 1, 2020; 2. to judge that Zhongyuan Ruide did not need to sign an open-term labor contract with Zhengjia Zhang; 3. to judge that Zhongyuan Ruide did not need to pay Zhengjia Zhang a short-term performance bonus of CNY 108,000; 4. to judge that Zhongyuan Ruide did not need to pay Zhengjia Zhang a cash incentive bonus of CNY 180,000; 5. and to judge that Zhongyuan Ruide was not required to pay to Zhengjia Zhang the salary of CNY 108,436.8 for the period from July 1, 2020 to September 1, 2020. Facts and reasons: I. The labor relationship between Zhongyuan Ruide and Zhengjia Zhang was terminated on June 30, 2020, and there is no de facto labor relationship between the two parties thereafter. Zhongyuan Ruide made the decision to terminate the labor contract on June

30, 2020 in accordance with the provisions of the "Labor Contract Law", and has served it on Zhengjia Zhang in accordance with law. Zhengjia Zhang has actually left Zhongyuan Ruide after receiving the Notice of Termination of Labor Contract. Zhongyuan Ruide has not arranged for him to engage in any work, nor paid him any labor remuneration. There is no actual labor relationship between the two parties. The records of Zhengjia Zhang entering and exiting Zhongyuan Ruide on his own for matters concerning resignation compensation and handover cannot prove that he is still engaged in the work agreed in the original contract. Therefore, Zhongyuan Ruide does not need to sign An open-term labor contract with Zhengjia Zhang. Secondly, after receiving the Notice of Termination of Labor Contract, Zhengjia Zhang has been actively communicating and negotiating with Zhongyuan Ruide on the amount of severance compensation from September 2020. As the two parties are far apart, and they are unable to reach an agreement, Zhengjia Zhang proposes to sign an open-term labor contract, and applies for labor dispute arbitration. It can be seen that the dispute between the two parties did not start from the decision to terminate the labor contract, but from that they could not reach an agreement on the amount of compensation. Thirdly, the fundamental reason for the termination of the labor contract by Zhongyuan Ruide is that the objective situation has changed significantly, resulting in its inability to arrange Zhengjia Zhang to continue to engage in the work of his original position. The Health Commission of Hubei Province (HCHP) refuses to grant an administrative license to Zhongyuan Ruide as for its application for setting up new plasmapheresis sub-centers in accordance with 2019 GWYH No. 283 Document. The "Decision on Refusing to Grant an Administrative License" made by the competent administrative department and the relevant policy and standard documents on which the department is based are all objective factors, which are objective circumstances unforeseeable and uncontrollable by Zhongyuan Ruide. Under the objective influence of the "Decision on Refusing to Grant an Administrative License" for the development of new plasmapheresis sub-centers made by the competent administrative department, Zhongyuan Ruide has to dissolve the development team of the plasmapheresis sub-centers and make adjustments to its organizational structure. Hence, as deputy general manager in charge of the development of new plasmapheresis sub-centers, the position of Zhengjia Zhang is eliminated. Objectively, Zhongyuan Ruide cannot renew the labor contract with Zhengjia Zhang. III. Zhongyuan Ruide need not pay to Zhengjia Zhang the wages from July 1, 2020 to September 1, 2020. After the termination of the labor relationship between Zhongyuan Ruide and Zhengjia Zhang on June 30, 2020, Zhongyuan Ruide has no de factor labor relationship with Zhengjia Zhang, the labor relationship shall not be resumed, and the labor contract with Zhengjia Zhang shall not be concluded. IV. Zhengjia Zhang's claim about "short-term performance bonus and cash incentive" has no factual basis and do not conform to the contractual agreements, therefore, Zhongyuan Ruide need not to pay him. According to Article 17 of the labor contract, CNY 108,000 is the maximum amount of the annual short-term performance bonus. The actual amount of the bonus shall be calculated according to the formula based on the individual annual performance and CSL Behring's global performance, and the target of individual annual performance will be set by CSL Behring every year.

Therefore, Zhengjia Zhang must meet the above preconditions in order to obtain the short-term performance bonus of CNY 108,000, while Zhengjia Zhang does not fully meet the conditions for obtaining such bonus. Secondly, Article 19 of the labor contract stipulates that Zhongyuan Ruide will pay a cash incentive to Zhengjia Zhang, totaling CNY 540,000 before tax. The payment shall be made in three installments on August 1, 2018, August 1, 2019 and August 1, 2020 respectively, provided that Zhengjia Zhang is still employed by Zhongyuan Ruide on each payment date. As Zhengjia Zhang has left Zhongyuan Ruide on June 30, 2020, he is not eligible for the above third payments and therefore should not receive the cash incentive.

Zhongyuan Ruide's supplementary grounds for appeal: I. the affirmation in the judgment of first instance that there has been a factual labor relations between the two parties since July 1, 2020 is wrong in both the establishment of facts and the application of law. First, the premise of the existence of labor relations between the laborer and the employer is that the employer actually uses the labor service provided by the laborer. However, since July 1, 2020, Zhongyuan Ruide has ended its employment of Zhengjia Zhang, closing the work email and access rights of Zhengjia Zhang, and Zhengjia Zhang has also gone through the handover procedures, so there is no factual labor relationship between them. Therefore, it cannot be confirmed that there is a factual labor relations between the parties since July 1, 2020. Secondly, Article 48 of the "Labor Contract Law" stipulates the legal consequences of illegally rescinding or terminating a labor contract. According to that Article, not in all cases in which an employer illegally rescinds or terminates a labor contract the employer is required to continue to perform the labor contract. If the laborer does not require the continued performance of the labor contract or the labor contract can no longer be performed, the remedy to the laborer should be compensation paid by the employer, rather than forcing the employer to continue to perform the labor contract. The case is a typical case where "labor contract is unable to be further performed", so the court should explain the legal provisions to Zhengjia Zhang, and inform him that he can claim compensations from Zhongyuan Ruide. When determining that Zhongyuan Ruide illegally terminated the labor contract, the court of first instance does not consider whether the labor contract between the two parties could continue to be performed, but directly decides that there exists a labor relationship between the two parties. This is clearly in violation of Article 48 of the "Labor Contract Law". II. The labor contract between Zhongyuan Ruide and Zhengjia Zhang can no longer be performed. First, Zhengjia Zhang, before his resignation, served as development director of the new plasmapheresis sub-centers, but the development and the entire business department of the new plasmapheresis sub-centers have been removed, and his position has also been removed accordingly. Therefore, there is no basis for the performance of the labor contract between the two parties. Second, the position of Zhengjia Zhang is not an ordinary one, and the development director of new plasmapheresis sub-centers is actually a resource position to some extent, which is unique and irreplaceable, and which can only be taken by a person with specific work background and experience. After the post was removed, Zhongyuan Ruide does not have any position of similar rank that requires similar work experience and work content for Zhengjia Zhang. Zhongyuan Ruide can not set up an executive position at

the director level for Zhengjia Zhang. After the judgment of first instance was made, all departments and the management personnel of Zhongyuan Ruide discussed and sought opinions on the position arrangement of Zhengjia Zhang and determined that no position could be assigned to Zhengjia Zhang. Even if the two parties continue to perform the labor contract, the judgment can not be enforced, resulting in loss of the judicial authority to settle disputes. Third, former leaders, colleagues, and subordinates of Zhengjia Zhang all expressed their unwillingness to work with him in the form of a "Letter of Opinions of the People" (i.e. a "Notarial Certificate"), and implored Zhongyuan Ruide not to resume the labor relations with Zhengjia Zhang. The Court should give full consideration to the appeals of other employees of Zhongyuan Ruide, and should not protect the interests of Zhengjia Zhang, but harm the interests of the whole company and other employees of the Company. Fourth, Zhengjia Zhang is currently involved in 3 uncompleted labor dispute cases with Zhongyuan Ruide, and the total amount he requires to be paid by Zhongyuan Ruide is up to CNY 13 million. It can be seen that he is not a well-meaning and vulnerable worker. There is a serious conflict of interests between the two parties, and the continued performance of the labor contract will seriously damage the interests of both parties. Fifth, during the litigation period of the case, Zhengjia Zhang repeatedly went to Zhongyuan Ruide to block the main door and abuse other employees, the contradictions between the two parties are sharp and irreconcilable, and there is no basis for mutual trust between the parties. If the Court forcibly requires both parties to continue to perform the labor contract, it obviously can not achieve the purpose of settling disputes, but will only aggravate the contradiction between the two parties. Sixth, the establishment of labor relations is based on mutual agreement. Zhengjia Zhang's behavior of blocking the main door and abusing colleagues has violated the employment standards of Zhongyuan Ruide. Zhongyuan Ruide shall enjoy employment autonomy and have the right to refuse to employ any employee who has the aforementioned bad behavior. Seventh, Zhengjia Zhang's behavior of blocking the main door and abusing other staff has exposed his grave danger. In addition, Zhengjia Zhang is an executive at the director level. If Zhengjia Zhang is allowed to continue to work in Zhongyuan Ruide, based on the lessons brought by the foregoing acts, it cannot be ruled out that Zhengjia Zhang will engage in other acts that seriously endanger Zhongyuan Ruide. Eighth, Zhengjia Zhang wants to continue to work in Zhongyuan Ruide not because he really loves his work and Zhongyuan Ruide. He just wants to achieve the purpose of asking for ultra-high compensation by asserting the continued performance of the labor contract. Finally, in the case that the labor contract can no longer be performed, it is also an effective protection and relief of laborer's rights if the employer is ordered to pay compensation in accordance with the law, which is also a more enforceable judicial decision. III. After July 1, 2020, Zhengjia Zhang fails to provide any labor service, so it is wrong for the court of first instance to decide that Zhongyuan Ruide shall pay Zhengjia Zhang the wages from July 1 to September 1 according to the wage standard during his tenure, and shall pay Zhengjia Zhang the wages at 80% of the wage standard during his tenure until the date when the two parties sign the open-term labor contract. First of all, Zhengjia Zhang did not provide any labor service after July 1, 2020, deliberately stayed

in his original office after July 2020 and deliberately took photos as evidence. He also went to the canteen on purpose and take photos as evidence. It is clear that these acts were deliberate for the purpose of litigation. In addition, Zhengjia Zhang's work email has already been closed on July 1, 2020, and there is no work arrangement for him. After July 23, Zhengjia Zhang has handed over all work materials to his colleagues. Without the working data, it is impossible for him to carry out any work. It is seriously wrong for the court of first instance to confirm he went to work normally from July 1 to September 1. Secondly, it is extremely unfair to require Zhongyuan Ruide to pay wages at the standard of CNY 42,400 per month during the litigation period from September 2, 2020 to the final judgment of the case. Reasons: i Zhongyuan Ruide insisted in the three lawsuits filed by Zhengjia Zhang that it could not resume the labor relationship with him. In this case, Zhengjia Zhang was fully capable of finding a job on his own, but he did not do so, but blocked the door and insulted other employees in Zhongyuan Ruide. Zhengjia Zhang did not take measures to reduce the damage, but intensified the contradiction between the two sides. He is seriously at fault. ii At present, it is impossible to know whether Zhengjia Zhang had other jobs during this period. If the salary of Zhengjia Zhang during the litigation period is paid at the standard of CNY 42,400 per month, he may benefit twice. iii The first trial of the case was filed as early as January 2021. The court of first instance concluded the case as late as November 2021, seriously exceeding the trial limit. During the extended trial limit, requiring Zhongyuan Ruide to pay wages to Zhengjia Zhang at the standard of CNY 42,400 per month is to make Zhongyuan Ruide pay for the conduct of exceeding the trial limit of the court of first instance. The trial limit of the first instance was extended to over 9 months, resulting in Zhongyuan Ruide to bear at least CNY 400,000 more in wage compensation. This is a sudden calamity for Zhongyuan Ruide. Fourth, any labor contract is a bilateral contract signed by both parties based on the autonomy of will, which can only be signed by both parties through consultation. As the labor contract between Zhongyuan Ruide and Zhengjia Zhang can no longer be performed, and both parties have not reached an agreement to conclude an open-term labor contract, it was wrong for the court of the first instance to conclude that Zhongyuan Ruide concluded an open-term labor contract with Zhengjia Zhang. V.    The maximum amount of short-term incentives stipulated in Article 17 of the labor contract is CNY 108,000 before tax. As to whether Zhengjia Zhang enjoys the annual short-term incentives and the amount of short-term incentives, Zhengjia Zhang should provide the relevant evidence. It was wrong for the court of first instance to impose the burden of proof on Zhongyuan Ruide. VI. Article 19 of the labor contract has clearly stipulated that the prerequisite for enjoying the cash incentives is Zhengjia Zhang is still employed by Zhongyuan Ruide on each payment date. As the labor contract has been terminated by both parties on June 30, 2020, Zhengjia Zhang is no longer eligible for the cash incentive bonus. Although it is Zhongyuan Ruide notifying to terminate the labor contract with Zhengjia Zhang, Zhengjia Zhang has also agreed. The two parties only have differences in the amount of economic compensation. So this case does not belong to the situation of Zhongyuan Ruide maliciously obstructing the achievement of payment conditions, and Zhongyuan Ruide should not pay Zhengjia Zhang the cash

incentives. VII. Social insurance is an obligation that should be undertaken jointly by the employer and the laborer. Any clause specifying that the social insurance shall be fully undertaken by the laborer shall be invalid. Similarly, Any clause specifying that the social insurance shall be fully undertaken by the employer shall also be invalid. The stipulation in the labor contract that Party A shall bear the social insurance payable by Party B is in essence an agreement that the employer shall bear all the social insurance payment, which shall be invalid. Therefore, Zhengjia Zhang has no right to require Zhongyuan Ruide to bear the social insurance premiums he has paid. Social insurance does not belong to wages and is subject to the limitation of arbitration. The Court should not support Zhengjia Zhang's claim that the social insurance premiums for the period of 2017-2019 are beyond the time limit for arbitration.

