IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZHENGJIA ZHANG, | | CIVIL ACTION |
| **Plaintiff,** | | |
| | | |
| v. | | |
| | | |
| CSL BEHRING LLC, | | NO. 23CV2658 |
| **Defendant.** | | |

**MEMORANDUM OPINION**

Plaintiff Zhengjia 'Jake' Zhang is a pharmaceutical executive.  In 2013, Wuhan Zhong

Yuan Rui De Biological Products Co. Ltd. ("Ruide") hired him as its Vice President of Plasma

Center Development.  Then, in August 2017, Ruide was acquired by Defendant CSL Behring,

LLC ("CSL Behring").  CSL Behring negotiated with Zhang to continue as Director of Plasma

Development after the acquisition, so he did.  This dispute concerns a payment that Zhang

alleges CSL Behring promised him as an enticement to remain employed after the acquisition.

He brings four claims: (I) breach of contract; (II) breach of an implied-in-fact contract;

(III) promissory estoppel/detrimental reliance; and, (IV) unjust enrichment.  CSL Behring moves

to dismiss each of the claims in Zhang's Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) on the grounds that each fails to state a claim.  For the following reasons, the

Motion will be granted in part and denied in part.

### I.  LEGAL STANDARD

A complaint must state facts that, if true, would support a plausible legal claim under law.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"). The plaintiff does not

need to prove his claims at this stage, but he does need to plead "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* And the plaintiff must do more than merely accuse the defendant—he must include specific

facts that support his accusation. *Id.* ("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.").

On a motion to dismiss, the allegations of the complaint are considered "in the light most

favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In

other words, the question is "whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief." *Id.* Still, bare legal conclusions unsupported by facts are not

considered. Instead, the question is whether the facts alleged would support a "plausible claim

for relief" under existing law if they were true. *Id.* at 210-11.

## II.  DISCUSSION

### A.  Count I: Breach of Contract

In Count I Zhang alleges that he and CSL Behring formed an oral contract pursuant to

which CSL Behring promised to pay him a one-off cash-based long term incentive payment, and

that CSL Behring breached by refusing to pay. To survive a motion to dismiss, a claim for

breach of an oral contract must plausibly allege: (1) the existence of a contract, including its

essential terms; (2) a breach of a duty imposed by the contract; and, (3) resultant damages. *Ware*

*v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*,

723 A.2d 1053, 1058 (Pa. Super. 1999)); *Ingrassia Const. Co. v. Walsh*, 486 A.2d 478, 483

(Pa. Super. 1984) ("An express contract is formed by either written or verbal communication.").

Zhang's allegations that he had an oral contract with CSL Behring must be viewed in the context of a separate written agreement he signed with Ruide regarding his employment: the "Labor Contract."  When CSL Behring acquired Ruide, to entice Zhang to stay, it offered him compensation of three kinds: (1) "a monthly gross fixed salary in the amount of RMB 45,000 before tax"; (2) "short-term incentive compensation, which was an annual target bonus with a maximum amount of 20% of [his] gross annual salary"; and, (3) "long-term incentive compensation, which was a one-off cash[-]based long[-]term incentive payment due after three years of employment with CSL Behring."

The Labor Contract between Zhang and Ruide, which began August 1, 2017 (at around the time CSL Behring acquired Ruide), and ended June 30, 2020 (roughly three years later), includes terms similar to those Zhang claims CSL Behring offered him.  First, the Labor Contract's Article 15 provides that Ruide shall pay Zhang a monthly gross fixed salary of RMB 45,000 before tax; second, its Article 17 (titled "Short-term incentive") provides that Zhang "is entitled to an annual target bonus, and the maximum amount will be 20% of [Zhang]'s annual gross fixed salary."

Then, its Article 18 provides:

> [Zhang] is entitled to participate in CSL Behring Group's cash based long term incentive program, which will be locked for 3 years and be paid as a one-off payment after [Zhang]'s 3 years participation in the program.  The CSL Behring Group's Board will review the long term incentive program on an annual basis and has the right to change the content of and participants in the plan.

