IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZHENGJIA ZHANG,<br>**Plaintiff,** | CIVIL ACTION |
| v. | |
| CSL BEHRING, LLC,<br>**Defendant.** | NO. 23CV2658 |

### MEMORANDUM OPINION

Plaintiff Zhengjia 'Jake' Zhang is an executive in the biopharmaceutical industry. He is suing CSL Behring, LLC ("CSL Behring"), the parent company of his former employer, seeking to recover unpaid compensation benefits to which he believes he is entitled. CSL Behring now moves for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on Zhang's three remaining claims for breach of implied-in-fact contract, promissory estoppel, and unjust enrichment.[1] For the reasons that follow, CSL Behring's Motion will be granted.

### I.  FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in genuine dispute.

Plaintiff Jake Zhang is a biopharmaceutical executive with experience operating blood plasma collection centers in China. Defendant CSL Behring is one of over a hundred business entities operating under the corporate umbrella of CSL Limited, a global biotechnology company headquartered in Australia.

In 2013, Wuhan Zhong Yuan Rui De Biological Products Co. Ltd. ("Ruide") hired Zhang as its Vice President of Plasma Center Development. A few years later, in 2017, a sister

---

[1] Zhang initially brought a breach of contract claim as well, but that claim was dismissed after CSL Behring's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

1

company of CSL Behring's, CSL Asia Pacific Limited, entered into negotiations to acquire Ruide from its previous owner. Employees from multiple corporations in the CSL family of companies assisted in this acquisition effort, including at least one employee of Defendant CSL Behring—namely, Anthony Hartman, Senior Director of CSL Behring's Human Resources department.[2]

As part of the acquisition effort, CSL Behring offered continued employment to several Ruide executives, including Zhang and Zhang's boss, Jiansheng 'Jason' Xu. Xu and Hartman—the former representing the Ruide executives and the latter representing CSL Behring—negotiated the terms of executives' continued employment. In Zhang's case, these negotiations culminated in a written employment contract between Ruide and Zhang (the "Labor Contract"). There was no separate written contract between Zhang and CSL Behring, and CSL Behring was not a party to Zhang's employment contract with Ruide.

Zhang's Labor Contract describes his professional responsibilities and expectations, outlines his base compensation, and, as is relevant to his current claims, contains language regarding the possibility of an additional long-term incentive ("LTI") bonus. That language, contained in Article 18 of the Labor Contract, is as follows:

> [Zhang] is entitled to participate in CSL Behring Group's cash based long term incentive program, which will be locked for 3 years and paid as a one-off payment after [Zhang's] 3 years [sic] participation in the program. The CSL Behring Group's Board will review the long term incentive program on an annual

---

[2] Both parties make much of the intricate corporate structure of CSL Limited and its subsidiary companies. CSL Behring argues that Zhang "improperly conflates corporate entities" in his Complaint—specifically, CSL Behring LLC, CSL Plasma Inc., and CSL Limited—all of which are separate and distinct legal entities. But, because Zhang's claims fail regardless of whether his "conflat[ions]" of the relevant corporate structure are accepted as accurate, the parties' disputes over which entities are properly named as defendants do not drive the question of whether summary judgment should be entered. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). For the same reason, Zhang's request for leave to add CSL Plasma, Inc. is denied as futile. *See Am. Corp. Soc'y v. Valley Forge Ins. Co.*, 424 F. App'x 86, 90 (3d Cir. 2011) ("'Leave to amend a complaint is futile when the complaint as amended would . . . be immediately subject to summary judgment for the defendant.'" (quoting *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007))).

2

basis and has the right to change the content of and participants in the plan." Zhang also conversed with Xu before signing the Labor Contract, who told him that the LTI bonus would amount to "a significant sum," potentially "amount[ing] to a figure higher than the total sum of wages for three years." From the language of Article 18 and his discussions with Xu, Zhang believed that we would be entitled to receive the LTI bonus, to be paid by CSL Behring after three years' employment with Ruide.

By the end of 2017, the acquisition was complete, and Ruide continued its operations under new management. Zhang, for his part, continued his work with Ruide, though the terms of his employment were now governed by the Labor Contract. Around this time, he rejected an offer to work for another company, because it could "only promise that the annual wage [would] be higher" than Ruide's but could not offer an LTI bonus. About two years later, in 2019, Zhang's job responsibilities expanded, and he began managing the "development of new plasma centers" in China. Along with the change in responsibilities came a change in reporting structure—Zhang began reporting directly to Jeff Schulz, a high-ranking employee at CSL Plasma, which is wholly-owned subsidiary of CSL Behring. Despite this change, Zhang did not execute a new employment agreement or otherwise discuss the effect the change might have on his compensation package with Schulz or any CSL Behring employee. Zhang did, however, turn down another job offer that he received in December of 2019, due to his belief that he was six months away from receiving the LTI payment.