Counterarguments of Zhengjia Zhang: I. Zhongyuan Ruide's claim 1 violates the law and facts. 1. The claim of Zhongyuan Ruide to revise the judgment and confirm it is legal for Zhongyuan Ruide to terminate the labor relations does not conform to the provisions of the "Labor Contract Law". As of June 30, 2020, Zhongyuan Ruide and Zhengjia Zhang have signed three consecutive fixed-term labor contracts. Therefore, Zhongyuan Ruide's unilateral forced termination of the labor relations on June 30, 2020 violates the provisions of Article 14 of the "Labor Contract Law". 2. Zhongyuan Ruide's claim that there has been no factual labor relations from July 1, 2020 violates the law and facts. First of all, for labor disputes similar to whether there is a labor relationship between Zhongyuan Ruide and Zhengjia Zhang, it is specified in Article 34 of the *Interpretation (I) of the Supreme People Court of Issues Concerning the Application of Law in the Trial of Labor Dispute Cases* that: according to the provisions of Article 14 of the "Labor Contract Law", the employer shall sign an open-term labor contract with the laborer. If the employer fails to do so, the people's court may regard it being a relationship of open-term labor contract between the parties, and determine the rights and obligations of the parties in accordance with the original labor contract. Secondly, after Zhongyuan Ruide unilaterally terminates the labor relations on June 30, 2020, both the behavior of Zhengjia Zhang continuing to provide labor service for Zhongyuan Ruide and the failure of Zhongyuan Ruide to perform the provisions of Article 46 of the labor contract and to pay Zhengjia Zhang the non-competition compensation prove or serve as counterevidence of the existence of labor relation between the two parties. II. Zhongyuan Ruide's claim 2 violates the law and the objective facts. 1. The claim of Zhongyuan Ruide to revise the judgment as there is no need to sign an open-term labor contract is not in conformity with the law. First of all, Zhengjia Zhang and Zhongyuan Ruide have signed three consecutive fixed-term labor contracts, and there is no situation stipulated in Article 39 and Article 40(1)-(2) of the "Labor Contract Law". Therefore, it is in full accordance with the provisions of Article 14(3) of the "Labor Contract Law" for Zhengjia Zhang to require renewing the open-term labor contract. Secondly, after the labor contract is illegally terminated by Zhongyuan Ruide, Zhengjia Zhang has only been asking Zhongyuan Ruide to continue to perform the labor contract from start to end, and resolutely rejected Zhongyuan Ruide's proposal of paying CNY 640,000 compensation for illegally terminating the labor contract in the first instance. Therefore, Zhongyuan Ruide shall abide by the provisions of Article 48 of the "Labor Contract

Law", and renew the unfixed-term labor contract with Zhengjia Zhang in accordance with the law. 2. The claim of Zhongyuan Ruide to revise the judgment as there is no need to sign an open-term labor contract is not in conformity with the objective facts. Zhongyuan Ruide statement that the "Decision on the Refusal of Administrative License" it receives from HCHP constitute a significant change in its objective situation is a lie made up to distort the facts. The "Decision on the Refusal of Administrative License" was issued by HCHP after reviewing the application for "setting up Yingshan Plasmapheresis Sub-center and Jiayu Plasmapheresis Sub-center" submitted by Zhongyuan Ruide in September 2019. Because the application matters did not meet the approval standards stipulated by the PRC, HCHP made the "Decision on the Refusal of Administrative License". Zhongyuan Ruide was fully aware at the time of submitting the application that it did not meet the requirements for approval. To this end, it arranged Zhengjia Zhang to communicate and coordinate with HCHP. Zhongyuan Ruide has foreseen and prepared for the failure to obtain administrative license for this application. Moreover, as long as the matters that are not granted administrative license meet the standards in the future, Zhongyuan Ruide can also re-apply for and obtain administrative license at any time. Therefore, Zhongyuan Ruide statement that the "Decision on the Refusal of Administrative License" it receives from HCHP results in a significant change in its objective situation is distorting the facts. III. Zhongyuan Ruide's claims 3 and 4 violate the labor contract and the relevant laws and regulations. IV. Zhongyuan Ruide's claim 5 (there is no need to pay Zhengjia Zhang the salary of CNY 108,436.8 for the period from July 1 to September 1, 2020) is in violation of the law. 1.  As Zhongyuan Ruide illegally terminates the labor contract with Zhengjia Zhang, resulting in his failure to provide normal labor, it shall compensate Zhengjia Zhang for the loss of wage income in accordance with the law. It is in line with the law for the court of first instance to rule that Zhongyuan Ruide should pay Zhengjia Zhang CNY 108,436.8 (calculated on the basis of the original salary of Zhengjia Zhang, CNY 53,000) as wages for the period from July 1, 2020 to September 1, 2020. 2.    In    the judgment of first instance, the content of "monthly salary CNY 53,000" is contradictory with the content of "seventh monthly salary of CNY 42,400" in Item 7 therein. Zhengjia Zhang has appealed to the court of second instance to cancel such content, and requested to sentence that Zhongyuan Ruide should, in accordance with the provisions of Article 82 of the "Labor Contract Law", pay Zhengjia Zhang at the standard of twice the monthly salary of Zhengjia Zhang for the period from July 1, 2020 to the date when Zhongyuan Ruide renews the open-term labor contract with Zhengjia Zhang according to law.

In the first instance, Zhengjia Zhang claimed to: 1. uphold the content in Items 1-5 of the [2020] No.1026 Arbitral Award; 2. Confirm the lawfulness and validity of the labor contract signed by both parties, especially Article18 of the labor contract signed on August 1, 2017; 3. award that Zhongyuan Ruide should perform Article18 of the labor contract and should pay Zhengjia Zhang a long-term cash incentive bonus of USD 10,856,200 (equivalent to CNY 70,890,986, calculated at the exchange rate of 6.53); 4. sentence that Zhongyuan Ruide should, in accordance with the provisions of Article 82 of the "Labor Contract Law", pay to Zhengjia Zhang the salary for the period from July

1, 2020 to the date on which the two parties sign an open-term labor contract, at the rate of twice the salary per month.

Zhongyuan Ruide appealed: 1. to judge that it was legal for Zhongyuan Ruide to terminate its labor relationship with Zhengjia Zhang on June 30, 2020, and that there was no actual labor relationship between the two parties from July 1, 2020; 2. to judge that Zhongyuan Ruide did not need to sign an open-term labor contract with Zhengjia Zhang; 3. to judge that Zhongyuan Ruide did not need to pay Zhengjia Zhang a wage of CNY 108,436.8 for the period from July 1, 2020 to September 1, 2020; 4. to judge that Zhongyuan Ruide did not need to pay Zhengjia Zhang a short-term performance bonus of CNY 108,000; 5. to judge that Zhongyuan Ruide did not need to pay Zhengjia Zhang a cash incentive bonus of CNY 180,000; 6. and to judge that Zhongyuan Ruide was not required to pay to Zhengjia Zhang the social insurance fee of CNY 59,189.5 he has paid.

The court of first instance found out after trial that: on June 13, 2013, Zhengjia Zhang joined Zhongyuan Ruide as deputy general manager, responsible for the blood source management, plasma station management and plasma station development of Zhongyuan Ruide, with a monthly salary of CNY 53,000/month. Party A (Zhongyuan Ruide) and Party B (Zhengjia Zhang) sign a labor contract for the first time, agreeing that the term of the contract shall be from June 13, 2013 to June 30, 2016.

On June 17, 2016, Party A (Zhongyuan Ruide) and Party B (Zhengjia Zhang) sign a labor contract for the second time, agreeing that the term of the contract shall be from July 1, 2016 to July 1, 2021. Party B shall be responsible for the management of the plasma station and blood source.

On August 1, 2017, Party A (Zhongyuan Ruide) and Party B (Zhengjia Zhang) signed a written labor contract for the third time, agreeing that the term of the contract shall be from August 1, 2017 to June 30, 2020. Party A employs Party B to take charge of blood source management and act as deputy general manager of Party A. Article 17 of the labor contract stipulates that Party B is eligible for an annual performance bonus, and the maximum of the target annual bonus is 20% of the annual pre-tax fixed salary (i.e. CNY 108,000 before tax). The annual performance bonus will be calculated according to the formula based on the individual annual performance and CSL Behring's global performance. The individual annual performance targets will be set annually by CSL Behring. Article 18 "Long-term Incentives" of the labor contract specifies that: Party B is entitled to participate in CSL Behring's long-term cash incentive plan with a lock-in period of 3 years. After the three-year lockup period of Party B's participation in the plan, the cash bonus will be paid in one lump sum. CSL Behring's Board of Directors will review the long-term incentive plan annually and have the right to decide to change the content and participants of the plan. Article19 of the labor contract stipulates that Party A shall pay a cash incentive to Party B, totaling CNY 540,000 before tax. Such payment shall be paid to Party B in equal amounts in three installments on August 1, 2018, August 1, 2019 and August 1, 2020 respectively in the following three years, provided that Party B is still employed by Party A on each payment date. As specified in Article 22 of the labor contract, Party A and Party B shall pay all social insurances, such as pension insurance, unemployment insurance, medical

insurance, maternity insurance and industrial injury insurance, in accordance with the standards stipulated in national and local laws and regulations on social insurance. The social insurance premiums payable by Party B shall be borne by Party A on its behalf.

From November 2017 to December 2018, Zhengjia Zhang informed the stationmaster of Luotian Plasmapheresis Sub-center and Enshi Plasmapheresis Sub-center that it was not necessary to copy the daily cash statements of the two Sub-centers to him. Zhengjia Zhang informed the stationmaster of Lichuan Sub- center that he was only responsible for the preparation of the new plasmapheresis centers, and the operation plan of Lichuan Sub-center need not be sent to him if it did not involve the preliminary preparation work, and that as of December 20, the preparation work of Lichuan Sub-center has been completed, and Zhengjia Zhang is no longer in charge of Lichuan Sub-center.

From May 1, 2019, Zhongyuan Ruide appointed Zhengjia Zhang as the development director of Ruide Plasmapheresis Center. On August 10, 2019, Zhongyuan Ruide established the Development Department of Plasmapheresis Center, which was organized by Zhengjia Zhang.

On June 19, 2020, the Health Commission of Hubei Province issued a "Decision on Refusing to Grant an Administrative License" to Zhongyuan Ruide with the document number of EWXJZ [2020] No. 1, whose main content is as follows: HCHP has received and reviewed the application for license of Yingshan Sub-station of Luotian Ruide Plasmapheresis Center and Jiayu Sub-station of Chibi Ruixiang Plasmapheresis Center filed by Zhongyuan Ruide in September and October 2019. HCHP believed that the Zhongyuan Ruide did not meet the statutory conditions and standards. In accordance with the provisions of Article 38 of the "Administrative License Law", HCHP decided not to grant the administrative license. Reasons: 1. On the basis of the opinion that......, there is no legal or regulatory basis for the application to set up Plasmapheresis Sub-centers; 2. Zhongyuan Ruide's blood products do not meet the requirements in Article 11 of the *Measures for the Administration of Plasmapheresis Centers* and in the relevant regulations of the National Health Commission on...... In case of any objection to the treatment, you may bring an administrative reconsideration within 60 days from the date of receiving this Judgment or bring an administrative lawsuit to the people's court within 6 months from the date of receiving this Judgment.

At 10:13 am on June 30, 2020, Zhengjia Zhang sent an email with the subject "About my Labor Contract" to addressees including Jinbao Yang, director of human resources of Zhongyuan Ruide. The main content is: Zhengjia Zhang's labor contract expires today. According to the regulations, the Company should sign an open-term labor contract with Zhengjia Zhang. The Company has just telegraphed its decision not to renew the contract with Zhengjia Zhang. Zhengjia Zhang's feedback was that if the Company reached an agreement on economic compensation with him, he agreed to terminate the contract; otherwise, he would require the Company to renew the labor contract. On the same day, Zhongyuan Ruide issued to Zhengjia Zhang a "Notice of Termination of Labor Contract", the main content of which is: Zhongyuan Ruide and Zhengjia Zhang signed a fixed-term labor contract on August 1, 2017. Due to significant changes in objective circumstances, Zhongyuan Ruide decide not to renew

the labor contract with Zhengjia Zhang. According to the provisions of Article 44(1) of the "Labor Contract Law", the labor contract of Zhengjia Zhang shall be terminated upon its expiration. It is hereby notified that Zhengjia Zhang shall go through the relevant procedures of terminating the labor contract with Zhongyuan Ruide within one week after receiving the Notice. On the same day, Zhengjia Zhang received the notice, but did not agree with the behavior of Zhongyuan Ruide terminating the labor contract, and wrote "but I do not accept the contents of the Notice" after the printed content therein that "I have known all the contents of the above Notice" on the Notice. At 15:04 pm on the same day, Zhengjia Zhang sent an email with the subject "About the Notice" to Jinbao Yang, the main content of which was: Zhengjia Zhang disagreed with the termination of the labor contract, and asked Zhongyuan Ruide to sign an open-term labor contract. At 18:49 p.m. on the same day, Zhengjia Zhang sent a letter to Jinbao Yang and others with the subject "Suggestions on Re-signing a 1-2 Month Labor Contract", the main content of which was: Some of the work that Zhengjia Zhang is responsible for (including without limitation legal proceedings in Dangyang, house renewal in Dangyang, change of legal representatives for Dangyang and Luotian, and communication with HCHP to create opportunities for resubmitting the applications) is ongoing. In order to promote these work smoothly, Zhang Zhengjia suggested that the Company re-sign a 1-2 month labor contract with him. During such 1-2 month period, Zhang Zhengjia's duties are limited to the handover of these tasks. Is that OK?