Zhang argues that Article 18 "evidences CSL Behring's agreement to pay the one-off cash based long term incentive payment to Zhang."

The parties diverge regarding the relevance of Article 18 to this suit.  CSL Behring recharacterizes Zhang's claim as seeking payment "pursuant to Article 18 of the Labor

3

Contract."  But that is not what Zhang alleges: he does not pin his claim for breach of oral

contract on Article 18 (or, indeed, on any provision of the Labor Contract).  Rather, he explains,

his Count One is premised on an oral agreement he alleges CSL Behring made with him.  And,

to the extent that Article 18 has any relevance it is only as circumstantial evidence, he says, of

CSL Behring's promise—quite separately from the payments and incentives set forth in the

Labor Contract—that he would be eligible for the long term incentive payment.[1]

Zhang alleges that the oral promise was one of the reasons he chose to work for

CSL Behring.  Then, in June 2020—one month, Zhang claims, before the incentive payment was

allegedly due—CSL Behring fired him.  At that point, Zhang instituted litigation in China.  Here,

he alleges that the Court of the People's Republic of China determined his firing was unlawful

and ordered him reinstated.  He also alleges that Ruide represented to the Chinese court that any

obligation to pay him the incentive payment was CSL Behring's (although, CSL Behring

responds, the Chinese court also determined that Zhang had "failed to demonstrate his

entitlement" to the incentive payment).  In any event, Zhang has never received the incentive

payment he claims CSL Behring owes him.

In Pennsylvania:

> Where a plaintiff seeks to recover on an oral agreement, it is particularly important
> that the pleading at least identify in as specific detail as possible the date of the
> agreement and the individuals involved.  This information will enable a corporate
> defendant faced with a claim based on an alleged oral agreement to investigate the
> claim and, in particular, speak with those who have allegedly entered into the oral

---

[1] It should be noted that Article 18 is far from a model of clarity.  Perhaps it means that Ruide is promising Zhang's eligibility for the long term performance benefits on CSL Behring's behalf, or perhaps Ruide is guaranteeing the payment, such that Ruide would make the payment to Zhang if CSL Behring didn't.  In any case, Ruide is party to the Labor Contract and CSL Behring is not.  And Zhang maintains that he has an oral agreement with CSL Behring (not Ruide, which is not a party to this suit).

agreement at issue.

*Pratter v. Penn Treaty American Corp.*, 11 A.3d 550, 564-65 (Pa. Commw.  2010); *see also*

*Pennsy Supply, Inc. v. Am. Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595, 600 (Pa. Super.

2006) ("Clarity is particularly important where an oral contract is alleged.").

Apart from pleading that CSL Behring entered into an oral contract to pay him the long

term incentive payment in exchange for his continued work, Zhang does not plead any facts

regarding "when this supposed agreement was made, or with whom[,]" as he must for this claim

to survive a motion to dismiss.  In *Pratter*, the plaintiff alleged three oral agreements.  As to the

first, the plaintiff "aver[red] only the substance of the agreement and the reasons for it" and did

not "aver at all when the agreement was reached or the people involved in striking the oral deal."

11 A.3d 550 at 563.  As to the second and third, the plaintiff averred the years of the alleged oral

agreements but "again . . . d[id] not identify the persons involved." *Id.*  The *Pratter* court

decided that these facts were insufficiently specific to allege an oral agreement and allowed the

plaintiff to file an amended (and more specific) pleading.  To put a fine point on it, in

Pennsylvania, a breach-of-oral-contract plaintiff must "at least identify in as specific detail as

possible the date of the agreement and the individuals involved." *Id.* at 563-64.

Zhang's Amended Complaint falls short in the same way the *Pratter* plaintiff's complaint

stumbled:  Although Zhang alleges that CSL Behring had "numerous conversations" with Ruide

regarding Zhang's eligibility for the incentive payment, and that Jiansheng Xu (Ruide's CEO and

General Manager) told Zhang that CSL Behring agreed to pay him the incentive payment, he

does not aver any facts regarding who at CSL Behring was involved directly with him in the

creation of the alleged oral contract or the date on which it was made.  (He does provide a date

range before which it could not have been made—sometime after CSL Behring's acquisition of

Ruide and after it expressed a desire that he continue to work for the company—but he does not

lock down when during or after that time period the alleged oral agreement was made.)  Like the

*Pratter* plaintiff, Zhang alleges the year of the supposed oral contract and a general explanation

of its terms, but he does not allege facts specific enough to support his claim.