On June 30, 2020, Zhang's Labor Contract with Ruide was due to expire. Zhang emailed Schulz to request an extension of his employment by one to two months, which he believed would satisfy the three-year tenure requirement for the LTI payment. Schulz denied this request, and Zhang's employment was terminated the same day.

3

The parties dispute the motivations behind Zhang's termination. Zhang alleges that he was terminated short of the three-year tenure mark specifically so CSL Behring could avoid triggering any potential LTI payment. CSL Behring denies this allegation, asserting that Zhang's termination was unrelated to any alleged LTI obligation, but was due instead to a drop in business demand and a lack of work for Zhang.

Following his termination, Zhang filed a lawsuit in China against Ruide, alleging that Ruide was obligated to pay him the LTI benefit under the Labor Contract. The Chinese court denied Zhang's claim, finding insufficient evidence to support his entitlement to LTI under the terms of the Labor Contract. There is no indication that CSL Behring was a party to this lawsuit or that Zhang raised any claims against CSL Behring in that forum.

## II. LEGAL STANDARD

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48. "Inferences to be drawn from the underlying facts contained in the evidential sources must be viewed in the light most favorable to the party opposing the motion." *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). "The non-moving party may not

4

merely deny the allegations in the moving party's pleadings; instead, he must show where in the record there exists a genuine dispute over a material fact." *Id.* (citation omitted).  A moving party is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex*, 477 U.S. at 323.

"As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . .  More important . . . summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### III. DISCUSSION

#### A. Breach of Implied-in-Fact Contract

The parties agree that no written or oral contract exists between Zhang and CSL Behring.  However, Zhang argues that the parties, by their respective conduct, entered into an implied-in-fact contract under which he is owed the LTI payment.  By failing to make that payment, Zhang argues, CSL Behring breached that implied-in-fact contract.  CSL Behring, for its part, argues: (1) that no such contract was ever formed; (2) that if a contract was formed, it never breached it; and, (3) that if a contract was formed and it breached it, Zhang has not proffered sufficient evidence of any alleged damages.

In Pennsylvania, an implied-in-fact contract "has the same legal effect as any other contract.  It differs from an express contract only in the manner of its formation." *Ingrassia*

*Constr. Co. v. Walsh*, 486 A.2d 478, 483 n.7 (Pa. Super. 1984).[3]  So, to succeed on his claim for breach of implied-in-fact contract under Pennsylvania law, Zhang must establish the standard elements of a breach of contract claim—namely, "'(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999).[4]

To determine whether a contract exists under Pennsylvania law, "a court must look to: (1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and[,] (3) whether there was consideration." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 533 (3d Cir. 2009) (citations omitted).  Where, as here, the alleged agreement "ha[s] not been verbally expressed," the first of the contract-formation elements—mutual manifestation of intent to be bound—"is inferred from the conduct of the parties." *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987) (citations omitted); *see also Bricklayers of W. Pennsylvania Combined Funds, Inc. v. Scott's Dev. Co.*, 90 A.3d 682, 695 (Pa. 2014) ("[A] contract implied in fact arises when the intention of the parties is not expressed, but an agreement in fact creating an obligation is implied or presumed from their acts") (quotations omitted).  "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Ingrassia*, 486 A.2d at 483.

---

[3] The parties agree that Pennsylvania's substantive law applies.

[4] In his Response and Sur-Reply in Opposition to CSL Behring's Motion, Zhang argues that "the joint employer" doctrine, as set forth in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) and its progeny, "is the proper framework for analyzing employment relationships, including in cases involving breach of contract and other common law claims."  The existence of an employment relationship is not an element of any of Zhang's three claims, and Zhang offers no explanation of why or how the "joint employer" analysis should inform the outcome of this case.  Accordingly, the question of CSL Behring's status as a co-employer need not be examined.