On July 1, 2020, Zhongyuan Ruide canceled Zhengjia Zhang's work email and computer permission. On July 21, 2020, Zhengjia Zhang sent an email to Jinbao Yang, the main content of which was: Please restore Zhengjia Zhang's right to use the work email of Zhongyuan Ruide, because he needs to complete the handover procedures with Lawyer Zhang.

On August 18, 2020, Zhongyuan Ruide canceled Zhengjia Zhang's access authority and vehicle access authority.

On August 31, 2020, Zhongyuan Ruide sent an email with the subject "Announcement" to colleagues at plasmapheresis centers, the main content of which was: Due to the increasingly stringent regulatory regulations related to the construction of new plasmapheresis centers, the further expansion and development of new plasmapheresis centers is restricted. As a result, the amount of work involved in the development of the new plasmapheresis centers will be significantly reduced now and in the future. Here, I regret to announce that the development team of new plasmapheresis centers has to be disbanded. Zhengjia Zhang has left the Company due to the expiration of his employment contract, and Cunwei Hou has moved to the operations and quality department for plasmapheresis centers.

After Zhongyuan Ruide sent Zhengjia Zhang the "Notice of Termination of Labor Contract", Zhengjia Zhang still went to Zhongyuan Ruide, dealing with the work in his original position, but Zhongyuan Ruide did not arrange any new work for him until September 1, 2020.

On September 22, 2020, Jinbao Yang sent an email to Zhengjia Zhang, the main content of which was: Due to the increasingly strict national approval of plasmapheresis centers, it is highly unlikely that Zhongyuan Ruide will open new plasmapheresis

centers. Therefore...... On September 23, 2020, Zhengjia Zhang replied to an email from Jinbao Yang, the main content of which was: As has been stated to you orally and in writing on June 30 and several times since, Zhengjia Zhang's request is to invite Zhongyuan Ruide to sign an open-term labor contract in accordance with laws and regulations, to pay the (supplement) relevant remuneration and the (supplement) social insurance fee, and to honor the various bonuses and incentives in accordance with the contract terms.

On June 30, September 23, and September 24, 2020, Zhongyuan Ruide repeatedly negotiated with Zhengjia Zhang on matters related to the termination of the labor contract and compensation, but failed.

The court of first instance also ascertained that during the period from July 1, 2019 to June 30, 2020, Zhengjia Zhang scored 3 points in the evaluation for short-term incentives.

On August 1, 2018 and August 1, 2019, Zhengjia Zhang has received an annual cash bonus of CNY 180,000 issued by Zhongyuan Ruide.

From August 1, 2017 to June 30, 2020, the amount of social insurance fee paid by Zhengjia Zhang is CNY 59,189.50.

The court of first instance further ascertained that: On September 22, 2020, Zhengjia Zhang applied for arbitration to Wuhan Labor Dispute Arbitration Commission (WLDAC), and requested as follows: (1) to confirm that Zhengjia Zhang and Zhongyuan Ruide had a factual labor relationship since July 1, 2020; (2) that Zhongyuan Ruide and Zhengjia Zhang signed an open-term labor contract according to law; (3) that Zhongyuan Ruide should perform Article 17 of the labor contract and pay the short-term incentive performance bonus of the previous fiscal year (from July 1, 2019 to June 30, 2020), which is calculated as CNY 108,000; (4) that Zhongyuan Ruide should perform Article 18 of the labor contract and pay a long-term bonus of CNY 10 million to Zhengjia Zhang; (5) that Zhongyuan Ruide should perform Article 19 of the labor contract, and pay Zhengjia Zhang a cash incentive bonus of CNY 180,000; (6) that Zhongyuan Ruide should perform Article 22 of the labor contract and refund the social insurance premium paid by Zhengjia Zhang, which was about CNY 60,000; (7) and that Zhongyuan Ruide should pay Zhengjia Zhang the salary after July 2020 at the standard of twice the salary every month.

On December 29, 2020, WLDAC issued the WLRZDBCZ [2020] No.1026 Arbitral Award, deciding as follows: I. It is confirmed that Zhengjia Zhang and Zhongyuan Ruide have a de facto labor relationship since July 1, 2020; II. Zhongyuan Ruide shall, within ten days from the effective date of this Award, sign an open-term labor contract with Zhengjia Zhang; III. Zhongyuan Ruide shall, within ten days from the effective date of this Award, pay Zhengjia Zhang the short-term performance bonus of CNY 108,000; IV. Zhongyuan Ruide shall, within ten days from the effective date of this Award, pay Zhengjia Zhang a cash incentive bonus of CNY 180,000. V. Zhongyuan Ruide shall pay to Zhengjia Zhang the social insurance fee of CNY 59,189.50 within 10 days from the effective date of this Award. VI. Zhongyuan Ruide shall pay to Zhengjia Zhang the salary of CNY 108,436.8 for the period from July 1, 2020 to September 1, 2020 within ten days from the effective date of this Award. VII. Other

claims of Zhengjia Zhang are rejected.

Both Zhengjia Zhang and Zhongyuan Ruide are not satisfied with the content of the Award, and appeal to the Court respectively.

During the trial, Zhengjia Zhang submitted the annual reports of CSL Group (parent company of Zhongyuan Ruide) for 2018, 2019 and 2020. He submitted that in these annual reports, page 69 of the 2020 Annual Report stated that the long-term incentive bonus of Mr. Perrreault, the CEO of the Group, was USD 10,856,200, which was only one year's long-term incentive bonus for Mr Perrreault. The long-term incentive bonus was valid for three consecutive years. Zhengjia Zhang, with reference to Mr. Perrreault's long-term incentive bonus, only requires Zhongyuan Ruide to pay USD 10,856,200 of long-term incentive bonus (equivalent to CNY 70,890,986). According to Article 18 of the 2017 Labor Contract, Zhongyuan Ruide shall fulfill its obligation to pay this amount. Zhongyuan Ruide recognized the authenticity of the annual reports, but did not recognize the translated version, nor did it recognize the relevance of them. Zhongyuan Ruide submitted that these annual reports were those of CSL Group, but not Zhongyuan Ruide. Therefore, it could not prove the operation conditions and employee compensation of Zhongyuan Ruide, and it was unreasonable for Zhengjia Zhang to compare his salary with that of the CEO of CSL Group. The CEO of the Group was at the position level of 13, and Zhengjia Zhang was at the position level of 8. There was a difference of 5 levels in the middle, and they were not comparable. In addition, the relevant incentives contained in the annual reports were equity and option incentives, while the long-term incentives obtained by the CEO of the Group were also based on the cashing of corresponding equities and options. In particular, the total salary of the CEO of the Group in the so-called 2020 Annual Report as asserted by Zhengjia Zhang (USD 10,856,200) also included fixed salary, short-term incentive bonus, and long-term incentive bonus. It did not only include the long-term incentive bonus. It was unreasonable for Zhengjia Zhang to claim the higher amount of compensation and Zhengjia Zhang should not be entitled to such bonus. Article 18 of the 2017 labor contract clearly stated that Zhengjia Zhang was only eligible to participate in the long-term incentive plan, but it did not mean that he actually participated in the long-term incentive plan. The decision on CSL's long-term incentive plan rested with CSL's Board of Directors. After approval, the company headquarters would issue a written confirmation letter to the employees who joined the plan, specifying the specific amount of incentives. The amount was not what Zhengjia Zhang said.

During the trial, Zhongyuan Ruide submitted a "Trade Union Receipt" dated March 10, 2021 (the main content of which was: the trade union of Zhongyuan Ruide confirmed that it was aware of the fact that the Company unilaterally terminated the labor relationship with Zhengjia Zhang on June 30, 2020; the company decided not to renew the labor contract of Zhengjia Zhang due to major changes in objective circumstances such as the cancellation of his team and position; the Company has informed the labor union of the above reasons for the termination of the labor relations), and accordingly claimed that the labor union had been informed of the rescission/termination of the labor relations. Zhongyuan Ruide submitted a "Ruide

Leadership & Organization Chart", the conflicts between the two parties during January-March 2021, employee testimony and other materials. Zhongyuan Ruide asserted that it had canceled Zhengjia Zhang's position in the new organizational structure in 2021, and Zhengjia Zhang maliciously derogated the reputation of Zhongyuan Ruide, used excessive means to interfere with the normal order of Zhongyuan Ruide, and insulted employees of Zhongyuan Ruide. Zhongyuan Ruide argued that there was no possibility of continuing to perform the labor contract. Zhengjia Zhang had no objection to the authenticity of the materials above submitted by Zhongyuan Ruide, but did not recognize the purpose of proof.

During the trial, Zhengjia Zhang insisted on resuming labor relations with Zhongyuan Ruide and said that he could work normally, while Zhongyuan Ruide insisted that it was completely impossible to resume their normal labor relations and it was willing to make economic compensation for Zhengjia Zhang under the legal framework.

The court of first instance held that the three written labor contracts signed by Zhongyuan Ruide with Zhengjia Zhang respectively on June 13, 2013, June 17, 2016 and August 1, 2017 represented the true intention of both parties. The contents of the contracts do not violate the prohibitive provisions of laws and regulations, and are legal and valid. Among them, the labor contract dated August 1, 2017 changes the contract term stipulated in the labor contract dated June 17, 2016. According to law, the changed term stipulated in the labor contract signed on August 1, 2017 shall prevail. The case is about a labor dispute. Zhengjia Zhang and Zhongyuan Ruide have not submitted a request to the arbitration institution for the validity of the labor contract involved in the case, so in this case, the validity of the labor contract is not directly included in the award.

Article14(2) of the *Labor Contract Law of the People's Republic of China* stipulates that a employer and a laborer may conclude An open-term labor contract. In any of the following circumstances, if the laborer proposes or agrees to renew or conclude a labor contract, unless the laborer proposes to conclude a fixed-term one, an open-term labor contract shall be concluded...... (3) The labor contract of a fixed term has been concluded for two consecutive times, and the laborer does not have the circumstances specified in Article 39 and Article 40 (1) and (2) of this Law, and the labor contract is renewed. In this case, Zhengjia Zhang and Zhongyuan Ruide have concluded two fixed-term labor contracts consecutively, and there is no evidence to prove that Zhengjia Zhang have the circumstances of Article 39 and Article 40 (1) and (2) of the "Labor Contract Law of the People's Republic of China". Since June 30, 2020, when Zhongyuan Ruide unilaterally terminated the labor relations between the two parties on the grounds that the contract expired, Zhengjia Zhang clearly stated that he disagreed with Zhongyuan Ruide's unilateral termination of the contract, and demanded to conclude an open-term labor contract with Zhongyuan Ruide. According to law, Zhongyuan Ruide shall enter into an open-term labor contract with Zhengjia Zhang. However, Zhongyuan Ruide notified Zhengjia Zhang on June 30, 2020 that the labor contract would be terminated upon its expiration. Such termination was obviously not in accordance with the law and constituted illegal termination of the labor contract.

Zhengjia Zhang has the right to demand the continued performance of the labor contract, and to request that it be confirmed in accordance with the law that Zhengjia Zhang and Zhongyuan Ruide have a de facto labor relation since July 1, 2020, and Zhongyuan Ruide shall sign a open-term labor contract with Zhengjia Zhang. Regarding the statements of "due to major changes in objective circumstances and other reasons" in the "Notice of Termination of Labor Contract" issued by Zhongyuan Ruide on June 30, 2020, Zhongyuan Ruide stated: Due to the objective impact of the "Decision on Refusing to Grant an Administrative License" made by the competent administrative department for the development of the relevant plasmapheresis centers, Zhongyuan Ruide had to dissolve the development team of the new plasmapheresis centers and make corresponding adjustments to its organizational structure. Moreover, the post of deputy general manager in charge of the development of new plasmapheresis centers held by Zhengjia Zhang was revoked. Therefore, Zhongyuan Ruide could not renew the labor contract with Zhengjia Zhang. The relevant competent administrative department made the "Decision on Refusing to Grant an Administrative License" for the development of the relevant plasmapheresis centers because the relevant application of Zhongyuan Ruide did not meet the statutory conditions and standards. Such circumstances were normal related business risks that Zhongyuan Ruide should or could foresee, and did not belong to unforeseeable or unavoidable circumstances, nor did they belong to significant changes in the objective circumstances of Zhongyuan Ruide.

In other words, the reasons for termination of labor contract notified by Zhongyuan Ruide did not comply with the law. The circumstances claimed by Zhongyuan Ruide like "the development team of the new plasmapheresis centers was dissolved, Zhengjia Zhang's position was revoked, and the termination of the labor contract was informed to the trade union", all occurred after Zhongyuan Ruide issued the "Notice of Termination of Labor Contract" to Zhengjia Zhang. Moreover, there was no evidence to prove that Zhengjia Zhang was not competent for the job and was still not competent for the job after training or post adjustment, so the Court, according to law, did not adopt the opinion that Zhongyuan Ruide could not renew the labor contract with Zhengjia Zhang.