Accordingly, CSL Behring's Motion will be granted as to Count I of Zhang's Complaint,

which will be dismissed without prejudice.[2]

### B.  Count II: Breach of Implied-in-Fact Contract

In the alternative to his express-oral-contract claim, Zhang alleges that by their conduct

CSL Behring entered into an implied-in-fact contract with him to pay the long term incentive

benefits.

Like breach of express contract claims, a claim for breach of an implied-in-fact contract

requires the existence of a contract, the breach of that contract, and damages.  *See generally Liss*

*& Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (Explaining that

"[a] contract implied in fact is an actual contract" and analyzing existence, breach, and damages

with respect to an alleged breach of implied-in-fact contract).

An implied-in-fact contract "is a true contract arising from mutual agreement and intent

to promise, but where the agreement and promise have not been verbally expressed.  The

agreement is inferred from the conduct of the parties." *In re Penn Cent. Transp. Co.*,

831 F.2d 1221, 1228 (3d Cir. 1987) (citations removed); *Bricklayers of W. Pennsylvania*

---

[2] Zhang briefly offers an alternative breach-of-contract theory: that CSL Behring possesses documentation related to its cash-based long term incentive program, that CSL Behring has refused "multiple requests" to provide that documentation for this litigation, and that the documentation itself created an independent contractual relationship between him and CSL Behring.  But there are insufficient facts in the complaint to plausibly support this theory.

*Combined Funds, Inc. v. Scott's Dev. Co.*, 90 A.3d 682, 695 (Pa. 2014) ("[A] contract implied in fact arises when the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts") (quotations removed).  A contract implied in fact is "founded upon a meeting of minds . . . inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Hercules Inc. v. United States*, 516 U.S. 417, 424 (1996).  And, unlike an express contract, to form an implied-in-fact contract, "[o]ffer and acceptance need not be identifiable and the moment of formation need not be pinpointed." *Ingrassia Const. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984).

Zhang argues that the following facts illustrating his and CSL Behring's conduct towards one another cemented an implied-in-fact contract:

1. CSL Behring represented to Ruide that CSL Behring would pay Zhang the incentive payment;

2. The Labor Contract indicates that Zhang was "entitled to participate in CSL Behring Group's cash[-]based long[-]term incentive program" and in fact references CSL Behring "throughout";

3. Ruide represented to the Court of the People's Republic of China that the obligation, if any, to pay Zhang the incentive payment was CSL Behring's;

4. CSL Behring wanted Zhang to continue to work for Ruide or CSL Behring after the acquisition and intended the incentive payment as an enticement;

5. Zhang was in fact enticed and the incentive payment "was a material factor in [his] decision to accept employment with CSL Behring";

6. The Labor Contract is between Zhang and Ruide because Chinese law required Zhang to contract with a Chinese company in order to "open more plasma centers in China, which was Zhang's main responsibility for CSL Behring";

7. Zhang reported to a CSL Behring Senior Director and worked for CSL Behring for nearly three years; and,

8. CSL Behring made the decision to fire Zhang.

Based on these alleged facts, the inferences that CSL Behring intended to offer Zhang the incentive payment to entice him to remain, and that Zhang intended to accept, are plausible.

Nevertheless, CSL Behring argues that Zhang "cannot pursue a benefit provided in an express written contract pursuant to an implied[-]contract theory" because "where an express written agreement has been validly entered into by both parties, a party may not allege an implied contract exists as to terms in the written agreement."  For support CSL Behring cites *Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004).  In *Baer*, the Third Circuit held that two parties who had formed an express oral agreement could not also have formed an implied contract regarding the same terms, because the existence of an express agreement precludes any implied-in-fact contract claim.  But *Baer* is distinguishable in that it involved two parties alleged engaged in two different contracts concerning the same subject matter—one express and one implied—whereas the facts here are quite different.  Here, in contrast, all parties agree that there is an express written contract between one party to this litigation (Zhang) and another party who is not a party to this litigation (Ruide).  The dispute here is whether Zhang had an implied-in-fact contract with the only entity that is party to this litigation—CSL Behring.[3]

Accordingly, Zhang has adequately pleaded the existence of an implied-in-fact contract.