Pennsylvania law further provides that "'where the facts are in dispute, the question of whether a contract was formed is for the jury to decide.'" *Ecore Int'l, Inc. v. Downey*, 343 F. Supp.3d 459, 487 (E.D. Pa. 2018) (quoting *Ingrassia*, 486 A.2d at 482). "However, '[t]he question of whether an undisputed set of facts establishes a contract is a matter of law.'" *Id*. at 487-88 (quoting *Mountain Props., Inc. v. Tyler Hill Realty Corp.*, 767 A.2d 1096, 1101 (Pa. Super. 2001)); *see also Bennett v. Itochu Int'l, Inc.*, 2012 WL 3627404, at *15 (E.D. Pa. Aug. 23, 2012), *aff'd*, 572 F. App'x 80 (3d Cir. 2014) ("Contract formation is a matter of law ripe for determination by the Court if a binding contract could not exist under the undisputed set of facts." (citations omitted)).

Here, although there are certain disagreements of fact between the parties—for example, the dispute over why Zhang's employment was terminated just shy of his three-year employment anniversary—none of those disputes are material to the question of whether or not an implied-in-fact contract was formed between the parties. On that score, the undisputed facts about the parties' conduct before, during, and after the Ruide acquisition show that CSL Behring never manifested an "intent to be bound to the material terms" of any agreement regarding the payment of LTI. *Universal Atl. Sys., Inc. v. Honeywell Int'l, Inc.*, 388 F. Supp.3d 417, 428 (E.D. Pa. 2019).

Although CSL Behring is undisputedly not a party to the Labor Contract, Zhang relies principally on the language of Article 18 and the circumstances of its negotiation as evidence that CSL Behring contracted to pay him LTI. Specifically, Zhang points to language in Article 18 stating that he "is entitled to participate in CSL Behring Group's cash based long term incentive program, which will be locked for 3 years and be paid as a one-off payment after [Zhang's] 3 years participation in the program." And because the contract was negotiated by

7

CSL Behring employee Anthony Hartman, Zhang argues, the language of Article 18 serves as evidence of CSL Behring's intent to form a separate contract for payment of LTI in exchange for Zhang's employment with Ruide for three years.

While Article 18's language does refer to the possibility of an LTI payment to be made to Zhang by the "CSL Behring Group," the inference that Zhang draws therefrom—that, in sending Hartman to negotiate the Ruide contracts, which include Article 18, CSL Behring thereby created a second, unwritten contract for the payment of LTI alone—is not supported by the record. In fact, short of Hartman's involvement described above, the record contains few examples of CSL Behring or its employees doing or saying anything even remotely connected to Zhang and the terms of his employment. Zhang concedes that CSL Behring was not a party to the Labor Contract; that, whatever conversations may have occurred between Xu and Anthony Hartman during the contract negotiations, Zhang himself "never discussed LTI" with Hartman or "with anyone at CSL Behring;" and, that he "was never a party to any . . . conversations with CSL Behring" regarding LTI whatsoever. Indeed, Zhang points to no promises, conduct, or representations from anybody at CSL Behring, whether from around the time he signed the Labor Contract or from later in his tenure at Ruide, which suggest that CSL Behring agreed to pay LTI to Zhang. This lack of "outward and objective manifestations of assent" on the part of CSL Behring is damning; without it, Zhang's claim for breach of implied-in-fact contract rests on no more than his own "undisclosed and subjective" understanding of the terms of a separate contract not with CSL Behring, but between himself and Ruide. *Ingrassia*, 486 A.2d at 483.

Zhang does point to a conversation he had with Jason Xu, who negotiated the Labor Contract on behalf of the Ruide executives, during which Xu told Zhang that "CSL is providing a long-term incentive that is of a duration of three years;" that "[t]he purpose of that is to retain

8

the executives to continue to work in the company for three years;" and, that "the sum of a long-term incentive is a significant sum." But Xu's statements, offered for the truth of the matter they assert, are inadmissible hearsay and cannot be considered at the summary judgment stage.[5] Fed. R. Evid. 802; *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment.").

Zhang also refers to a conversation between Alex Yang, Ruide's Human Resources Manager, and one of Ruide's lawyers upon which Zhang's nephew, Qiangqiang Liu, allegedly eavesdropped in late 2020 or early 2021. Zhang maintains that, in that conversation, Ruide's lawyer admitted that Zhang's employment was terminated in order to avoid making him an LTI payment and that CSL Behring would have been the party responsible for making that payment.