Article 30 of the "Labor Contract Law of the People's Republic of China" stipulates that the employer shall, in accordance with the provisions of the labor contract and the national regulations, fully pay labor remuneration to the laborer in a timely manner. In this case, Zhengjia Zhang is entitled to short-term incentive bonus and Zhongyuan Ruide according to Articles 17 and 19 of the labor contract signed by Zhengjia Zhang and Zhongyuan Ruide in 2017. As the bonus also belongs to labor remuneration, and Zhengjia Zhang has completed the evaluation of short-term incentives during the period from July 1, 2019 to June 30, 2020, therefore, in the absence of providing evidence to prove that Zhengjia Zhang fails to pass the evaluation, Zhengjia Zhang shall pay bonus to Zhengjia Zhang according to the contract. Therefore, the Court supports Zhengjia Zhang's claim "Zhongyuan Ruide shall pay a short-term incentive bonus of CNY 108,000 and a cash incentive bonus of CNY 180,000, respectively, in accordance with the law". As for the opinion proposed by Zhongyuan

Ruide that the condition for the payment of cash incentive bonus stipulated in the labor contract is that "Zhengjia Zhang is still employed by Party A (Zhongyuan Ruide) on each payment day", and that there is no condition for the payment of the bonus as the labor contract between both parties has been terminated. Because the labor contract between Zhongyuan Ruide and Zhongyuan Ruide is unilaterally terminated by Zhongyuan Ruide, resulting in failure of Zhengjia Zhang to be in service on the third payment date of the cash bonus, this situation belongs to the situation where Zhengjia Zhang is out of service due to reasons not attributable to him. Zhongyuan Ruide is also suspected of maliciously obstructing the achievement of this payment condition. Therefore, the Court does not accept this opinion in accordance with the law. Zhongyuan Ruide shall pay the bonus to Zhengjia Zhang according to the contract. Regarding Zhengjia Zhang's claim that Zhongyuan Ruide shall pay a long-term cash incentive bonus of USD 10,856,200 (equivalent to CNY 70,890,986), notwithstanding that Zhengjia Zhang is entitled to participate in the Group's long-term cash incentive plan as stated in Article 18 of the labor contract, there is no evidence to prove that Zhengjia Zhang has actually participated in the plan and meets the payment conditions of the bonus, so the Court does not support this claim of Zhengjia Zhang according to law.

According to Article 22 of the labor contract signed by Zhengjia Zhang and Zhongyuan Ruide in 2017, the social insurance premium payable by Zhengjia Zhang shall be borne by Zhongyuan Ruide. Therefore, the Court supports Zhengjia Zhang's claim that Zhongyuan Ruide shall pay the social insurance fee of CNY 59,189.50 payable by Zhengjia Zhang during the period from August 1, 2017 to June 30, 2020.

Article 50 of the "Labor Law of the People's Republic of China" stipulates that wages shall be paid monthly to the laborer in cash. The wages of the laborer shall not be deducted or delayed without any cause. In this case, Zhongyuan Ruide terminated the labor contract with Zhengjia Zhang on July 1, 2020, but it was not in accordance with the law. Therefore, Zhongyuan Ruide should still pay Zhengjia Zhang his working wages for the period from July 1, 2020 to September 1, 2020. Calculated according to the monthly salary of Zhengjia Zhang (CNY 53,000), the salary during such period was CNY 108,436.8. Zhengjia Zhang did not provided labor service during the period from September 2, 2020 to the date when Zhongyuan Ruide signed an open-term labor contract with Zhengjia Zhang in accordance with the law. This was caused by Zhongyuan Ruide illegally terminating the labor relation, resulting in that Zhengjia Zhang was forced to await job assignment. Therefore, according to the law, Zhongyuan Ruide should pay Zhengjia Zhang wages. It should be decided that Zhongyuan Ruide should pay the salary for such period at 80% of Zhengjia Zhang's monthly salary of CNY 53,000 (i.e. CNY 42,400). Zhengjia Zhang's claim of requiring Zhongyuan Ruide to pay monthly wages at the double pay standard is groundless and not supported according to law.

In summary, in accordance with Articles 14 and 30 of the "Labor Contract Law of the People's Republic of China", Article 50 of the "Labor Law of the People's Republic of China", and Articles 64 and 142 of the "Civil Procedure Law of the People's Republic of China", the Court of first instance ruled: I. to confirm that Zhengjia Zhang and

Zhongyuan Ruide had a factual labor relation since July 1, 2020; II. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, enter into a labor contract with Zhengjia Zhang with no fixed term according to law; III. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, pay Zhengjia Zhang a short-term performance bonus of CNY 108,000; IV. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, pay Zhengjia Zhang a cash incentive bonus of CNY 180,000; V. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, pay to Zhengjia Zhang the social insurance fee of CNY 59,189.50; VI. Zhongyuan Ruide should pay to Zhengjia Zhang the salary of CNY 108,436.8 for the period from July 1, 2020 to September 1, 2020 within ten days from the effective date of this Judgment; VII. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, pay to Zhengjia Zhang the salary at the standard of CNY 42,400 per month from September 2, 2020 to the date on which Zhongyuan Ruide executed Item 2 of this Judgment (namely, the date of signing the open-term labor contract with Zhengjia Zhang according to law); VIII. Other claims of Zhengjia Zhang were rejected; IX. Claims of Zhongyuan Ruide were rejected. In the case of any failure to perform the monetary obligation within the period specified in this Judgment, they shall, in accordance with the provisions of Article 253 of the *Civil Procedure Law of the People's Republic of China,* pay double the interest on the debt for the period of delay in performance. The case acceptance fee of CNY 10 shall be borne by Zhongyuan Ruide.

During the second trial of this case, Zhengjia Zhang submitted two sets of new evidence: 1. Zhengjia Zhang's salary schedule for the period from July 2019 to June 2020, to prove that Zhengjia Zhang received a fixed salary of CNY 53,427 per month. 2. Profile of the retention and growth plan (Chinese version), Article 18 of the labor contract signed by the parties on August 1, 2017, and the correlation table of the long-term cash incentive plan and the retention and growth plan, to prove that the retention and growth plan and the long-term cash incentive plan were two different incentive plans of CSL Behring. Cross-examination opinions of Zhongyuan Ruide: Zhongyuan Ruide has no objection to the authenticity of evidence 1, but does not recognize its purpose of proof. The average salary refers to the average salary of the employee in the 12 months before his/her departure, that is, the average salary from June 2019 to May 2020. By calculation, the average salary of Zhengjia Zhang is less than CNY 53,000. There is no objection to the authenticity of evidence 2, but the purpose of proof is not recognized. The profile of the retention and growth plan (Chinese version), consistent with the documents submitted by Zhongyuan Ruide, is the long-term cash incentive plan. Zhongyuan Ruide's cross-examination opinion on "Article 18 of the labor contract signed by both parties on August 1, 2017" is the same as that on the profile of the retention and growth plan (Chinese version). The correlation table of the long-term cash incentive plan and the retention and growth plan is made by Zhengjia Zhang and cannot be used as evidence or for the purposes stated in the correlation table. Moreover, this set of evidence precisely proves that the long-term cash incentive plan requires a separate agreement. The agreement regarding the long-term cash incentive plan shall be entered into with CSL Behring, with no relation to Zhongyuan Ruide.

Zhongyuan Ruide submitted five sets of new evidence: 1. Application for arbitration of labor dispute on June 18, 2021, notice of hearing, application for arbitration of labor dispute on August 17, 2021, civil complaint, and summons, to prove that, in addition to this case, Zhengjia Zhang has filed two other applications for arbitration of labor dispute; the amount claimed reaches CNY 13 million; the conflict between the two parties is acute. There is no basis for continued performance of the labor contract. 2. Letter of consultation on Zhengjia Zhang's post arrangement (8 copies), to prove that Zhongyuan Ruide has no position suitable for Zhengjia Zhang. 3.

Minutes of the management meeting on matters related to Zhengjia Zhang, development director of the former new plasmapheresis centers, and photos of the meeting site on March 10, 2022, to prove that Zhongyuan Ruide is willing to pay compensation to Zhengjia Zhang. 4. Minutes of the meeting held by the labor union of Zhongyuan Ruide to review the 2015 edition of the employee manual of Zhongyuan Ruide, to prove that Zhengjia Zhang blocked the main door of Zhongyuan Ruide for a long time on January 27-28 and on February 1, 2021, posted big-character posters at Zhongyuan Ruide and abused other colleagues. These acts are against the provisions of the employee manual, and therefore Zhongyuan Ruide has the right to refuse to employ Zhengjia Zhang. 5.    Website screenshots of 51Job, to prove that none of the positions currently being filled in Zhongyuan Ruide is suitable for Zhengjia Zhang. Cross-examination opinions of Zhengjia Zhang: 1. Zhengjia Zhang has no objection to the authenticity and legality of the evidence, but does not recognize its relevance; Zhengjia Zhang's normal request for items such as traffic subsidies that are not required are separate from this case. 2. Zhengjia Zhang has objections to the authenticity, legality and relevance of evidence 2-5. They are all materials produced by Zhongyuan Ruide and cannot be used as evidence.

For the above evidence, the Court certifies as follows: Zhongyuan Ruide has no objection to the authenticity of evidence 1 submitted by Zhengjia Zhang, so it is accepted; Zhongyuan Ruide believes that evidence 2 cannot achieve the purpose of Zhengjia Zhang, so it is not accepted. Zhengjia Zhang has no objection to the authenticity and legality of evidence 1 submitted by Zhongyuan Ruide, but believes that it cannot achieve the purpose of proof of Zhongyuan Ruide. Zhengjia Zhang believes that evidence 2-4 are the materials unilaterally produced by Zhongyuan Ruide, and evidence 5 is downloaded from the website, doubting the authenticity thereof, so the Court does not accept the evidence submitted by Zhongyuan Ruide.

The Court of the second instance finds out that the facts determined in the judgment of first instance are true. The Court hereby confirms the same.

The Court held that Zhengjia Zhang joined Zhongyuan Ruide on June 13, 2013, and the two parties signed three fixed-term labor contracts with the expiration date of June 30, 2020. According to the provisions of Article 14(2)(iii) of the "Labor Contract Law", Zhongyuan Ruide shall sign an open-term labor contract with Zhengjia Zhang. Zhongyuan Ruide's rescission of the labor contract with Zhengjia Zhang is in violation of the law. At the same time, Zhongyuan Ruide terminates the labor contract with Zhengjia Zhang on the grounds of major changes in objective circumstances, but it does not submit relevant evidence to prove that it cannot continue to perform the labor

contract with Zhengjia Zhang due to major changes in objective circumstances. Therefore, it is illegal for Zhongyuan Ruide to terminate the labor contract with Zhengjia Zhang. Zhongyuan Ruide's ground of appeal that it is lawful for it to terminate the labor contract lacks factual and legal basis.

Article 48 of the "Labor Contract Law" stipulates that if an employer rescinds or terminates a labor contract in violation of the provisions of this Law, and the laborer requests to continue to perform the labor contract, the employer shall continue to perform the labor contract. Because Zhongyuan Ruide illegally terminates the labor contract with Zhengjia Zhang, and Zhengjia Zhang requests for the continued performance of the labor contract, and the evidence submitted by Zhongyuan Ruide cannot prove that it is unable to continue to perform the labor contract, Zhongyuan Ruide shall continue to perform the labor contract with Zhengjia Zhang. Zhongyuan Ruide's ground of appeal that there is no need to continue to sign an open-term labor contract with Zhengjia Zhang lacks legal basis.

Regarding the short-term incentive bonus and cash incentive bonus, it is agreed in the labor contract signed by both parties that Zhengjia Zhang is entitled to the two bonuses, and Zhongyuan Ruide has no evidence to prove that Zhengjia Zhang is unqualified in the evaluation. In the meantime, Zhongyuan Ruide illegally terminates the labor contract, preventing Zhengjia Zhang from meeting the payment condition of "being still employed by Zhongyuan Ruide on the payment date agreed in the contract". Therefore, Zhongyuan Ruide shall pay Zhengjia Zhang the short-term incentive bonus and cash incentive bonus in accordance with the provisions of the labor contract.

With respect to the long-term cash incentive bonus, as stipulated in Article 18 of the labor contract, Zhengjia Zhang is entitled to participate in CSL Behring's long-term cash incentive plan, but Zhengjia Zhang has no evidence to prove that he has actually participated in the plan, and there is no evidence to prove that he is eligible for the payment of such bonus. Therefore, the ground for appeal of Zhengjia Zhang that Zhongyuan Ruide shall pay the long-term cash incentive bonus lacks factual basis.

As for the salary for the period from July 1, 2020 to September 1, 2020, after Zhongyuan Ruide illegally terminates the labor relation with Zhengjia Zhang, Zhengjia Zhang continues to work until September 1, 2020, so Zhongyuan Ruide shall pay the labor remuneration to Zhengjia Zhang. Zhongyuan Ruide's ground of appeal that "it shall not pay the wages for that period" lacks legal basis. Zhengjia Zhang is in a situation without the protection of an labor contract during the period from July 1 to September 1, 2020. In accordance with the provisions of Article 82(2) of the "Labor Contract Law"--"Where an employer fails to conclude an open-term labor contract with the employee in violation of this Law, the employer shall pay twice the salary to the employee every month from the date on which the open-term labor contract should be concluded", Zhongyuan Ruide shall pay Zhengjia Zhang twice the salary for the period from July 1 to September 1, 2020. The ground of appeal asserted by Zhengjia Zhang that "Zhongyuan Ruide shall pay twice the salary for the period from July 1, 2020 until the date of signing the open-term labor contract" was partially upheld. After September 1, 2020, Zhengjia Zhang did not actually provide labor service for Zhongyuan Ruide, so it was justified for the court of first instance to rule that Zhongyuan Ruide should

pay Zhengjia Zhang 80% of his monthly salary.