### ii.    Breach

Zhang's central complaint as to breach is that CSL Behring did not pay him the incentive payment he alleges it owes him under their implied-in-fact contract.  Certainly, "[w] hen

---

[3] CSL Behring also argues that "the benefit [Zhang] seeks pursuant to the alleged implied contract [with CSL Behring] is the very benefit addressed in the written contract" with Ruide—the incentive payment.  Maybe so, but that issue goes to potential damages, not to whether the claim made here against CSL Behring is viable.

performance of a duty under a contract is due, any nonperformance is a breach."  *McCausland v.*

*Wagner*, 78 A.3d 1093, 1101 (Pa. Super. 2013).  However, it is unclear from the alleged facts

whether CSL Behring would have been obliged to pay Zhang the incentive payments since he

was fired "before the one-off cash[-]based long[-]term incentive payment was due." [4]

Accordingly, the allegation of nonpayment standing alone does not plausibly support a claim of

breach.

      No matter, says Zhang, because by firing him a month before the incentive payment

allegedly came due CSL Behring violated its duty of good faith and fair dealing.  "Every contract

in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance

and its enforcement."  *Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. 2000).  An

allegation that there was a breach of the implied covenant of good faith and fair dealing "is

subsumed in a breach of contract claim."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir.

2013) (citing *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 392

(Pa. Super. 2008).  Pennsylvania law "generally recognizes a duty of good faith in the

performance of contracts," but the duty "does not create independent substantive rights."  *Burton*

*v. Teleflex Inc.*, 707 F.3d 417, 432 (3d Cir. 2013) (quotations removed).  Instead, it "impl[ies]

certain obligations into the contract itself."  *Davis v. Wells Fargo*, 824 F.3d 333, 352 (3d Cir.

2016) (citing Pennsylvania law).

      Exactly what constitutes a breach of the obligation to act in good faith "cannot be

---

[4] Although Zhang alleges that CSL Behring fired him and that the Chinese court "determined that this firing was unlawful and ordered Ruide to reinstate Zhang's employment" (emphasis added), he does not plead that he returned to work, or (if he did) the terms of his employment.

precisely defined in all circumstances." *Kaplan v. Cablevision of PA, Inc.*, 671 A.2d 716, 722 (Pa. Super. 1996). Examples of bad-faith conduct may include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* Zhang's claim falls within these examples in that if CSL Behring fired him to avoid making good on its long term incentive payment commitment, that would plausibly suggest that they the contract by "eva[ding ]the spirit of the bargain" or "interfer[ing] with" Zhang's performance of his end of the deal.

### iii.    *Damages*

In a breach-of-contract case, damages are designed "to place the non-breaching party as nearly as possible in the same position [it] would have occupied had there been no breach." *Helpin v. Trustees of Univ. of Pennsylvania*, 10 A.3d 267, 270 (Pa. 2010). Breach-of-contract damages must be shown "with reasonable certainty" and may not be too speculative, vague or contingent" to permit recovery. *Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Fam. Mkt., Inc.*, 98 A.3d 645, 661 (Pa. Super. 2014). Here, where Zhang estimates that CSL Behring owes him "between $1,000,000.00 and $3,000,000.00" as well as pre-judgment and post-judgment interest, and costs of suit, damages are plead with sufficient particularity.

Because Zhang has plausibly alleged existence of contract implied in fact, breach, and damages, CSL Behring's Motion will be denied as to Count II.