Assuming that this conversation took place and that the statements made therein were true (and admissible at trial), such statements do not bear on the question of contract formation here for two reasons. First, because it took place in late 2020 or early 2021, this conversation would have occurred at least three years after the formation of any alleged implied-in-fact contract between CSL Behring and Zhang, and Zhang has provided no evidence to indicate that Ruide's lawyer, whose statements were overheard, was privy to the negotiations surrounding the

---

[5] Zhang argues that Xu, at the time he made these statements to Zhang, "was now a CSL Behring employee since the acquisition was official, so his statements to Plaintiff are not hearsay." As an initial matter, the record shows that Xu was employed by Ruide, not by CSL Behring. But even if Xu were a CSL Behring employee, not all statements by employees are automatically admissible against their employers—the statement must also be "made on a matter within the scope of [the employment] relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Here, Xu's statements about what compensation CSL Behring intended to offer the Ruide executives cannot have been made "on a matter within the scope of [his]" employment by CSL Behring, since Xu represented the Ruide executives—the adversary of CSL Behring—when negotiating the Labor Contract that Zhang signed. *Id.* In other words, because Xu's statements relate to information he gleaned while sitting at the other side of the table as his eventual employer, his statements do not plausibly fall within "the scope of [his] employment" at CSL Behring. *Id.*

Zhang further argues that "[e]ven if Xu was not a CSL Behring employee, his statement . . . could still evidence [Zhang's] state of mind in relying on the statement." True indeed, but Zhang's state of mind is not material to the contract formation analysis. What matters are the parties' "outward and objective manifestations of assent," not "their undisclosed and subjective intentions . . . ." *Ingrassia*, 486 A.2d at 483.

9

acquisition such that he would have insight into what CSL Behring, acting through Anthony Hartman, intended in fashioning Zhang's compensation package. Without that connective tissue, no reasonable jury could interpret the lawyer's statements as anything more than his own surmise, which is insufficient at summary judgment. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015) ("[T]he party opposing a motion for summary judgment . . . must point to specific factual evidence showing that there is a genuine dispute on a material issue requiring resolution at trial." (citations omitted)).

Finally, Zhang points to payments made to other Ruide executives upon their respective terminations, arguing that these either were LTI payments paid in accordance with the language of Article 18 or payments meant to "compensate [the executives] for the lost [LTI] payment" they could have received had they remained employed for three years. In other words, Zhang argues that CSL Behring's intent to form a contract to pay him LTI is inferable from its financial dealings with other Ruide executives who signed similar labor agreements.

Of course, when a party "act[s] as if they [are] bound to follow through with the purported terms" of an implied-in-fact contract, such conduct can demonstrate that the party intended to form the contract to which they conformed their conduct. *Universal Atl. Sys., Inc.*, 388 F. Supp.3d 417 at 430. But in this case, Zhang has offered no evidence suggesting that the payments made to the Ruide executives were in fact LTI disbursements. CSL Behring, for its part, has proffered testimonial and documentary evidence suggesting that these disbursements were severance payments, not LTI—and although Zhang has challenged the credibility of that evidence, he has offered no evidence to rebut it. To the contrary, Zhang has admitted that he never discussed LTI benefits with any Ruide executives except for Xu, and only when Xu was negotiating the terms of the executives' continued employment pre-acquisition, not around the

10

time of the termination payments in question. Without any evidence suggesting that these payments were in fact LTI, Zhang's allegations do not rise above the speculative, and accordingly do not raise a genuine issue of material fact that would preclude granting summary judgment. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990) ("We note that an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." (citations omitted)); *Chavarriaga*, 806 F.3d at 218 ("[T]he party opposing a motion for summary judgment . . . must point to specific factual evidence showing that there is a genuine dispute on a material issue requiring resolution at trial." (citations omitted)).

As recounted above, the undisputed facts about the parties' conduct before, during, and after the Ruide acquisition are such that a reasonable jury could not infer a "meeting of the minds" between Zhang and CSL Behring with regard to an LTI payment. *Universal Atl. Sys., Inc.*, 388 F. Supp.3d at 431. Accordingly, no contract for such a payment was formed, and CSL Behring is entitled to summary judgment on Zhang's claim for breach of implied-in-fact contract.