To sum up, the ground of appeal asserted by Zhongyuan Ruide that "it is lawful to terminate the labor contract" lacks factual and legal basis, and the Court does not support it. Zhengjia Zhang's grounds of appeal are partially established, and the Court upholds the justified part. The judgment of the first instance clearly identified the facts, but it was inappropriate in the application of law. The Court corrected it in accordance with the law. In accordance with the provisions of Article 177(1)(ii) of the *Civil Procedure Law of the People's Republic of China*, the Court judged as follows:

II.   Items 1, 2, 3, 4, 5, 7, and 9 of the (2021) E 0192 MC No. 1491 Civil Judgment made by the People's Court of Donghu New Technology Development Zone, Hubei Province were upheld, namely: I. It was confirmed that Zhengjia Zhang and Zhongyuan Ruide had a factual labor relation since July 1, 2020; II. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, enter into a labor contract with Zhengjia Zhang with no fixed term according to law; III. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, pay Zhengjia Zhang a short-term performance bonus of CNY 108,000; IV. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, pay Zhengjia Zhang a cash incentive bonus of CNY 180,000; V. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, pay to Zhengjia Zhang the social insurance fee of CNY 59,189.50; VII. Zhongyuan Ruide should, within ten days from the effective date of this Judgment, pay to Zhengjia Zhang the salary at the standard of CNY 42,400 per month from September 2, 2020 to the date on which Zhongyuan Ruide executed Item 2 of this Judgment (namely, the date of signing the open-term labor contract with Zhengjia Zhang according to law); IX. Claims of Zhongyuan Ruide were rejected;

III. Items 6 and 8 of the (2021) E 0192 MC No. 1491 Civil Judgment made by the People's Court of Donghu New Technology Development Zone, Hubei Province were removed, namely: VI. Zhongyuan Ruide should pay to Zhengjia Zhang the salary of CNY 108,436.8 for the period from July 1, 2020 to September 1, 2020 within ten days from the effective date of this Judgment; VIII. Other claims of Zhengjia Zhang were rejected;

IV. Wuhan Zhongyuan Ruide Biological Products Co., Ltd. shall, within ten days after the effective date of this Judgment, pay to Zhengjia Zhang twice the salary, i.e., CNY 216,873,6, for the period from July 1 to September 1, 2020 (the date on which the open-term labor contract is not signed);

The claims of Zhengjia Zhang are rejected.

In the case of any failure to perform the monetary obligation within the period specified in this Judgment, they shall, in accordance with the provisions of Article 260 of the *Civil Procedure Law of the People's Republic of China,* pay double the interest on the debt for the period of delay in performance.

The case acceptance fee of RMB 10 for the first trial shall be borne by Wuhan Zhongyuan Ruide Biological Products Co., Ltd.

The case acceptance fee of RMB 10 for the second trial shall be borne by Wuhan Zhongyuan Ruide Biological Products Co., Ltd.

This judgment shall be final.

Upon verification, this document
is identical to the original.

| Presiding Judge | Haibo Ma |
| Judge | Weihong Chen |
| Judge | Xiang Chen |

June 2, 2022

Wuhan Intermediate People's Court of Hubei

| Judge Assistant | Liqin Chen |
| Clerk | Jiexian Zhu |

# EXHIBIT C

# 湖北省武汉市中级人民法院

# 民 事 判 决 书

（2022）鄂 01 民终 2240 号

上诉人（原审原告暨被告）：章征甲，男，汉族，1965 年 10 月 16 日出生，住武汉市汉阳区冯家畈 491 号，公民身份号码 420106196510161218。

委托诉讼代理人：孙勇，湖北首义律师事务所律师。

上诉人（原审被告暨原告）：武汉中原瑞德生物制品有限责任公司，住所地武汉东湖新技术开发区光谷七路 99 号。

法定代表人：陈小平，该公司副总裁兼总经理。

委托诉讼代理人：邱萍萍，北京天达共和（武汉）律师事务所律师。

委托诉讼代理人：夏静怡，北京天达共和（武汉）律师事务所实习律师。

上诉人章征甲与上诉人武汉中原瑞德生物制品有限责任公司（以下简称中原瑞德公司）劳动争议一案，不服湖北省武汉东湖新技术开发区人民法院（2021）鄂 0192 民初 1491 号民事判决，向本院提起上诉。本院于 2022 年 2 月 7 日受理后，依法组成合议庭于 2022 年 3 月 21 日公开开庭审理了本案，上诉人章征甲及其委托诉讼代理人孙勇、上诉人中原瑞德公司的委托诉讼代理人邱

萍萍到庭参加诉讼。审理期间，因双方当事人要求调解申请延长审限一个月，该期限不计入审限。本案现已审理终结。

章征甲上诉请求：1.撤销一审判决第六项、第七项，改判中原瑞德公司按章征甲每月工资的二倍标准（即每月按照 106,854元）计发章征甲自 2020 年 7 月 1 日起至依法签订无固定期限劳动合同之日止的工资。2.撤销一审判决第八项，改判中原瑞德公司履行劳动合同第十八条约定向章征甲支付长期现金激励计划奖金（奖金金额暂定为人民币 70,890,986 元，最终金额由法院按该计划的标准确定）。事实与理由为：一、一审法院第六项判决和第七项判决的适用法律不当，且二项判决内容相互矛盾。1.第六项判决中，中原瑞德公司支付章征甲工资的标准是原工资的 100%（即53,000 元），违背了劳动合同法第八十二条规定的二倍工资标准。2.第七项判决中，中原瑞德公司向章征甲每月支付 80%的工资（即42,400 元）于法无据。章征甲未能提供劳动的原因是中原瑞德公司试图解除双方劳动关系所致，一审法院酌定向章征甲支付 80%的工资违背了下述法律法规:《最高人民法院关于审理劳动争议案件适用法律问题的解释（一）》第 34 条：根据劳动合同法第十四条规定，用人单位应当与劳动者签订无固定期限劳动合同而未签订的，人民法院可以视为双方之间存在无固定期限劳动合同关系，并以原劳动合同确定双方的权利义务关系。劳部发[1995]223 号文第三条第一项规定，用人单位造成劳动者工资收入损失的，按劳动者本人应得工资收入支付给劳动者，并加付应得工资收入 25%的赔偿费用。劳社厅函[2001]238 号文明确，劳部发[1995]223 号

文第三条第一项中的劳动者本人应得工资收入是指因用人单位违反国家法律法规或劳动合同的约定，解除劳动合同造成劳动者不能提供正常劳动而损失的工资收入。3.第六项判决和第七项判决违背了劳动合同法第八十二条支付二倍工资的规定。一审法院对中原瑞德公司的违法行为不但不依法处罚其支付二倍工资，反而酌情决定只需支付80%的工资,严重损害了章征甲的劳动者权益，客观上支持了中原瑞德公司违法终止劳动合同的行为。二、一审判决第八项（驳回章征甲的其他诉讼请求）认定事实有误。1.判决书认定"没有证据证明章征甲参与了该长期现金奖励计划"不符合事实，因为劳动合同第十八条明确约定章征甲参加了该长期现金奖励计划。劳动合同第十八条中的"乙方有权参加"和第十七条中的"乙方有资格获得"表达的意思相同，即甲方给予乙方某项权利，且本来就是由英文合同中的同一个短语 Party B is entitled to 翻译过来。一审法院既然支持章征甲参加了第十七条的短期激励，因此，也应当支持同时参加的第十八条长期激励。2.判决书认定"没有证据证明章征甲符合该项奖金的相关发放条件"不符合事实。长期现金激励计划的管理文件可证明章征甲符合该项奖金的发放条件，只是由于中原瑞德公司提供虚假证据误导了一审法院。长期现金激励计划的管理文件是 CSL Behring 集团的内部规章制度，所以该文件的举证责任在于中原瑞德公司。中原瑞德公司在一审举证时故意提交留任与成长计划的管理文件冒充长期现金激励计划的管理文件，并谎称在 CSL Behring 集团唯一只有留任成长计划，留任成长计划就是长期现金激励计划，

并称章征甲未参加留任成长计划等同于章征甲没有参加长期现金激励计划。留任成长计划与长期现金激励计划是两个截然不同的激励计划，而且 CSL Behring 集团年报披露的信息也表明在集团同时设置有专门的长期现金激励计划，并非中原瑞德公司所说的 CSL Behring 集团唯一只有留任成长计划。

瑞德公司答辩意见为：1.章征甲将工资与二倍工资混为一谈，一审判决的第六项、第七项支持了 2020 年 7 月 1 日以来的工资及工资损失，其主张按二倍工资支付，主张的系另外案由的二倍工资，不能将两个案由混淆。本案中，章征甲 2020 年 7 月 1 日未提供劳动，其刻意前往办公场所拍照，蓄意营造其在工作的氛围，该照片不能证明其实际工作，不能据此主张按正常工资标准支付其工资。双方在诉讼过程中，按照章征甲工资 80% 的标准发放工资，也有失公允。在此期间，章征甲未提供劳动，即使补偿也应按生活费或社平工资标准支付。一审超审限 9 个月结案，若要求中原瑞德公司按 4 万余元标准支付工资，公司利益将严重受损。2.关于长期现金激励需签订股权或期权激励合同，章征甲未与中原瑞德公司签订任何激励合同，没有纳入长期现金激励计划。章征甲主张长期现金激励奖金缺乏依据。

中原瑞德公司上诉请求：1. 判决中原瑞德公司于 2020 年 6 月 30 日与章征甲终止劳动关系合法，双方自 2020 年 7 月 1 日起至今不存在事实劳动关系；2. 判决中原瑞德公司无需与章征甲签订无固定期限劳动合同；3. 判决中原瑞德公司无需向章征甲支付短期绩效奖金 108,000 元； 4. 判决中原瑞德公司无需向章征甲

支付现金激励奖金 180,000 元； 5. 判决中原瑞德公司无需向章征甲支付 2020 年 7 月 1 日至 2020 年 9 月 1 日期间的工资 108,436.8 元。事实与理由：一、中原瑞德公司与章征甲之间的劳动关系已于 2020 年 6 月 30 日终止，此后双方不存在事实劳动关系。中原瑞德公司依据劳动合同法的规定于 2020 年 6 月 30 日作出终止劳动合同的决定，并依法送达给章征甲。章征甲收到终止合同通知后已实际离职，中原瑞德公司并未再安排其从事任何工作内容，也未向其支付任何劳动报酬，双方并无任何事实劳动关系。章征甲因离职补偿及交接事项等事宜而自行前往中原瑞德公司的出入记录，并不能证明其仍在从事原合同约定的工作内容。因此中原瑞德公司无需与章征甲签订无固定期限劳动合同。其次，章征甲收到终止合同通知书后直至 2020 年 9 月期间，一直积极与中原瑞德公司就离职补偿数额进行沟通与协商，因分歧较大无法达成一致而提出签订无固定期限劳动合同并因此申请劳动争议仲裁，可见双方争议并非始于终止劳动合同决定而是因为补偿数额达不成一致。其三，中原瑞德公司终止劳动合同的根本原因是客观情况发生重大变化导致确实无法安排章征甲继续从事原岗位工作内容。湖北省卫生健康委员会根据 2019 年国卫医函 283 号文件，对中原瑞德公司申请设置新血浆站分站的申请不予行政许可。行政主管部门作出的不予行政许可的决定以及其所依据的相关政策规范文件具有客观性，属于中原瑞德公司不能预见、不可控制的客观情况。受行政主管部门做出的相关浆站开发不予许可决定的客观影响，中原瑞德公司不得不解散了新浆站开发团队，并对公司

组织架构作出了相应调整，章征甲作为负责浆站开发工作的副总经理，其岗位被撤销。中原瑞德公司客观上无法与章征甲续签劳动合同。三、中原瑞德公司无需向章征甲支付 2020 年 7 月 1 日至 2020 年 9 月 1 日期间的工资。中原瑞德公司于 2020 年 6 月 30 日终止与章征甲的劳动关系后，再无事实劳动关系，也不应恢复劳动关系签订无固定期限劳动合同。四、章征甲主张的短期绩效奖金及现金激励无事实依据，也不符合合同约定，中原瑞德公司无需向其支付。依照劳动合同第十七条约定，108,000 元为年度短期绩效奖金的最高额，实际奖金需按照个人年度绩效表现和 CSL Behring 集团的全球业绩按照公式进行计算，而个人年度绩效目标每年将由 CSL Behring 集团进行设定。因此，章征甲必须满足上述前提条件，方可取得 108,000 元的短期绩效奖金，章征甲并未完全符合奖金获取条件。其次，劳动合同第十九条约定中原瑞德公司将向章征甲支付一笔现金激励共计税前人民币 540,000 元，该款项发放计划分别为 2018 年 8 月 1 日、2019 年 8 月 1 日以及 2020 年 8 月 1 日，前提是章征甲在每一个付款日均仍受中原瑞德公司雇佣。由于章征甲已于 2020 年 6 月 30 日离职，并不符合上述第三次付款的条件，因而不应获得该笔现金激励。

中原瑞德公司补充上诉理由：一、一审判决确认双方自 2020 年 7 月 1 日起至今存在事实劳动关系，事实认定和法律适用均是错误的。首先，劳动者与用人单位存在劳动关系的前提是用人单位存在事实用工，自 2020 年 7 月 1 日起，中原瑞德公司并无对章征甲用工，且关闭了章征甲的工作邮箱及门禁权限，章征甲也已