### C.  Count III: Promissory Estoppel / Detrimental Reliance

CSL Behring seeks to dismiss Plaintiff's claim for promissory estoppel and detrimental

reliance (Count III)[5] on the grounds that an express contract precludes a promissory estoppel

claim, and an express contract exists, either because Zhang is suing under the Labor Contract or

because he is suing under the alleged oral contract.  As explained above, Zhang is not suing

under the Labor Contract.  And while the proven existence of the oral contract would indeed

preclude Zhang's promissory estoppel claim, at this stage he may plead both claims in the

alternative.  *See Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 189 (3d Cir. 1999) ("a plaintiff

may plead in the alternative," even when the claims "undercut one another"—and "our caselaw

finds no difficulty with pairing the two claims in one complaint"); *Alpha Pro Tech, Inc. v. VWR*

*Int'l LLC*, 984 F. Supp.2d 425, 446 (E.D. Pa. 2013) (that a plaintiff "may not ultimately recover"

for both breach of contract and unjust enrichment "does not impugn the well settled principle

that under both federal law and Pennsylvania law a plaintiff may plead both."); *Lugo v. Farmers*

*Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. 2009) ("[C]auses of action that are inconsistent are

permitted so long as they are pleaded at separate counts.").[6]  Accordingly, Count III will not be

dismissed.

---

[5] Promissory estoppel (in Pennsylvania the same as detrimental reliance) "provides an equitable remedy to enforce a contract-like promise that would be otherwise unenforceable under contract[-]law principles." *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 239 (Pa. Commw. 2017).

[6] In its reply, CSL Behring introduces a new argument: that Zhang's "promissory estoppel claim fails because he has failed to adequately plead the existence of a promise by CSL Behring to him" regarding the incentive payment. Zhang did not provide any specific facts, CSL Behring says, "such as who made such a promise, or when," and therefore his claim "suffers from the same deficiency as his claim for breach of oral contract."  CSL Behring forfeited this additional argument when it did not raise it in its motion. *Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief."). In any case, Zhang has alleged a promise specific enough to survive 12(b)(6)—he says that CSL Behring promised him an incentive payment, for the purpose of inducing his continued employment, in exchange for his continued employment.

### D. Count IV: Unjust Enrichment

Finally, Zhang brings a claim for unjust enrichment.  He alleges that CSL Behring has been unjustly enriched by the retention of the incentive payment, and that the only fair way to remedy the injustice is to require CSL Behring to make the payment.

A Pennsylvania unjust enrichment claim requires: (1) benefits conferred on [a] defendant by [a] plaintiff; (2) appreciation of such benefits by [the] defendant; and, (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for [the] defendant to retain the benefit without payment of value." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 180 (3d Cir. 2008).  Zhang argues that he conferred a benefit on CSL Behring because he "worked for CSL Behring as Vice President and, later, as Director of Plasma Development."  He argues that CSL Behring appreciated the benefit of his employment, because it "needed [him] to continue his work following the acquisition," and he "successfully performed his job duties."  And as a result, he argues, CSL Behring has unjustly retained the incentive payment it owed him.

CSL Behring correctly notes that unjust enrichment "is inapplicable when the relationship between the parties is founded on a written agreement or express contract" (citing *KBS Pharmacy, Inc. v. Patel*, 2021 WL 2351961, at *7 (E.D. Pa. June 9, 2021).  And "[w]here an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987).  CSL Behring argues, as it did with respect to Count III, that an express agreement governs Zhang's entitlement to the incentive payment, so Zhang cannot maintain a claim for unjust enrichment.  It does not clarify whether it means the Labor Contract or the express contract Zhang alleges in Count I, but that does not matter—as explained above,

the "relationship between *the parties*" is not governed by the Labor Contract, and Zhang may

plead in the alternative at this stage.[7]

Accordingly, CSL Behring's Motion will be denied as to Count IV.

### III.   CONCLUSION

For these reasons, CSL Behring's Motion will be granted in part and denied in part.

An appropriate order follows.

BY THE COURT:

**/s/Wendy Beetlestone, J.**


**WENDY BEETLESTONE, J.**

---

[7] As it did with respect to Count III, CSL Behring raises a new argument for the first time in its Reply with respect to Count IV.  It argues that Zhang has not shown he "conferred some benefit on CSL Behring separate and apart from the benefit conferred on Ruide."  This argument is waived.  *See* footnote 6.