### B. Promissory Estoppel

Zhang argues, in the alternative, that if no contract existed regarding LTI, then he is nonetheless entitled to relief under the doctrine of promissory estoppel.[6] To succeed on a claim for promissory estoppel, Zhang must show that "(1) [CSL Behring] made a promise that [it] should have reasonably expected to induce action or forbearance on the part of [Zhang]; (2) [Zhang] actually took action or refrained from taking action in reliance on the promise; and[,] (3)

---

[6] Zhang fashions this claim as one for "promissory estoppel / detrimental reliance" which, in Pennsylvania, are one and the same. *See CMR D.N. Corp. & Marina Towers Ltd. v. City of Phila.*, 703 F.3d 612, 634 n.15 (3d Cir. 2013) ("Promissory estoppel and detrimental reliance claims are treated interchangeably by Pennsylvania Courts." (citing *Rinehimer v. Luzerne Cnty. Cmty. Coll.*, 539 A.2d 1298, 1306 (Pa. Super. 1988))).

injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) (citing *Shoemaker v. Commw. Bank*, 700 A.2d 1003, 1006 (Pa. 1997)). "These factors are strictly enforced to guard against the 'loose application' of promissory estoppel." *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Commw. 2009) (quoting *Fried v. Fisher*, 196 A. 39, 43 (Pa. 1938)).

Further, the doctrine of promissory estoppel exists "in order to remedy an injustice" that would occur where a party reasonably relies, to its detriment, on the non-contractual promises of another. *Travers v. Cameron Cnty. Sch. Dist.*, 544 A.2d 574, 612 (Pa. Commw. 1988). Consistent with that purpose, a claim for promissory estoppel will succeed only where "[t]he change in the plaintiff's position [is] substantial . . . ." *Peluso*, 970 A.2d at 533 (citing *Stelmack v. Glen Alden Coal Co.*, 14 A.2d 127, 130 (Pa. 1940)).

Assuming *arguendo* that CSL Behring's conduct in sending an employee to negotiate the language that would become Article 18 of the Labor Contract constituted a "promise" to pay LTI, Zhang's claim nonetheless fails because he has not proffered adequate evidence from which a factfinder could infer he suffered a "substantial" detriment in reliance on that promise, *id.*, or that "injustice can be avoided only by enforcing the promise," *Crouse*, 745 A.2d at 610.

Zhang argues that he relied on CSL Behring's representations about LTI to his detriment by turning down at least two job offers from other pharmaceutical companies: one from Sinopharm Wuhan Plasma Products Company ("Sinopharm"), and another from Wuhan Junyi Pharmaceutical Company ("Wuhan Junyi"). CSL Behring, for its part, argues that the record contains insufficient evidence to show that Zhang "would have been made better off if he accepted either of the jobs purportedly offered to him."

The case of *Morris v. Ace Medical Co.* is instructive here. 1996 WL 69400 (E.D. Pa.

12

Feb. 16, 1996), *aff'd mem.,* 96 F.3d 1433 (3d Cir. 1996).  In that case, plaintiff Morris, a salesman, brought a promissory estoppel claim against a manufacturer of medical products, defendant Ace, by whom he was employed as a salesman for three years.  *Id*. at *1.  Toward the beginning of his tenure, Morris informed his supervisor that he had received an offer to work for another company at a higher wage; to entice Morris to stay at Ace, his supervisor offered him "a small raise and an opportunity to become a distributor" for Ace's products, although "[n]o terms for the distributorship were discussed."  *Id*.  Over the next several years, Morris proceeded to speak with several high-ranking officers at Ace, all of whom assured Morris, in terms both general and concrete, that the distributorship would pan out eventually.  *Id.* at *2-3.  These conversations continued after Ace was acquired by another company, whose executives informed Morris that, although distributorships for Ace products would be phased out, Morris could "put [himself] in position to become a distributor for [the new parent company] when an appropriate position opens up."  *Id.* at *3.

After three years of conversations like these, Morris was denied the distributorship and terminated from his position as salesman.  *Id.*  Morris brought a claim for promissory estoppel against Ace, arguing that "in reliance upon all of [Ace's] promises and assurances," he "refused other business opportunities to his detriment," including "an offer to join an antique business for significantly more money" than he made at Ace.  *Id.* at *9-10.  The District Court found, to the contrary, "that the essentials of [the] business transaction" with the antique business "had not been agreed upon;" thus, "any injury alleged by Morris to have resulted from his reliance on [Ace's] promises" was too "speculative" to form the basis of a promissory estoppel claim.  *Id*. at *10.  The "essentials" that the District Court found lacking in Morris' lost business opportunities included whether the positions were salaried (and at what amount), details about whether Morris

13

would have to make an initial capital contribution to the businesses (and if so, how much), and health insurance arrangements. *Id.* Without these finer points, reasoned the District Court, "Morris' assertion that he had firm offers of employment to make more money lack[ed] a factual basis" and amounted only to "conjecture." *Id*.