办理了离职交接，双方并不存在事实劳动关系，故不能确认双方自 2020 年 7 月 1 日起至今存在事实劳动关系；其次，劳动合同法第四十八条规定了违法解除或者终止劳动合同的法律后果，根据该条规定，并非所有的用人单位违法解除或者终止劳动合同时都应继续履行劳动合同，当劳动者不要求继续履行或者劳动合同已不能继续履行的，救济途径是用人单位支付赔偿金，而非强行要求用人单位继续履行劳动合同。本案属于典型的"劳动合同已经不能继续履行"的情形，应向章征甲释明法律规定，告知其可主张赔偿金。一审认定了中原瑞德公司违法终止劳动合同，未考虑双方劳动合同是否可以继续履行，直接判令确认双方至今存在劳动关系，显然违反劳动合同法第四十八条规定。二、中原瑞德公司与章征甲的劳动合同已经不能继续履行，第一，章征甲离职前的岗位是新浆站开发总监，现新浆站开发业务及整个业务部门已裁撤，其原岗位已撤销，劳动合同无履行基础；第二，章征甲原岗位并非一般岗位，新浆站开发总监是具有一定资源性的岗位，只有特定工作背景、工作经历的人才能胜任，该岗位具有唯一性、不可替代性；该岗位裁撤后，中原瑞德公司无任何与其工作经历、工作内容、工作职级相似或相近的岗位可提供给章征甲，也无法凭空创设一个总监级别的高管岗位来安置章征甲；本案一审判决作出后，中原瑞德公司各部门以及管理层均对章征甲的岗位安排进行了讨论及意见征询，根本无任何岗位可安排给章征甲，即便判决双方继续履行劳动合同，该判决也无法执行，有失司法定纷止争的权威性；第三，章征甲原领导、同事、下属均以出具"万

民书"（即《公证书》）的形式表示其不愿意与章征甲共事，恳请中原瑞德公司不与章征甲恢复劳动关系，应充分考虑公司其他员工的诉求，不应为保护章征甲一人利益，去损害全公司及公司其他员工的利益；第四，章征甲目前与中原瑞德公司尚有 3 件劳动争议案件未完结，其主张中原瑞德公司支付的总金额高达 1,300 万元，可见其并非善意的、弱势的劳动者，双方存在严重利益冲突关系，继续履行劳动合同势必严重损害双方利益；第五，章征甲在本案诉讼期间，多次前往中原瑞德公司堵门、辱骂员工，双方矛盾尖锐、不可调和，已无任何信任基础；若强行要求继续履行劳动合同，显然不能定纷止争，只会加剧矛盾；第六，劳动关系的建立以双方合意为基础，章征甲堵门、辱骂同事等行为，已违背中原瑞德公司的用人准则，中原瑞德公司享有用工自主权，有权拒绝聘用有前述不良行为的员工；第七，章征甲堵门、辱骂员工的行为已暴露其具有严重的危害性，且章征甲是总监级别的高管，若让其继续回中原瑞德公司任职，基于前述行为已有前车之鉴，不排除其作出其他严重危害公司的行为；第八，章征甲并非因真正热爱工作、热爱公司想回公司继续任职，其仅是想通过主张继续履行劳动合同的手段来达到索要超高额赔偿的目的。最后，在劳动合同已经不能继续履行的情形下，用人单位依法支付赔偿金，这也是对劳动者权利的有效保护和救济，也是更加具有执行力的有温度的司法判决。三、2020 年 7 月 1 日以后，章征甲未提供劳动，一审判决按照其在职期间工资标准支付 7 月 1 日至 9 月 1 日工资，并按照在职期间工资标准的 80% 支付工资至双方

签订无固定期限劳动合同之日，均是错误的。首先，章征甲 2020 年 7 月 1 日以后未提供劳动，其在 2020 年 7 月以后故意逗留在原办公室并刻意拍照留证，其亦故意前往食堂吃饭并拍照留证，该等行为显然是为诉讼刻意为之。且 2020 年 7 月 1 日章征甲的邮箱早已关闭，无任何工作安排给他；7 月 23 日以后章征甲就已将全部工作资料交接给了同事，没有工作资料也根本不可能开展任何工作，一审认定其 7 月 1 日至 9 月 1 日在正常上班，是严重错误的。其次，自 2020 年 9 月 2 日至本案终审判决作出前，双方处于诉讼期间，该期间要求中原瑞德公司按照每月 42,400 元的标准支付其工资，是极其不公允的。原因在于：①中原瑞德公司在章征甲提起的 3 个诉讼中均坚称无法与其恢复劳动关系，在此情形下，章征甲完全有能力自谋职业，但是其不去自谋职业，而是在中原瑞德公司堵门、辱骂员工，其不采取措施减损，而是激化双方矛盾，具有严重过错；②现根本无法得知章征甲在此期间是否有其他工作，若再按照每月 42,400 元的标准支付其诉讼期间的工资，其可能获益 2 次；③本案一审早在 2021 年 1 月就已立案，一审法院迟至 2021 年 11 月才结案，严重超审限。若在超审限审理期间要求中原瑞德公司按照每月 42,400 元的标准支付章征甲工资，相当于中原瑞德公司在为一审法院超审限的行为买单；一审超审限 9 个多月，导致中原瑞德公司至少多承担 40 万元的工资，于中原瑞德公司而言是飞来横祸。四、劳动合同的本质是合同双方主体基于意思自治签订的双务合同，需双方当事人协商一致才能签订。因中原瑞德公司与章征甲的劳动合同已不能继续履行，双方

并未达成签订无固定期限劳动合同的合意，一审判决中原瑞德公司与章征甲签订无固定期限劳动合同是错误的。五、劳动合同第十七条约定的短期激励最高额度是税前 108,000 元，是否享受年度短期激励以及短期激励的金额均应由章征甲举证，一审将该举证责任强加于中原瑞德公司是错误的。六、劳动合同第十九条已明确约定，享受现金激励的前提条件是每一个付款日均仍受雇佣，因双方 2020 年 6 月 30 日已终止劳动合同，章征甲已不符合享受现金激励奖金的条件。虽系中原瑞德公司通知与章征甲终止劳动合同，但章征甲对此是同意的，仅是二者对经济补偿约定存在分歧，故本案不属于中原瑞德公司恶意阻却支付条件成就的情形，不应支付章征甲现金激励。七、社会保险是用人单位和劳动者应共同承担的义务，劳动者与用人单位约定的社会保险由劳动者全部承担的条款是无效的，同理，劳动者与用人单位约定的社会保险由用人单位全部承担的条款亦是无效的。劳动合同中约定的"乙方应缴纳的社会保险由甲方代为承担"，实质是约定由用人单位承担全部社保缴纳义务，该约定应属无效，故章征甲无权要求中原瑞德公司承担其自行缴纳的社会保险费用。社会保险不属于工资，受仲裁时效的限制，章征甲主张 2017 年-2019 年的社会保险已过仲裁时效，不应予以支持。

　　章征甲答辩意见为：一、瑞德公司的诉讼请求 1 违背了法律和事实。1. 中原瑞德公司要求改判终止劳动关系合法的诉讼请求，不符合劳动合同法的规定。截止至 2020 年 6 月 30 日，中原瑞德公司与章征甲已连续签订了三次固定期限劳动合同，因此，

中原瑞德公司 2020 年 6 月 30 日单方强制终止劳动关系违反了劳动合同法第十四条规定。2. 中原瑞德公司要求改判自 2020 年 7 月 1 日起至今不存在事实劳动关系的诉讼请求违背法律和事实。首先，关于中原瑞德公司与章征甲是否存在劳动关系的类似劳动纠纷,《最高人民法院关于审理劳动争议案件适用法律问题的解释（一）》第三十四条规定：根据劳动合同法第十四条规定，用人单位应当与劳动者签订无固定期限劳动合同而未签订的，人民法院可以视为双方之间存在无固定期限劳动合同关系，并以原劳动合同确定双方的权利义务关系。其次，中原瑞德公司在 2020 年 6 月 30 日单方终止劳动关系后,章征甲继续为中原瑞德公司提供劳动的行为，以及中原瑞德公司不履行劳动合同第四十六条约定、不向章征甲支付竞业限制补偿费的行为，也证明或反证了双方存在劳动关系。二、中原瑞德公司的诉讼请求 2 违反法律规定，违背客观事实。1．中原瑞德公司要求改判无需签订无固定期限劳动合同的诉讼请求不符合法律规定。首先，章征甲与中原瑞德公司已连续签订了三次固定期限劳动合同，且没有劳动合同法第三十九条和第四十条第一项、第二项规定的情形，因此，章征甲完全符合劳动合同法第十四条第（三）项关于续签无固定期限劳动合同的规定。其次，章征甲被中原瑞德公司违法终止劳动合同后，其自始至终的要求都是继续履行劳动合同，并在一审法庭上坚决拒绝了中原瑞德公司提出的向其支付 64 万元违法解除劳动合同赔偿金的方案。因此，中原瑞德公司应当遵守劳动合同法第四十八条规定，依法与章征甲续签无固定期限劳动合同。2. 中原瑞德

公司要求改判无需签订无固定期限劳动合同的诉讼请求违背了客观事实。中原瑞德公司把收到湖北省卫健委的《不予行政许可决定书》函件说成公司客观情况发生了重大变化，这是歪曲事实编造出来的谎言。《不予行政许可决定书》是湖北省卫健委对中原瑞德公司2019年9月递交的设置英山分站和嘉鱼分站的申请书审核后，因申请事项未达到国家规定的审批标准，遂决定不予行政许可。中原瑞德公司在递交申请时已经非常清楚自己的公司不符合审批条件，其为此还特意安排章征甲与湖北省卫健委进行了沟通协调，中原瑞德公司对此次申请事项不能获得行政许可早有预见和准备。况且此次不被行政许可事项只要以后一旦达到标准，中原瑞德公司还可以随时重新申请并获得行政许可。因此，中原瑞德公司称收到湖北省卫健委的《不予行政许可决定书》导致公司客观情况发生重大变化是歪曲事实。三、中原瑞德公司的诉讼请求3和诉讼请求4，违反了劳动合同约定和相关法律规定。四、中原瑞德公司的诉讼请求5（无需向章征甲支付2020年7月1日至9月1日期间的工资108,436.8元）违反了法律规定。1. 中原瑞德公司违法解除章征甲的劳动合同致使其不能提供正常劳动，应当依法赔偿章征甲损失的工资收入，一审法院判决中原瑞德公司支付章征甲2020年7月1日至9月1日期间的工资108,436.8元（按章征甲原工资53,000元计发其每月工资）符合法律规定。2.一审判决的每月发放53,000元工资与第七项判决的每月发放42,400工资相互矛盾，章征甲已诉请二审法院予以撤销，合并改判中原瑞德公司遵照劳动合同法第八十二条规定，按章征甲每月

工资的二倍标准支付章征甲自 2020 年 7 月 1 日起至依法与章征甲续签无固定期限劳动合同之日止的工资。

章征甲一审诉请：1.维持[2020]第 1026 号仲裁裁决书中第一项至第五项裁决；2.判令双方签订的劳动合同合法有效，特别是 2017 年 8 月 1 日签订的劳动合同第十八条合法有效；3.判令中原瑞德公司履行劳动合同第十八条约定，向章征甲支付长期现金激励计划奖金 10,856,200 美元（折合人民币为 70,890,986 元，按照 6.53 汇率计算）;4.判令中原瑞德公司遵照劳动合同法第八十二条规定,支付章征甲自 2020 年 7 月 1 日至双方签订无固定期限劳动合同之日期间的工资，且每月按二倍支付。

中原瑞德公司一审诉请：1.判决中原瑞德公司于 2020 年 6 月 30 日与章征甲终止劳动关系合法，双方自 2020 年 7 月 1 日起至今不存在事实劳动关系；2.判决中原瑞德公司无需与章征甲签订无固定期限劳动合同；3.判决中原瑞德公司无需向章征甲支付 2020 年 7 月 1 日至 2020 年 9 月 1 日期间的工资 108,436.8 元；4.判决中原瑞德公司无需向章征甲支付短期绩效奖金 108,000 元;5.判决中原瑞德公司无需向章征甲支付现金激励奖金 180,000 元;6.判决中原瑞德公司无需向章征甲支付章征甲垫付的社会保险费 59,189.5 元。

一审法院审理查明，2013 年 6 月 13 日，章征甲入职中原瑞德公司，任副总经理，负责公司血源管理、浆站管理和浆站开发工作，月工资为 53,000 元/月。甲方中原瑞德公司与乙方章征甲第一次签订了一份《劳动合同》，约定合同期限自 2013 年 6 月 13

日至 2016 年 6 月 30 日止。

2016 年 6 月 17 日，甲方中原瑞德公司与乙方章征甲第二次签订了一份《劳动合同》，约定合同期限自 2016 年 7 月 1 日起至 2021 年 7 月 1 日止，乙方从事浆站及血源管理。

2017 年 8 月 1 日，甲方中原瑞德公司与乙方章征甲第三次签订了一份书面劳动合同，约定合同期限自 2017 年 8 月 1 日至 2020 年 6 月 30 日止，甲方聘用乙方在甲方负责血源管理工作，岗位为副总经理。该份劳动合同第十七条短期激励中约定：乙方有资格获得一笔年度绩效奖金目标年度奖金最高为年度税前固定工资的 20%(即税前人民币 108,000 元)。年度绩效奖金将会按照个人年度绩效表现和 CSL Behring 集团的全球业绩按照公式进行计算。个人年度绩效目标每年将由 CSL Behring 集团进行设定。该份劳动合同第十八条长期激励中约定：乙方有权参加 CSL Behring 集团长期现金激励计划，锁定期共三年。在乙方加入该计划三年锁定期过后，现金将一次性发放。CSL Behring 集团董事会会每年审阅长期激励计划，并有权决定变更该计划内容和参与者。该份劳动合同第十九条约定：甲方将向乙方支付一笔现金激励共计税前人民币 540,000 元。该款项将在之后三年等额发放，发放日期分别为 2018 年 8 月 1 日，2019 年 8 月 1 日以及 2020 年 8 月 1 日，前提是乙方在每一个付款日均仍受甲方雇佣。该份劳动合同第二十二条约定，甲乙方应按国家和地方有关社会保险的法律、法规规定的标准缴纳各项社会保险，如养老保险、失业保险、医疗保险、生育保险和工伤保险。乙方应缴纳的社会保险费由甲方代为