So too here. Like in *Morris*, there is insufficient evidence in the record here that the job opportunities Zhang turned down would have been more lucrative than his position at Ruide. The written statements from representatives of Sinopharm and Wuhan Junyi included in the record do not contain any details about Zhang's potential salary at each position; in fact, with regard to the Wuhan Junyi offer, Zhang admits that he never discussed a potential salary with that company's representative at all. Nor does Zhang provide any evidence regarding benefits or non-salary compensation offered by Sinopharm or Wuhan Junyi. Without these details, no reasonable factfinder could infer that Zhang suffered any "substantial" detriment in reliance on CSL Behring's representations about LTI. *Peluso*, 970 A.2d at 533 (describing how, for a claim of promissory estoppel to succeed, "[t]he change in the plaintiff's position must be substantial" (citing *Stelmack*, 14 A.2d at 130)); *see also Ankerstjerne v. Schlumberger Ltd.*, 2004 WL 1068806, at *6 n.12 (E.D. Pa. May 12, 2004), *aff'd*, 155 F. App'x 48 (3d Cir. 2005) ("Courts have found that refraining from pursuing other employment opportunities altogether is not a sufficient detriment to support a promissory estoppel claim."). Put differently, Zhang has not proffered evidence to support the inference that, by turning down these job offers, he suffered the type of "injustice [that] can be avoided only by enforcing [CSL Behring's] promise" regarding LTI. *Crouse*, 745 A.2d at 610. Accordingly, CSL Behring is entitled to summary judgment on Zhang's claim for promissory estoppel.

### C. Unjust Enrichment

Finally, Zhang argues that CSL Behring was unjustly enriched by allowing him to work as a Ruide employee for nearly three years without paying him LTI. To succeed on a claim for unjust enrichment, Zhang must demonstrate: (1) a benefit conferred on CSL Behring by Zhang; (2) appreciation of such benefit by CSL Behring; and, (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for CSL Behring to retain the benefit without payment of value. *Irecyclenow.com v. Starr Indem. & Liab. Co.*, 674 F. App'x 161, 162 (3d Cir. 2017). "The most significant element of [unjust enrichment] is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. Instead, a claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that . . . would be unconscionable for her to retain." *EBC Inc. v. Clark Bldg. Sys.*, 618 F.3d 253, 273 (3d Cir. 2010) (citations omitted).

In this connection, Zhang argues that, "by promising an [LTI] payment after 3 years of post-acquisition employment, [CSL Behring] requested or misled [Zhang] . . . into . . . helping [CSL Behring] integrate Ruide into CSL Behring," a benefit which he alleges CSL Behring appreciated. In support, Zhang points only to his own testimony that his work benefitted both CSL Behring and Ruide. While this characterization is reasonable—in the sense that work done for a subsidiary could be construed as a benefit to its parent—the record contains other admissions by Zhang that demonstrate CSL Behring received no benefit for which Ruide did not already pay. Zhang conceded that he did not perform any work for CSL Behring separate from the work he did as a Ruide employee. He likewise admitted that CSL Behring never promised him any additional compensation for work he was already expected to perform in his role at

15

Ruide.

Considering these admissions, the record cannot support the contention that Zhang conferred any unique benefits upon CSL Behring unaccounted for by his employment with (and attendant compensation by) Ruide.  *See Ankerstjerne*, 2004 WL 1068806, at *7 (granting summary judgment on plaintiff's unjust enrichment claim where "[t]he plaintiff has not shown that he provided the defendants with anything more than the work he was hired to do"); *Herbst v. Gen. Accident Ins. Co.*, 1999 WL 820194, at *9 (E.D. Pa. Sept. 30, 1999) (granting summary judgment on plaintiff's unjust enrichment claim where "[p]laintiff has not shown that he did anything more than work to the best of his abilities for defendant as he was engaged to do"). Because no reasonable factfinder examining the undisputed facts in the record could infer that CSL Behring "wrongfully secured or passively received a benefit that . . . would be unconscionable for [it] to retain," *EBC Inc.*, 618 F.3d at 273 (citations omitted), CSL Behring is entitled to summary judgment on Zhang's unjust enrichment claim.

## IV.   CONCLUSION

For the foregoing reasons, CSL Behring's Motion for Summary Judgment will be granted as to all of Zhang's claims.  An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____
**WENDY BEETLESTONE, J.**