承担。

在 2017 年 11 月至 2018 年 12 月期间，章征甲向罗田浆站、恩施浆站的站长告知两个浆站的现金日报表不需要向其抄报，其向利川浆站的站长告知其工作职责只负责新浆站的筹建、关于利川浆站的运营计划如果不涉及到前期的筹建工作联系则以后不须向其发送及截至 12 月 20 日利川浆站的筹建工作已经全部完成、其不再管理利川浆站。

2019 年 5 月 1 日起，中原瑞德公司改任章征甲为瑞德浆站开发总监。2019 年 8 月 10 日，经章征甲组建，中原瑞德公司成立了血浆站开发部。

2020 年 6 月 19 日，湖北省卫生健康委员会向中原瑞德公司发出了一份文号为鄂卫许决字[2020]1 号《不予行政许可决定书》，主要内容是：对于中原瑞德公司于 2019 年 9 月、10 月提出的关于设置罗田瑞德单采血浆站英山分站、赤壁瑞祥单采血浆站嘉鱼分站的许可申请，该机关已分别受理，现已审查完毕。该机关认为，该申请不符合法定条件、标准，根据行政许可法第三十八的规定，该机关决定不予行政许可。理由：1.根据……意见，单采血浆站分站没有法律法规设立依据；2.中原瑞德公司血液制品未达到《单采血浆站管理办法》第十一条和国家卫生健康委……相关规定的标准。如不服该决定，可自收到本决定书之日起 60 日内申请行政复议，或在六个月内向人民法院提起行政诉讼。

2020 年 6 月 30 日上午 10:13，章征甲向中原瑞德公司的人力资源总监杨金保等人发送了一封主题为《关于我的劳动合同》的

邮件，主要内容是：章征甲的劳动合同于今天到期，按照规定，公司应该与其续签无固定期限劳动合同；公司刚才电告决定不与章征甲续签合同，章征甲的反馈意见是，如果公司与其就经济补偿等达成一致，其同意解除合同，否则，其要求公司与其续签劳动合同。当天，中原瑞德公司向章征甲发出《终止劳动合同通知书》，主要内容为：中原瑞德公司与章征甲于 2017 年 8 月 1 日签订的固定期限劳动合同，因客观情况发生重大变化等原因，中原瑞德公司决定不再与章征甲续订劳动合同；按照劳动合同法第四十四条第一款的规定，章征甲的劳动合同将于期满后终止；通知章征甲在接到本通知后一周内到中原瑞德公司办理终止劳动合同关系的相关手续。当日，章征甲收到该通知书，但不认可中原瑞德公司的终止劳动合同的行为，并在该通知书上打印的"我已知悉以上通知书的全部内容"后面签写有"但我不接收本通知的内容"。当天下午 15:04，章征甲向杨金保发送了一封主题为《关于通知书》的电子邮件，主要内容为：章征甲不接受终止劳动合同，要求中原瑞德公司与其续签无固定期限劳动合同。当天下午 18:49，章征甲向杨金保等人发送了一封主题为《关于重新签订 1-2 个月劳动合同的建议》，主要内容为：章征甲负责的某些工作（当阳的法律诉讼、当阳的房屋续租、当阳和罗田的法人代表变更、与卫健委沟通创造再次递交申请的机会等）正在进行中，为了顺利推进这些工作，其建议，公司与其重新签订 1-2 个月的劳动合同，在这期间，其的工作职责只负责专门交接这些工作，可否？

2020 年 7 月 1 日，中原瑞德公司取消章征甲工作邮箱及电脑权限。2020 年 7 月 21 日，章征甲向杨金保发送了一封电子邮件，主要内容为：请恢复章征甲使用中原瑞德公司邮箱的权利，其需要与张律师进行工作交接。

2020 年 8 月 18 日，中原瑞德公司取消章征甲的门禁卡权限和车辆入场权限。

2020 年 8 月 31 日，中原瑞德公司向浆站同事发送了一封《公告》的电子邮件，主要内容是：由于与新浆站建设相关的监管法规日益严格，导致新浆站进一步扩张和发展受限。因此从现在以至往后，新浆站开发方面的工作量将大幅缩减。现在，很遗憾地宣布，新浆站开发团队已经解散。章征甲先生因其雇佣合同到期现已离职，侯村伟先生迁至浆站运营及质量部门工作。

在中原瑞德公司向章征甲发出终止劳动合同通知后，章征甲仍前往中原瑞德公司，处理其原岗位工作，但中原瑞德公司未再向章征甲安排新的工作内容，直至 2020 年 9 月 1 日。

2020 年 9 月 22 日，杨金保向章征甲发送了一封电子邮件，主要内容是：因为国家对开设血浆单采站的审批日益趋严，导致中原瑞德公司开设新的浆站的可能性极低，因此……。2020 年 9 月 23 日，章征甲回复杨金保一封电子邮件，主要内容是：正如曾在 6 月 30 日及这之后多次以口头和书面方式给您说过，章征甲的要求是请中原瑞德公司按照法规与其签订无固定期限劳动合同，并依法支付（补发）相关报酬、（补）缴纳社保和按合同条款兑现支付各项奖金和激励。

在 2020 年 6 月 30 日、9 月 23 日、9 月 24 日，中原瑞德公司多次与章征甲协商解除劳动合同及赔偿事宜，均未果。

另查明：2019 年 7 月 1 日至 2020 年 6 月 30 日期间，章征甲的短期激励考核结果为 3 分。

2018 年 8 月 1 日、2019 年 8 月 1 日，章征甲已收到中原瑞德公司发放的每年 180,000 元的现金奖励。

2017 年 8 月 1 日至 2020 年 6 月 30 日期间，章征甲社会保险个人缴费部分为 59,189.50 元。

又查明：2020 年 9 月 22 日，章征甲向武汉市劳动人事争议仲裁委员会申请仲裁，请求裁决：（一）确认章征甲与中原瑞德公司自 2020 年 7 月 1 日至今存在事实劳动关系；（二）中原瑞德公司与章征甲依法签订无固定期限劳动合同；（三）中原瑞德公司履行劳动合同第十七条约定，支付上一财政年度（2019 年 7 月 1 日至 2020 年 6 月 30 日）的短期激励绩效奖金，计人民币 108,000 元；（四）中原瑞德公司履行劳动合同第十八条约定，向章征甲支付长期奖金 1,000 万元；（五）中原瑞德公司履行劳动合同第十九条约定，向章征甲支付现金激励奖金计人民币 180,000 元；（六）中原瑞德公司履行劳动合同第二十二条约定，退还章征甲垫付的社会保险费大约人民币 60,000 元；（七）中原瑞德公司支付章征甲 2020 年 7 月份以后的工资，且每月按二倍差额支付。

2020 年 12 月 29 日，该委作出武劳人仲东办裁字[2020]第 1026 号仲裁裁决书，裁决如下：一、确认章征甲与中原瑞德公司自 2020 年 7 月 1 日至今存在事实劳动关系；二、中原瑞德公司自本裁决

生效之日起十日内依法与章征甲签订无固定期限劳动合同；三、中原瑞德公司自本裁决生效之日起十日内向章征甲支付短期绩效奖金 108,000 元；四、中原瑞德公司自本裁决生效之日起十日内向章征甲支付现金激励奖金 180,000 元。五、中原瑞德公司自本裁决生效之日起十日内向章征甲支付垫付的社会保险费用 59,189.50 元。六、中原瑞德公司自本裁决生效之日起十日内向章征甲支付 2020 年 7 月 1 日至 2020 年 9 月 1 日期间的工资 108,436.8 元。七、驳回章征甲其他仲裁请求。

章征甲、中原瑞德公司均不服该裁决内容，分别诉至法院。

庭审中，章征甲提交了 2018 年、2019 年、2020 年 CSL 集团（CSL 集团系中原瑞德公司的母公司）连续三年的上市年报，提出这些年报中 2020 年的年报第 69 页载明了该集团的 CEO Mr Perrreault 的长期奖励为 10,856,200 美元，这只是 Perrreault 先生一年的长期激励奖金，长期激励奖金有连续三年的该奖金，章征甲参照 Perrreault 先生的长期激励奖金的标准，只要求中原瑞德公司支付 10,856,200 美元的长期激励奖金折算人民币 70,890,986 元，根据 2017 年劳动合同第十八条的约定，中原瑞德公司应当履行支付此款的义务。中原瑞德公司对年报的真实性认可，但不认可翻译件，不认可关联性，提出这些年报是 CSL 集团的，而不是中原瑞德公司的，不能证明中原瑞德公司的经营情况及员工的薪酬，且章征甲使用 CSL 集团总裁的薪酬标准对比其薪酬，集团总裁是第 13 级，章征甲是第 8 级，中间差了 5 个级别，完全没有可比性，又该年报中相关的激励是股权、期权，而集团总裁所获得的长期

激励也是基于兑现相应的股票和期权，特别是章征甲所谓的 2020 年年报中集团总裁的所有薪酬 10,856,200 美元是包括了固定薪酬、短期激励和长期激励，并不仅仅是长期激励，其据此较高薪酬主张不合理且不应享有的奖金，2017 年劳动合同第十八条明确说明章征甲只是有资格参加享有的长期激励计划，而不代表其实际参加，CSL 长期激励计划的决定权在董事会，公司总部批准后会出具书面的确认函给予被受理该计划的员工，并明确具体奖励的金额，这个金额不是章征甲自己说多少就是多少。

庭审中，中原瑞德公司提交了一份落款日期为 2021 年 3 月 10 日的《工会回执》（主要内容是瑞德公司工会确认知晓公司于 2020 年 6 月 30 日单方终止章征甲劳动关系一事；公司因章征甲所在团队及岗位被取消等客观情况重大变化，而决定不再续订其劳动合同；上述劳动关系终止理由公司已告知工会），并据此主张劳动关系解除/终止已经告知工会。中原瑞德公司提交了一份《瑞德领导团队组织机构图》、2021 年 1 月至 3 月期间双方发生冲突、员工证言等材料，称其在 2021 年新的组织架构中已经取消了章征甲的职位且章征甲恶意贬损公司名誉、使用过激手段干扰公司正常秩序、侮辱公司员工等，并据此主张不存在继续履行劳动合同的可能性。章征甲对前述中原瑞德公司提交的两份材料的真实性均无异议，但均不认可证明目的。

庭审中，章征甲坚决要求与中原瑞德公司恢复劳动关系且表示可以正常工作，中原瑞德公司坚决表示双方完全无法恢复正常劳动关系且愿意在法律框架下进行经济补偿。

一审法院认为：中原瑞德公司于 2013 年 6 月 13 日、2016 年 6 月 17 日、2017 年 8 月 1 日先后三次与章征甲签订书面的劳动合同，均是双方真实意思表示，合同内容不违反法律法规禁止性规定，合法有效，其中 2017 年 8 月 1 日的劳动合同变更了 2016 年 6 月 17 日的劳动合同中关于合同期限的约定，依法应以变更后的 2017 年 8 月 1 日签订的劳动合同中约定的期限为准。本案系劳动争议纠纷，章征甲、中原瑞德公司均未向仲裁机构对案涉劳动合同效力事项提出请求，则在本案中对案涉劳动合同的效力事项不直接列入判项。

《中华人民共和国劳动合同法》第十四条第二款规定，用人单位与劳动者协商一致，可以订立无固定期限劳动合同。有下列情形之一，劳动者提出或者同意续订、订立劳动合同的，除劳动者提出订立固定期限劳动合同外，应当订立无固定期限劳动合同：……（三）连续订立二次固定期限劳动合同，且劳动者没有本法第三十九条和第四十条第一项、第二项规定的情形，续订劳动合同的。在本案中，章征甲与中原瑞德公司已连续订立二次固定期限劳动合同，又没有证据证明章征甲存在《中华人民共和国劳动合同法》第三十九条和第四十条第一项、第二项之情形，自 2020 年 6 月 30 日中原瑞德公司单方以合同到期终止双方劳动关系后，章征甲明确表示不同意中原瑞德公司单方终止的行为且要求与中原瑞德公司订立无固定期限劳动合同，依法中原瑞德公司应与章征甲订立无固定期限劳动合同，而中原瑞德公司在 2020 年 6 月 30 日通知章征甲劳动合同将于期满后终止，该终止行为明

显不符合法律规定，属于违法终止劳动合同，章征甲有权要求继续履行劳动合同，依法确认章征甲与中原瑞德公司自 2020 年 7 月 1 日至今存在事实劳动关系，中原瑞德公司应与章征甲签订无固定期限劳动合同。对于中原瑞德公司在 2020 年 6 月 30 日发出的终止劳动合同通知书中提出"因客观情况发生重大变化等原因"，其表示公司受行政主管部门做出的相关浆站开发不予许可决定的客观影响而不得不解散新浆站开发团队并对公司组织架构作出了相应调整，且章征甲负责浆站开发工作的副总经理岗位被撤销，而无法与章征甲续签劳动合同的意见，因相关行政主管部门做出的相关浆站开发不予许可决定的原因是中原瑞德公司的相关申请不符合法定条件、标准，此种情况属于中原瑞德公司应当预见或可以预见的正常的相关经营风险，不属于不能预见或不能避免的情形，不属于中原瑞德公司客观情况发生重大变化的情况，即中原瑞德公司通知终止劳动合同的事由不符合法律规定，至于中原瑞德公司称新浆站开发团队已经解散、章征甲的原岗位被撤销、已通知工会终止合同等情况，均发生在中原瑞德公司向章征甲发出终止劳动合同通知书之后，又没有证据证明章征甲不能胜任工作且经过培训或者调整工作岗位仍不能胜任工作，故对此意见依法不予采纳。

《中华人民共和国劳动合同法》第三十条规定，用人单位应当按照劳动合同约定和国家规定，向劳动者及时足额支付劳动报酬。在本案中，根据章征甲与中原瑞德公司于 2017 年签订的劳动合同中第十七条、第十九条的约定，章征甲享有短期激励奖金和

现金激励奖金，因奖金也属于劳动报酬，而章征甲已完成 2019年 7 月 1 日至 2020 年 6 月 30 日期间的短期激励考核，中原瑞德公司在未提供证据证明章征甲考核不合格的情况下，依法依约应当按合同约定向章征甲支付奖金，故对于章征甲要求中原瑞德公司支付短期激励奖金 108,000 元、现金激励奖金 180,000 元的诉讼请求，依法予以支持。对于中原瑞德公司提出劳动合同约定现金激励奖金发放条件为章征甲"在每一个付款日均仍受甲方（中原瑞德公司）雇佣"而双方劳动合同已终止则不具备发放该奖金的条件的意见，因为系中原瑞德公司单方终止与章征甲劳动合同而导致章征甲在第三笔现金奖励发放日不在职，此种情形属于不可归责于章征甲的原因导致章征甲不在职，中原瑞德公司亦有恶意阻碍此条件成就之嫌，对此意见依法不予采纳，中原瑞德公司依法依约应向章征甲支付该笔奖金。对于章征甲要求中原瑞德公司支付长期现金激励计划奖金 10,856,200 美元（折合人民币为70,890,986 元）的诉讼请求，虽然劳动合同第十八条中载明其有权参加集团长期现金激励计划，但没有证据证明其已参与该奖励计划且符合该项奖金的相关发放条件，故对章征甲的此项诉讼请求，依法不予支持。

根据章征甲与中原瑞德公司于 2017 年签订的劳动合同中第二十二条的约定，章征甲应缴纳的社会保险费应由中原瑞德公司代为承担，则对于章征甲要求中原瑞德公司支付 2017 年 8 月 1日至 2020 年 6 月 30 日期间其社会保险个人应缴部分 59,189.50元的诉讼请求，依法予以支持。

《中华人民共和国劳动法》第五十条规定，工资应当以货币形式按月支付给劳动者本人。不得克扣或者无故拖欠劳动者的工资。在本案中，虽然中原瑞德公司从 2020 年 7 月 1 日起终止与章征甲的劳动合同，但该终止行为不符合法律规定，则中原瑞德公司仍应支付 2020 年 7 月 1 日至 2020 年 9 月 1 日期间章征甲上班期间的工资，按章征甲月工资 53,000 元核算，该期间的工资为 108,436.8 元；从 2020 年 9 月 2 日起至中原瑞德公司依法与章征甲签订无固定期限劳动合同止，章征甲实际未提供劳动，此状况系因中原瑞德公司违法终止劳动关系所致，属于被迫待岗情形，依法中原瑞德公司应向章征甲支付工资，酌定按照章征甲月工资 53,000 元的 80%即 42,400 元计付该期间的工资。对于章征甲要求瑞德公司每月工资按二倍标准支付的诉讼请求，于法无据，依法不予支持。

综上所述，依据《中华人民共和国劳动合同法》第十四条、第三十条，《中华人民共和国劳动法》第五十条，《中华人民共和国民事诉讼法》第六十四条、第一百四十二条之规定，一审法院判决：一、确认章征甲与中原瑞德公司自 2020 年 7 月 1 日至今存在事实劳动关系；二、中原瑞德公司自本判决生效之日起十日内依法与章征甲签订无固定期限劳动合同；三、中原瑞德公司自本判决生效之日起十日内向章征甲支付短期绩效奖金 108,000 元；四、中原瑞德公司自本判决生效之日起十日内向章征甲支付现金激励奖金 180,000 元；五、中原瑞德公司自本判决生效之日起十日内向章征甲支付垫付的社会保险费用 59,189.50 元；六、中原瑞德公司自本判决生效之日起十日内向章征甲支付 2020 年 7 月 1

日至 2020 年 9 月 1 日期间的工资 108,436.8 元；七、中原瑞德公司自本判决生效之日起十日内按照每月 42,400 元的标准向章征甲支付自 2020 年 9 月 2 日起至中原瑞德公司履行本判决第二项即依法与章征甲签订无固定期限劳动合同之日止的工资；八、驳回章征甲的其他诉讼请求；九、驳回中原瑞德公司的诉讼请求。如果当事人未按本判决指定的期间履行给付金钱义务，应当按照《中华人民共和国民事诉讼法》第二百五十三条的规定，加倍支付迟延履行期间的债务利息。本案案件受理费 10 元，由中原瑞德公司负担。

　　本案二审期间，章征甲提交两组新证据：1.2019 年 7 月-2020 年 6 月章征甲的工资明细表，拟证明章征甲每月获得固定工资 53,427 元。2.留任成长计划概要文件中文版本、双方 2017 年 8 月 1 日签订劳动合同的第 18 条、长期现金激励计划和留任成长计划对比表，拟证明留任成长计划与长期现金激励计划是 CSL Behring 集团两个不同的激励计划。中原瑞德公司质证意见为：对证据 1 的真实性无异议，对其证明目的不认可。平均工资是计算员工离职前 12 个月的平均工资，即 2019 年 6 月-2020 年 5 月的平均工资，经计算不到 53,000 元。对证据 2 的真实性无异议，对其证明目的不认可。留任成长计划概要文件中文版本与中原瑞德公司提交的文件一致，是长期现金激励计划；双方 2017 年 8 月 1 日签订的劳动合同第十八条的质证意见同留任成长计划概要文件中文版本；长期现金激励计划和留任成长计划对比表是章征甲自己做的表格，不能作为证据，不能达到其证明目的，且该组证据恰恰能证明长期现金激励计划需要另行签订协议，应与 CSL Behring 集

团签订，与中原瑞德公司无关。

中原瑞德公司提交五组新证据：1.2021 年 6 月 18 日劳动争议仲裁申请书、开庭通知书、2021 年 8 月 17 日劳动争议仲裁申请书、民事起诉状和传票；拟证明除本案外，章征甲又提起两次劳动仲裁，主张的金额达到 1,300 万元，双方之间矛盾尖锐，劳动合同没有继续履行的基础。2.关于章征甲岗位安排的意见征询函 8 份；拟证明中原瑞德公司没有岗位提供给章征甲。3.关于原新浆站开发总监章征甲相关事宜的管理层会议纪要、2022 年 3 月 10 日会议现场照片；拟证明中原瑞德公司愿意向章征甲支付赔偿金。4.中原瑞德公司工会审议 2015 年版公司员工手册的会议纪要、2015 年版员工手册；拟证明章征甲于 2021 年 1 月 27 日、28 日、2 月 1 日长期堵公司大门，张贴大字报，辱骂其他同事，违背了《员工手册》的规定，中原瑞德公司有权拒绝聘用章征甲。5.前程无忧网站截图；拟证明中原瑞德公司目前正在招聘的岗位中无一适合章征甲。章征甲质证意见为：1.对该组证据的真实性、合法性无异议，不认可其关联性，章征甲对没有要求的交通补贴等几项进行正常的要求，与本案是两回事。2.证据 2-5 的真实性、合法性、关联性均有异议，这是中原瑞德公司自行制作的材料，不能作为证据采用。

对上述证据本院认证如下，章征甲提交的证据 1，中原瑞德公司对其真实性没有异议，应予以采信；证据 2 不能达到章征甲的证明目的，对该证据不予采信。中原瑞德公司提交的证据 1，章征甲虽对其真实性和合法性没有异议，但该证据不能达到中原瑞德公司的证明目的，证据 2-4 均为中原瑞德公司单方制作的材

料，证据5系网站下载资料，其真实性存疑，对中原瑞德公司提交的证据，均不予采信。

二审审理查明，一审判决认定的事实属实。本院予以确认。

本院认为，2013年6月13日，章征甲入职中原瑞德公司，双方签订了三份固定期限劳动合同，劳动合同期限截止时间至2020年6月30日止。根据劳动合同法第十四条第二款第三项的规定，中原瑞德公司应当与章征甲签订无固定期限劳动合同。中原瑞德公司解除与章征甲的劳动合同，不符合法律规定。同时，中原瑞德公司以客观情况发生重大变化等原因解除与章征甲的劳动合同，亦未提交相应的证据证明客观情况发生重大变化导致与章征甲不能继续履行劳动合同。因此，中原瑞德公司解除与章征甲的劳动合同，属于违法解除。中原瑞德公司认为合法解除劳动合同的上诉理由，缺乏事实和法律依据。

劳动合同法第四十八条规定，用人单位违反本法规定解除或者终止劳动合同，劳动者要求继续履行劳动合同的，用人单位应当继续履行。中原瑞德公司违法解除与章征甲的劳动合同，章征甲要求继续履行劳动合同，且中原瑞德公司提交的证据也不能证明无法继续履行劳动合同，中原瑞德公司应当继续履行。中原瑞德公司上诉认为无需与章征甲继续签订无固定期限劳动合同的上诉理由，缺乏法律依据。

关于短期激励奖金和现金激励奖金，双方签订的劳动合同中约定，章征甲享有该两项奖金，中原瑞德公司没有证据证明章征甲考核不合格，同时中原瑞德公司违法解除劳动合同，阻止至合同约定的付款日章征甲仍受中原瑞德公司雇佣的条件成就，中原

瑞德公司应依照劳动合同的约定向章征甲支付短期激励奖金和现金激励奖金。

关于长期现金激励计划奖金，劳动合同第十八条约定，章征甲有权参加 CSL Behring 集团长期现金激励计划，章征甲没有证据证明其参与了该计划，也无证据证明其符合发放条件，章征甲主张中原瑞德公司发放长期现金激励计划奖金的上诉理由，缺乏事实依据。

关于 2020 年 7 月 1 日至 9 月 1 日的工资，中原瑞德公司违法解除与章征甲的劳动关系后，章征甲继续工作至 2020 年 9 月 1 日，中原瑞德公司应当向章征甲支付劳动报酬。中原瑞德公司主张不支付该期间工资的上诉理由，缺乏法律依据。章征甲 2020 年 7 月 1 日至 9 月 1 日处于没有劳动合同保护的情形，根据劳动合同法第八十二条第二款 "用人单位违反本法规定不与劳动者订立无固定期限劳动合同的，自应当订立无固定期限劳动合同之日起向劳动者每月支付二倍的工资。" 的规定，中原瑞德公司应向章征甲支付 2020 年 7 月 1 日至 9 月 1 日的二倍工资。章征甲主张中原瑞德公司支付 2020 年 7 月 1 日至签订无固定期限劳动合同之日止的二倍工资的上诉理由，部分成立。2020 年 9 月 1 日后，章征甲没有实际为中原瑞德公司付出劳动，一审法院判决按照章征甲月工资标准的 80% 支付并无不当。

综上，中原瑞德公司的上诉理由，缺乏事实和法律依据，本院不予支持。章征甲的上诉理由部分成立，对有理部分本院予以支持。一审判决认定事实清楚，但适用法律不当，本院依法予以纠正。依据《中华人民共和国民事诉讼法》第一百七十七条第一

款第二项的规定，判决如下：

一、维持湖北省武汉东湖新技术开发区人民法院（2021）鄂0192 民初 1491 号民事判决第一项、第二项、第三项、第四项、第五项、第七项、第九项，即：一、确认章征甲与武汉中原瑞德生物制品有限责任公司自 2020 年 7 月 1 日至今存在事实劳动关系；二、武汉中原瑞德生物制品有限责任公司自本判决生效之日起十日内依法与章征甲签订无固定期限劳动合同；三、武汉中原瑞德生物制品有限责任公司自本判决生效之日起十日内向章征甲支付短期绩效奖金 108,000 元;四、武汉中原瑞德生物制品有限责任公司自本判决生效之日起十日内向章征甲支付现金激励奖金180,000 元；五、武汉中原瑞德生物制品有限责任公司自本判决生效之日起十日内向章征甲支付垫付的社会保险费用 59,189.50 元；七、武汉中原瑞德生物制品有限责任公司自本判决生效之日起十日内按照每月 42,400 元的标准向章征甲支付自 2020 年 9 月 2 日起至武汉中原瑞德生物制品有限责任公司履行本判决第二项即依法与章征甲签订无固定期限劳动合同之日止的工资；九、驳回武汉中原瑞德生物制品有限责任公司的诉讼请求；

二、撤销湖北省武汉东湖新技术开发区人民法院（2021）鄂0192 民初 1491 号民事判决第六项、第八项，即：六、武汉中原瑞德生物制品有限责任公司自本判决生效之日起十日内向章征甲支付 2020 年 7 月 1 日至 2020 年 9 月 1 日期间的工资 108,436.8元；八、驳回章征甲的其他诉讼请求；

三、武汉中原瑞德生物制品有限责任公司于本判决生效之日起 10 日内一次性向章征甲支付 2020 年 7 月 1 日至 9 月 1 日未签

订无固定期限劳动合同二倍工资 216,873.6 元;

四、驳回章征甲的其他诉讼请求。

如果当事人未按本判决指定的期间履行给付金钱义务，应当按照《中华人民共和国民事诉讼法》第二百六十条的规定，加倍支付迟延履行期间的债务利息。

一审案件受理费 10 元,由武汉中原瑞德生物制品有限责任公司负担。

二审案件受理费 10 元,由武汉中原瑞德生物制品有限责任公司负担。

本判决为终审判决。

审　判　长　　马海波

审　判　员　　陈蔚红

审　判　员　　陈　祥

二〇二二年六月二日

本件与原本核对无异

法　官　助　理　　张利钦

书　记　员　　朱洁娴